Nos. 2023-2117, 2023-2116

# United States Court of Appeals
# for the Federal Circuit

**MONDIS TECHNOLOGY LTD., HITACHI MAXELL, LTD., nka
Maxell Holdings, Ltd., MAXELL, LTD.,**
*Plaintiffs-Appellants,*

*v.*

**LG ELECTRONICS INC., LG ELECTRONICS U.S.A., INC.,**
*Defendants-Cross-Appellants.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW
JERSEY, CASE NO. 2:15-CV-04431-SRC-CLW, JUDGE STANLEY R. CHESLER

## LG ELECTRONICS INC. AND LG ELECTRONICS U.S.A., INC.'S
## NONCONFIDENTIAL PRINCIPAL AND RESPONSE BRIEF

Michael J. McKeon
Christian A. Chu
R. Andrew Schwentker
Michael J. Ballanco
FISH & RICHARDSON P.C.
1000 Maine Ave. SW, Suite 1000
Washington, DC 20024
(202) 783-5070
mckeon@fr.com
chu@fr.com
schwentker@fr.com
ballanco@fr.com

*Counsel for LG Electronics Inc. and
LG Electronics U.S.A., Inc.*

14.  A display unit for displaying an image based on video signals inputted from an externally connected video source, comprising:

a video circuit adapted to display an image based on the video signals sent by the externally connected video source;

a memory in which at least display unit information is stored, said display unit information including an identification number for identifying at least a type of said display unit and characteristic information of said display unit; and

a communication controller capable of bi-directionally communicating with said video source;

wherein said communication controller is capable of communicating said display unit information other than said characteristic information to said video source.

# CERTIFICATE OF INTEREST

Counsel for Defendants-Cross-Appellants LG Electronics Inc. and LG Electronics U.S.A., Inc. certifies the following:

1.  **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case.

    **LG Electronics Inc. and LG Electronics U.S.A., Inc.**

2.  **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

    **None/Not Applicable**

3.  **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

    **LG Electronics Inc.: LG Corporation**
    **LG Electronics U.S.A., Inc.: LG Electronics Inc.**

4.  **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

    **FISH & RICHARDSON P.C.:** Ralph A. Philips; Scott A. Elengold*; Jared M. Hartzman; Ryan M. Teel*
    **WALSH PIZZI O'REILLY FALANGA LLP:** Liza M. Walsh; Selina M. Ellis; William T. Walsh, Jr.*
    **MAYER BROWN LLP:** Jamie B. Beaber; Michael W. Maas*; Hyunho Park*; Lisa Ferri; William J. Barrow; Anita Y. Lam*
    **POTTER MINTON:** Michael E. Jones; Allen F. Gardner*
    **CONNELL FOLEY LLP:** Jennifer Critchley*; Reade W. Seligmann*

    * No longer with the firm

5.     **Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

       **Yes.  *See* LG's Notice of Related Cases filed at Dkt. 19; Sec.I.**

6.     **Organizational Victims and Bankruptcy Cases.**  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

       **None/Not Applicable**

Dated:  November 29, 2023                         */s/ Michael J. McKeon*
                                                   Michael J. McKeon

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF CONTENTS........................................................................ iii

TABLE OF AUTHORITIES ................................................................. vii

I.    STATEMENT OF RELATED CASES....................................................1

II.   JURISDICTIONAL STATEMENT ....................................................2

III.  COUNTER-STATEMENT OF THE ISSUES.................................2

      A.    LG's Cross-Appeal.........................................................2

      B.    Mondis's Appeal ............................................................3

IV.   COUNTER-STATEMENT OF THE CASE ..................................4

V.    SUMMARY OF THE ARGUMENT ............................................6

      A.    LG's Cross-Appeal.........................................................6

            1.    Liability ...............................................................6

            2.    Damages ...............................................................7

      B.    Mondis's Appeal ............................................................8

VI.   ARGUMENTS REGARDING LG'S CROSS-APPEAL .............10

      A.    Standard of Review ......................................................10

      B.    No Reasonable Jury Could Have Found Written Description Support for the '180 Patent's "Type" Limitation .............................10

            1.    Invalidity Background ...........................................11

            2.    The Undisputed Evidence Shows Claims 14 and 15 Fail to Satisfy the Written Description Requirement...........................15

                  a.    The '180 Patent Does Not Disclose the "Type" Limitation ....................................16

        b.      The Experts Agreed the '180 Patent Does Not Disclose the "Type" Limitation ..................................................19

    3.      The Record Does Not Support the District Court's Post-Trial Denial of JMOL ......................................................21

        a.      Stevenson's Alleged Noninfringement Impeachment Cannot Create Written Description Support ..................21

        b.      Mondis's Alternative Noninfringement-Related Argument Cannot Create Written Description Support .24

        c.      Mondis's Arguments in the First Appeal Do Not Demonstrate Written Description Support .....................25

        d.      No Substantial Evidence Exists to Support the Jury's Verdict of No Invalidity ..................................................28

C.    No Reasonable Jury Could Have Found that LG's Televisions Included the Claimed "Communication Controller"..........................................29

    1.      Noninfringement Background ................................................29

        a.      The Accused Televisions and Standards ........................29

        b.      Mondis Failed to Present Evidence of a Communication Controller at Trial ............................................30

    2.      A Jury Verdict Cannot Be Based on Speculation and Conjecture ...................................................................34

    3.      Lamm Improperly Relied on An Industry Standard ................35

    4.      Lamm's Reliance on Microchip's Datasheet Is Insufficient ....37

    5.      Mondis Cannot Rely on Improper or Unreasonable Inferences ...................................................................38

D.    No Reasonable Jury Could Have Found the Damages Awarded at Retrial ...............................................................................41

    1.      Damages-Related Background.................................................41

    2.      The Retrial Jury Applied a Damages Multiplier......................42

3. There Is No Legal or Evidentiary Support for Mondis's Damages Multiplier ..................................................................43

VII.  ARGUMENTS REGARDING MONDIS'S APPEAL .................................51

A.  Standards of Review.......................................................................51

B.  The District Court Properly Granted a New Damages Trial...............52

1.  The New Trial Grant Is Reviewed for Abuse of Discretion.....52

2.  Mondis's Arguments Using JMOL Standards Are Legally Irrelevant ..............................................................................53

3.  Mondis's Challenges to the New Trial Decision Lack Merit...54

a.  Mondis's Damages Theory Violated the Apportionment Requirement..................................................................54

b.  The District Court Faithfully Applied Precedent ...........59

c.  Policy Considerations Do Not Help Mondis .................63

d.  Mondis's Arguments About Unasserted Patents Defy Logic and Precedent ........................................................63

4.  Mondis's Failure to Challenge Another Ruling Independently Requires Affirmance ...............................................................64

C.  Law and Fact Support the District Court's No-New-Evidence Ruling ..........................................................................................66

D.  The District Court Properly Refused to Deem This an Exceptional Case ...............................................................................................69

E.  The District Court Correctly Denied Enhanced Damages .................73

1.  The District Court Properly Analyzed the *Read* Factors ..........73

2.  The District Court Properly Applied *Halo* ..............................76

F.  The District Court Did Not Abuse Its Discretion with Its Prejudgment Interest Award .......................................................................77

    1.  The District Court Correctly Limited the Prejudgment Interest Award.............................................................................77

    2.  The District Court Correctly Selected the Prejudgment Interest Components ............................................................80

VIII.  CONCLUSION.............................................................................82

CERTIFICATE OF SERVICE ..............................................................1

CERTIFICATE OF COMPLIANCE.....................................................2

<u>Material Redacted from this Nonconfidential Principal and Response Brief</u>

This brief contains 8 words redacted because those words were marked as confidential pursuant to the protective order in Mondis's appellate brief.  While LG takes no position on the nature of the information, out of an abundance of caution, it has marked the words confidential in its Confidential Principal and Response Brief and has redacted those same words in this Nonconfidential Principal and Response Brief.  The redactions appear on pages 46 and 81 of this brief.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Genuine Parts Co., Inc.*,
    128 F.3d 1267 (8th Cir. 1997) ..................................................................47

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    2016 WL 777924 (N.D. Cal. Feb. 29, 2016) ...............................................67

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017) ...............................................................75

*Ariad Pharmas., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) (en banc) ............................................11, 28

*ATD Corp. v. Lydall, Inc.*,
    159 F.3d 534 (Fed. Cir. 1998) .................................................................53

*Athridge v. Aetna Cas. & Sur. Co.*,
    604 F.3d 625 (D.C. Cir. 2010) .................................................................47

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
    967 F.3d 1353 (Fed. Cir. 2020) ...........................................................61, 62

*Brigham & Women's Hosp., Inc. v. Perrigo Co.*,
    761 F. App'x 995 (Fed. Cir. 2019) ..............................................34, 35, 39

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) .................................................................................34

*Callaway Golf Co. v. Acushnet Co.*,
    576 F.3d 1331 (Fed. Cir. 2009) ...............................................................51

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*,
    636 F.3d 1341 (Fed. Cir. 2011) ..............................................11, 18, 20, 21

*Chiasson v. Zapata Gulf Marine Corp.*,
    988 F.2d 513 (5th Cir. 1993) ...................................................................50

vii

*Coleman Motor Co. v. Chrysler Corp.*,
    525 F.2d 1338 (3d Cir. 1975) ...............................................................47

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
    246 F.3d 1336 (Fed. Cir. 2001) ....................................................78, 79

*DeVona v. Zeitels*,
    766 F. App'x 946 (Fed. Cir. 2019) ......................................................40

*Dominion Energy, Inc. v. Alstom Grid LLC*,
    725 F. App'x 980 (Fed. Cir. 2018) ...............................................34, 35

*Draper v. Airco, Inc.*,
    580 F.2d 91 (3d Cir. 1978) ...................................................................51

*Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*,
    637 F.2d 105 (3d Cir. 1980) .........................................................38, 39

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*,
    LLC, 927 F.3d 1292 (Fed. Cir. 2019)....................................60, 61, 62

*Engquist v. Oregon Dep't of Agric.*,
    478 F.3d 985 (9th Cir. 2007) ...............................................................47

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ...................................55, 63, 64, 65

*Feather v. United Mine Workers*,
    711 F.2d 530 (3d Cir. 1983) .........................................................77, 78

*Fineman v Armstrong World Indus., Inc.*,
    980 F.2d 171 (3d Cir. 1992) .................................................................53

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ....................................................44, 45

*Fujifilm Corp. v. Benun*,
    605 F.3d 1366 (Fed. Cir. 2010) ...........................................................51

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010) ....................................................36, 37

*Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*,
　616 F.3d 1357 (Fed. Cir. 2010) .......................................................72

*Go Med. Indus. Pty., Ltd. v. Inmed Corp.*,
　471 F.3d 1264 (Fed. Cir. 2006) .......................................................77

*In re Google Tech. Holdings LLC*,
　980 F.3d 858 (Fed. Cir. 2020) .........................................................25

*Greatbatch Ltd. v. AVX Corp.*,
　2018 WL 1568872 (D. Del. Mar. 30, 2018) ....................................75

*Gyromat Corp. v. Champion Spark Plug Co.*,
　735 F.2d 549 (Fed. Cir. 1984) .........................................................81

*Habecker v. Clark Equip. Co.*,
　36 F.3d 278 (3d Cir. 1994) .......................................................51, 67

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
　579 U.S. 93 (2016)......................................................................73, 74

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
　572 U.S. 559 (2014).........................................................................69

*i4i Ltd. P'ship v. Microsoft Corp.*,
　598 F.3d 831 (Fed. Cir. 2010) .........................................................75

*Idenix Pharm. LLC v. Gilead Scis. Inc.*,
　941 F.3d 1149 (Fed. Cir. 2019) .................................................10, 11

*Imperium IP Holds. (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*,
　757 F. App'x 974 (Fed. Cir. 2019) ..................................................36

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
　496 F.3d 1334 (Fed. Cir. 2007) .................................................22, 23

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
　10 F.4th 1330 (Fed. Cir. 2021) ........................................................11

*Kaufman v. Microsoft Corp.*,
　34 F.4th 1360 (Fed. Cir. 2022) ..................................................79, 80

ix

*Kim v. ConAgra Foods, Inc.*,
  465 F.3d 1312 (Fed. Cir. 2006) ............................................................34, 35, 38

*Laitram Corp. v. NEC Corp.*,
  115 F.3d 947 (Fed. Cir. 1997) ....................................................................52, 80

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ................................................................58, 65, 66

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) .......................................................................48

*Marra v. Phila. Hous. Auth.*,
  497 F.3d 286 (3d Cir. 2007) ...........................................................................53

*Metabolite Lab'ys, Inc. v. Lab'y Corp. of Am. Holdings*,
  370 F.3d 1354 (Fed. Cir. 2004) .......................................................................75

*Mondis Tech. Ltd. v. LG Elecs. Inc.*,
  6 F.4th 1379 (Fed. Cir. 2021) ...........................................................................1

*In re Niaspan Antitrust Litig.*,
  67 F.4th 118 (3d Cir. 2023) .............................................................................54

*Novartis Pharm. Corp. v. Accord Healthcare, Inc.*,
  38 F.4th 1013 (Fed. Cir. 2022) .......................................................................11

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
  723 F.3d 1336, 1341 (Fed. Cir. 2013) ........................................................17, 18

*Nuvo Pharm. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs.
  Inc.*,
  923 F.3d 1368 (Fed. Cir. 2019) .......................................................................23

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)............................................................................69, 72, 73

*Omega Patents, LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ............................... 44, 45, 55, 57, 58, 59, 60, 62

*OSI Pharm., LLC v. Apotex Inc.*,
  939 F.3d 1375 (Fed. Cir. 2019) .......................................................................10

*Paradox Sec. Sys., Ltd. v ADT Sec. Servs, Inc.*,
  388 F. App'x 976 (Fed. Cir. 2010) ....................................38

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008) .......................................16

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  875 F.3d 1369 (Fed. Cir. 2017) .......................................74

*Prism Techs LLC v. Sprint Spectrum L.P.*,
  849 F.3d 1360 (Fed. Cir. 2017) .......................................44

*Promega Corp. v. Life Technologies Corp.*,
  875 F.3d 651 (Fed. Cir. 2017) ........................................66

*Purdue Pharma L.P. v. Faulding Inc.*,
  230 F.3d 1320 (Fed. Cir. 2000) .......................................20

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000).................................................36

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ....................................49, 57

*Rite-Hite Corp. v. Kelley Co., Inc.*,
  56 F.3d 1538 (Fed. Cir. 1995) (en banc) ..............................81

*Rivera v. ITC*,
  857 F.3d 1315 (Fed. Cir. 2017) .......................................19

*Sage Prod., Inc. v. Devon Indus., Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997) .......................................81

*SEC v. Platforms Wireless Int'l Corp.*,
  617 F.3d 1072 (9th Cir. 2010) ........................................80

*Sheridan v. E.I. DuPont de Nemours & Co.*,
  100 F.3d 1061 (3d Cir. 1996) (en banc) ...............................51

*SiOnyx LLC v. Hamamatsu Photonics K.K.*,
  981 F.3d 1339 (Fed. Cir. 2020) .......................................71

*Spectralytics, Inc. v. Cordis Corp*,
    649 F.3d 1336 (Fed. Cir. 2011) ..........................................................44

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    14 F.4th 1323 (Fed. Cir. 2021) ..........................................................75

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) ..........................................................38

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*,
    665 F.3d 1269 (Fed. Cir. 2012) ....................................................15, 16

*TQ Delta, LLC v. Cisco Sys., Inc.*,
    942 F.3d 1352 (Fed. Cir. 2019) ..........................................................34

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998) ..........................................................26

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ..........................................................66

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
    308 F.3d 1167 (Fed. Cir. 2002) ..........................................................54

*Unisplay S.A. v. Am. Elec. Sign Co., Inc.*,
    69 F.3d 512 (Fed. Cir. 1995) ......................................................47, 49

*United States v. Crouch*,
    731 F.2d 621 (9th Cir. 1984) ..............................................................50

*Univ. of Pittsburgh v. Varian Med. Sys., Inc.*,
    561 F. App'x 934 (Fed. Cir. 2014) ....................................................49

*Univ. of Rochester v. G.D. Searle & Co., Inc.*,
    358 F.3d 916 (Fed. Cir. 2004) ..........................................................18

*Vectura Ltd. v. Glaxosmithkline LLC*,
    981 F.3d 1030 (Fed. Cir. 2020) ....................................................52, 61

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc*,
    809 Fed. App'x 965 (Fed. Cir. 2020) ................................................80

*WhitServe, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) .......................................................................46, 71

*Wisconsin Alumni Rsch. Found. ("WARF") v. Apple Inc.*,
   905 F.3d 1341 (Fed. Cir. 2018) ......................................................10, 35, 40, 41

**Statutes**

28 U.S.C. §1292(c)(2)...........................................................................................1, 4

28 U.S.C. §1295(a)(1)...............................................................................................2

35 U.S.C. §112, ¶1 ..................................................................................................15

**Other Authorities**

11 Wright, Miller & Kane, Fed. Prac. & Proc. §2806 (3d ed.) ...............................53

# I. STATEMENT OF RELATED CASES

Cross-Appellants LG Electronics Inc. and LG Electronics U.S.A., Inc. (together "LG") previously brought an interlocutory appeal in this civil action to this Court pursuant to 28 U.S.C. §1292(c)(2). *Mondis Tech. Ltd. v. LG Elecs. Inc.*, No. 20-1812 ("First Appeal"). Appellants Mondis Technology Ltd., Hitachi Maxell, Ltd. now known as Maxell Holdings, Ltd., and Maxell, Ltd. (together "Mondis") challenged the Court's jurisdiction over the interlocutory appeal, *id.* Dkt.12, and the Court ordered the parties to address the jurisdictional issue in the merits briefs, *id.* Dkt.22.

Following an oral argument which addressed, *inter alia*, the merits of some issues raised in LG's appeal,[1] the Court dismissed the appeal for lack of jurisdiction. *Mondis Tech. Ltd. v. LG Elecs. Inc.*, 6 F.4th 1379 (Fed. Cir. 2021) (Dyk, Prost, Hughes, JJ.). In doing so, this Court noted that LG may "challeng[e] the liability determinations of the district court under our §1295 jurisdiction once the damages determination is completed." *Id.* at 1385. There is no other appeal from the proceedings below.

---

[1] The oral argument is available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1812_05062021.mp3, ("1st Appeal Tr.").

LG and its undersigned counsel are unaware of any other actions pending in this or any other court or agency that may directly affect or be directly affected by this Court's decision in the present appeal.

## II. JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this patent case. LG timely filed its notice of appeal on June 1, 2023, Appx687-691, and its amended notice on June 16, 2023, Appx705-710. This Court has jurisdiction under 28 U.S.C. §1295(a)(1).

## III. COUNTER-STATEMENT OF THE ISSUES

### A. LG's Cross-Appeal

1. Whether the District Court erroneously denied judgment as a matter of law ("JMOL") of invalidity for lack of written description for a limitation in the independent claim, where Mondis's expert admitted there is no express support for the limitation in the specification and LG's expert testimony on point stood unrebutted?

2. Whether the District Court erroneously denied JMOL of noninfringement where Mondis presented no direct evidence the accused products satisfy the "communication controller" limitation and relied merely on speculation?

3. Whether the damages judgment should be vacated because Mondis

relied upon a legally improper tripling damages multiplier?

**B.     Mondis's Appeal**

1.      Whether the District Court abused its discretion by granting a new trial on damages based on Mondis's failure to apportion damages and skewing of the damages horizon?

2.      Whether the District Court abused its discretion in limiting the damages retrial to the evidentiary record of the first trial, where Mondis relied on that record to avoid waiver?

3.      Whether the District Court abused its discretion in declining to declare this case exceptional and award fees?

4.      Whether the District Court abused its discretion in declining to enhance damages?

5.      Whether the District Court abused its discretion in limiting prejudgment interest to the post-complaint period where Mondis delayed in filing suit, or in awarding non-compounded prejudgment interest at the Treasury Bill rate?

# IV. COUNTER-STATEMENT OF THE CASE

In 2014, Mondis sued LG in the Eastern District of Texas on five patents. Appx6001-6024. After transfer to New Jersey, the case was stayed pending reexamination. Appx1028-1030, Appx1043-1059. After some claims of U.S. Patent No. 7,475,180 ("the '180 patent") survived reexamination, the litigation proceeded on these surviving claims. Appx6025-6075, Appx1064.

A jury trial took place on April 2-12, 2019, with the liability and remedy phases tried before the same jury. On April 9, 2019, the jury found two claims of the '180 patent infringed and not invalid. Appx193-194. On April 12, 2019, the jury returned a verdict awarding $45,000,000 in damages and finding willful infringement. Appx216-217.

The District Court upheld the jury's findings on invalidity, infringement, and willfulness, but vacated the damages award and ordered a retrial on damages. Appx220-252, Appx255-263.

LG appealed the denial of its liability post-trial motions under §1292(c)(2), but this Court dismissed that appeal and held LG should raise those issues in its appeal under §1295. *See* Sec.I. While the appeal was pending, Mondis submitted supplemental damages expert opinions that the District Court struck-in-part for violating its orders and excluded-in-part under *Daubert*. *See* Secs.VII.C-D; Appx264-266; Appx268-269; Appx270-289; Appx290-295; Appx296-324.

After a damages retrial on February 6-7, 2023, the retrial jury awarded damages of $14,300,000. Appx506. On June 1, 2023, the District Court denied LG's post-trial motions, denied Mondis's motion for enhanced damages and attorneys' fees, and granted-in-part Mondis's motion for pre-judgment and post-judgment interest. Appx508-547.

Both LG and Mondis filed notices of appeal on June 1, 2023, and amended notices on June 16, 2023. Appx687-710. Because the parties' notices were filed the same day and Federal Rule of Appellate Procedure 28.1(b) instructs that "the plaintiff in the proceeding below is the appellant" under such circumstances, Mondis was designated as the Appellant, despite having prevailed below.

Because each issue raised in the appeal and cross-appeal involves discrete procedural and factual backgrounds, LG provides background relevant to each issue in the corresponding Argument sections.

## V.     SUMMARY OF THE ARGUMENT

### A.     LG's Cross-Appeal

#### 1.     Liability

The jury's liability verdict against LG must be set aside for two independent reasons.

First, the '180 patent is invalid because there is no written description support for the "type" limitation in the asserted claims. This limitation fundamentally differs from the specification's description of identifying a *specific* display unit, not a ***type*** of display unit. Mondis, which presented no written description rebuttal case, could not muster any support in the specification for this limitation. Mondis's expert even admitted that the specification contains no express written description for this limitation. The District Court likewise did not identify written description support for this limitation, as its JMOL-related order did not even cite the patent when discussing written description. Instead, the District Court accepted Mondis's incorrect argument that an alleged impeachment of LG's expert during his noninfringement testimony somehow negated his written description testimony. Not only did the alleged impeachment not occur, but the cited testimony does not bear on his invalidity testimony, which stood unrebutted. Without any basis in the patent, the jury was not free to ignore the uncontroverted evidence of no written description. The denial of invalidity JMOL must be reversed.

Second, substantial evidence does not support the jury's finding that LG's televisions satisfy the "communication controller" limitation in both asserted claims. Mondis could not, and did not, present *any* direct evidence showing that LG's televisions meet this limitation. Instead, Mondis relied on its expert's conclusory testimony that an industry standard required a communication controller. However, the relied-upon standard addresses communications *protocols* and is silent about any communication controller *hardware*. While LG's televisions implement the standard, they employ a configuration without communication controllers. Mondis also relied on a third-party datasheet of a chip, despite its expert admitting he did not know whether any LG television incorporated that chip. Mondis's conclusory opinions for this limitation were built on mere speculation. That is not substantial evidence. The denial of noninfringement JMOL must be reversed.

These liability issues are dispositive, and a ruling in LG's favor on either issue would resolve this appeal without needing to address the remaining issues.

## 2. Damages

Should this Court uphold the liability verdict, the retrial jury's damages verdict of $14,300,000 should be vacated because Mondis improperly urged the jury to apply a tripling damages multiplier. This multiplier is legally and factually unsupportable for four reasons. First, no licensee ever agreed to Mondis's purported "policy" of tripling the royalty rate for litigation. Second, Mondis's cited verdict in

the Innolux case was not comparable, as it post-dated the hypothetical negotiation, is not a license, and involved a mix of different parties and products. Third, Mondis's settlement agreement with Innolux was not in evidence, and there was no evidence about that agreement's scope or any apportionment. Fourth, LG's expert's testimony from another case had no connection to the facts of this case, post-dated the hypothetical negotiation, and was not admitted as substantive evidence. The jury's $14,300,000 damages award must be vacated.

## B. Mondis's Appeal

This Court should not disturb the District Court's grant of a new damages trial because two legally impermissible arguments from Mondis irreparably infected the first trial's damages verdict. Mondis's expert Bratic espoused a "threshold" damages theory that charged the royalty rate of the entire eight-patent family even if only one patent is licensed. This theory violated the legal mandate to apportion the value of the asserted patent from the value of the other patents in the family or the value of standardization. Regardless, Mondis failed to dispute the finding that it improperly skewed the jury's damages horizon by repeatedly highlighting the entire market value of LG's televisions, and this failure is an independent ground for affirmance. The District Court did not abuse its discretion.

Mondis's remaining challenges to the other discretionary decisions—all reviewed for abuse of discretion—should all also be affirmed. First, the District

Court did not abuse its discretion in limiting the damages retrial to the first trial's evidentiary record when Mondis relied on this very evidence to avoid waiver of its right to a retrial. Second, the District Court properly refused to find this case exceptional and deserving of attorney fees because, as it found, this was a close case on the merits and it was Mondis's misconduct that was exceptional. Third, the District Court properly exercised its discretion in denying damages enhancement based on a fulsome analysis of the *Read* factors and a separate, holistic analysis under *Halo*. Fourth, the District Court correctly restricted prejudgment interest to the period beginning after the complaint's filing given Mondis's deliberate delay in filing suit, and correctly set simple prejudgment interest at the Treasury Bill rate where Mondis made no showing it borrowed at higher rates.

## VI.    ARGUMENTS REGARDING LG'S CROSS-APPEAL

### A.    Standard of Review

This Court reviews the denial of a motion for JMOL or new trial under regional circuit law. *Wisconsin Alumni Rsch. Found. ("WARF") v. Apple Inc.*, 905 F.3d 1341, 1346 (Fed. Cir. 2018). Under Third Circuit law, this Court "exercise[s] plenary review over a district court's rulings on motions for JMOL, applying the same standard as the district court." *Idenix Pharm. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149, 1153 (Fed. Cir. 2019). "A grant of JMOL is appropriate 'where a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have had a legally sufficient evidentiary basis to find for the party on that issue.'" *Id.* at 1153-54.

### B.    No Reasonable Jury Could Have Found Written Description Support for the '180 Patent's "Type" Limitation

There was insufficient evidence to find written description support for the claim limitation "identification number for identifying at least a type of said display unit" ("the 'type' limitation"). In denying JMOL, even the District Court did not identify ***any*** support for this limitation in the specification. Appx222-223. Although the substantial evidence standard is deferential, this deference is not limitless. *See OSI Pharm., LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) ("Mere speculation is not substantial evidence."). Moreover, "[s]ilence is generally not

disclosure." *Novartis Pharm. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1017 (Fed. Cir. 2022); *see also id.* at 1017 n.2 (rejecting "implicit disclosure" as satisfying written description requirement). Under similar situations where there was insufficient evidence to sustain a validity verdict, this Court has reversed the denial of written description JMOL. *E.g.*, *Ariad Pharmas., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1340 (Fed. Cir. 2010) (en banc); *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1342 (Fed. Cir. 2021); *Idenix*, 941 F.3d at 1165; *Centocor Ortho Biotech, Inc. v. Abbott Labs*., 636 F.3d 1341, 1343-44 (Fed. Cir. 2011); *see also Novartis*, 38 F.4th at 1015. This Court should do so here as well.

## 1. Invalidity Background

The '180 patent-in-suit describes a system for controlling a specific display unit (*e.g.*, computer monitor) configured to receive video signals from an external video source (*e.g.*, computer). Appx551. Figure 1 depicts this system:



FIG. 1

Appx556.

The display unit ("display device 6")'s memory stores one or more identification numbers. Appx557, Fig.2. A computer may request control of a newly-connected display unit by transmitting the computer's individualized identification number, which the display unit then compares to a stored list of known identification numbers. Appx570, 5:38-42. If the computer's identification number matches a registered identification number in the display unit's memory, that computer can control aspects of the display unit, such as its brightness and contrast. *Id.*, 5:43-47. If there is no matching identification number, the computer cannot control the display unit. Figure 3 depicts this operation:



Appx558, Fig.3. Alternatively, the computer can store registered identification numbers for specific display units and gain control of the display unit by matching the display unit's identification number against its stored list. Appx570, 5:61-6:4.

In either configuration, each identifier is associated with a specific computer or a specific display unit. That is, the patent consistently describes a one-to-one relationship in which one identification number corresponds to one device. For example, "the microcomputer 7 in the display device 6 waits for **sending of the identification number assigned to the computer 1**, that is, **the so-called ID number** from **the computer 1**."[2] *Id.*, 5:35-38. After this registration process, "the computer 1 is allowed to control the display device 6[.]" *Id.*, 5:43-44. Similarly, for the alternative configuration, "**an ID number** is sent to the computer 1 from **the display device 6** so that the computer 1 identifies that **the display device 6** … is connected," and "[b]y doing this, the computer 1 communicates with **_a specific display device 6_**." *Id.*, 5:62-6:6.

The patent also discloses another embodiment, which covers "a plurality of display devices" in communication with one computer. Appx571, 7:12. Even in this embodiment, "**_[e]ach_** of the display devices 6B, 6C, and 6D has … a registered ID number." *Id.*, 7:18-20. Figure 5, depicting this embodiment, shows an identification number specifically identifying each particular display unit:

---

[2] Unless otherwise noted, all emphases, highlights, and annotations are added.



FIG. 5

Appx560, Fig5; Appx571, 7:25-33.

The prosecution history is consistent with this one-identification-number-to-one-device disclosure. As initially filed, claim 14 (then numbered 40) mirrored the specification's disclosure by reciting "an identification number for identifying *said* display unit." Appx18192-18193; Appx20615-20616 (615:22-616:11). Fourteen years after the effective filing date, Mondis amended the prosecution claim by inserting the phrase "at least a *type* of" to overcome a prior art rejection. Appx18203-18204; Appx18209-18210. As amended, the limitation in the issued patent reads: "an identification number for identifying ***at least a _type_ of*** said display unit." Appx18203-18204; Appx20417 (417:13-23); Appx20576-20577 (576:1-577:3); Appx20616 (616:12-21). In so doing, Mondis changed the nature of the claim's identification number from one identifying a *specific* display unit to one

14

identifying a "*type*" of display unit. Appx6109 (Mondis admitting the 2007 "amendment expressly changed the function of the ID number from one that identifies <u>the display unit</u> to one that identifies the <u>type</u> of the display unit" (underlining in original)).

At trial, Mondis asserted claim 14 and dependent claim 15, with claim 14 including the "type" limitation: "said display unit information including ***an identification number for identifying at least a type of said display unit*** and characteristic information of said display unit[.]" Appx573. LG challenged the claims' validity for lack of written description of the "type" limitation. Although Mondis did not put on a rebuttal, the jury found in its favor. Appx193.

The District Court denied LG's invalidity JMOL motion based on the presumption of validity, without identifying specification support for the "type" limitation. Appx221-224. Instead, the District Court relied on the purported impeachment of LG's expert, although no such impeachment occurred and the cited testimony was unrelated to invalidity. Appx223.

## 2. The Undisputed Evidence Shows Claims 14 and 15 Fail to Satisfy the Written Description Requirement

A patent specification "shall contain a written description of the invention[.]" 35 U.S.C. §112, ¶1 (pre-AIA). The key written description inquiry "is whether the disclosure 'conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Streck, Inc. v. Rsch. & Diagnostic*

*Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012). "This test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id.* The inquiry focuses strictly on possession, "not whether a claimed invention is an obvious variant of that which is disclosed in the specification." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008). Here, the '180 patent lacks support for the "type" limitation.

### a. The '180 Patent Does Not Disclose the "Type" Limitation

The specification does not describe the "type" limitation. Rather than describing a class of display units, the specification describes a different invention where the identification number identifies a ***specific*** display unit.

The specification, as described above, is clear: the '180 patent's disclosed embodiments associating computer(s) with specific display device(s). That is, "***an*** identification number is set to ***each*** device." Appx572, 10:28; *see also* Appx570, 6:5-6 ("[C]omputer 1 communicates with ***a specific*** display device 6[.]"). This specific identification number is what facilitates communication in the disclosed system. Appx572, 10:28; Appx570, 5:36-38 ("[D]isplay device 6 waits for sending of the identification number assigned to the computer 1, that is, the so-called ID number from the computer 1."). Confirming this operation, Mondis's expert admitted the computer performs this comparison of "***that particular*** number against

16

a list that it has to check to see if it can talk to ***this particular*** display unit." Appx20382-20383 (382:22-383:1).

There is no disclosure of an identification number for identifying a ***type*** of display unit in the patent. *See generally* Appx550-582. Instead, the specification discloses the use of an identification number to identify a specific display unit. *Id*. This difference is fundamental. Mondis successfully relied on this distinction during prosecution to overcome the prior art by changing "identifying ***said*** display unit" to "identifying ***at least a <u>type</u> of*** said display unit." Appx18192-18193; Appx18203-18204; Appx18209-18210; Appx15102; Appx20417 (417:13-23); Appx20576-20577 (576:1-577:3); Appx20615-20616 (615:22-616:21). Yet, Mondis did ***not*** cite any specification support, which is unsurprising as no support exists in the '180 patent for the "type" limitation. Appx18209-18210; Appx15102.

In this light, the written description verdict cannot stand. For example, in *Novozymes A/S v. DuPont Nutrition Biosciences APS*, the patent included a claim targeting defendant DuPont's enzyme variant. 723 F.3d 1336, 1341 (Fed. Cir. 2013). Although the *Novozymes* claim's three limitations could separately "be found at points within the underlying 2000 application," the patentee "never presented them together in any particular embodiment." *Id.* at 1341-42. Affirming the JMOL of no written description, this Court reasoned that, by "[t]aking the claims as a whole rather than as the sum of their individual limitations, nothing in the 2000 application

indicates that Novozymes then possessed what it now claims," because the original application "***contains no disclosure*** of any variant that actually satisfies the claims." *Id.* at 1346, 1348.

Under *Novozymes*, a claim lacks written description support even where a patent contained explicit but disparate support for each limitation. *Id.* The situation here is worse than *Novozymes*. There is ***no*** support for the "type" limitation anywhere in the '180 patent, because Mondis's 2007 amendment significantly changed the claim's focus and scope without specification support. *See generally* Appx550-582; Appx20417-20418 (417:24-418:15); Appx20572-20574 (572:12-574:20); Appx20616-20617 (616:24-617:10).

The utter lack of support for the "type" limitation compels JMOL in LG's favor. "[A] patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification … [as] it is in the patent specification where the written description requirement must be met." *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 927 (Fed. Cir. 2004); *Centocor*, 636 F.3d at 1347 ("A patent also can be held invalid for failure to meet the written description requirement based solely on the face of the patent specification."); *Novozymes*, 723 F.3d at 1350.

### b. The Experts Agreed the '180 Patent Does Not Disclose the "Type" Limitation

Mondis's expert, Joseph Lamm ("Lamm"), admitted the '180 patent's written description fails to expressly disclose the asserted claims' "type" limitation:

> Q. And you agree that ***the specification of the '180 patent does <u>not</u> expressly recite*** an identification number for identifying ***a type*** of display unit. Correct?
>
> A. ***Yes***.

Appx20417-20418 (417:24-418:2); *see also* Appx20418 (418:10-15). At no point during trial did Lamm ever testify that a skilled artisan would have found support for this limitation in the patent. This alone should be dispositive. *See Rivera v. ITC*, 857 F.3d 1315, 1319-22 (Fed. Cir. 2017) (affirming lack of written description where patentee's expert "agreed that '***the patent is silent*** on" claimed configuration).

LG's expert, Dr. Robert Stevenson ("Stevenson"), also testified the '180 patent nowhere discloses an identification number to identify a ***type*** of display unit. Appx20616-20617 (616:24-617:10); Appx20570-20571 (570:24-571:1). Stevenson explained that, when Mondis amended claim 14, it changed the identification number's claimed function from uniquely identifying an "exact monitor" to identifying "a particular ***type*** of a computer monitor." Appx20616 (616:12-21); *see also* Appx6109. This change was consequential because "it's a different idea" that is "***not expressed anywhere in the patent***." Appx20614-20616 (614:5-616:23); *see also* Appx20618 (618:15-23). The idea of the identification number identifying a

*type* of display unit "doesn't show up until someone wrote that claim in 2007." Appx20618 (618:24-25). Given this lack of disclosure, Stevenson concluded the asserted claims are "invalid because of this lack of written description." Appx20619 (619:4-15). Not surprisingly, Mondis did not present a rebuttal case given its lack of specification support to rebut Stevenson's testimony. As no witness testified that the written description requirement is satisfied, Stevenson's testimony stood unrebutted.

Although a patent does not need to recite the claimed subject matter *verbatim*, it must convey possession with reasonable clarity to a skilled artisan. *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323, 1329-30 (Fed. Cir. 2000). That showing was impossible here because Lamm admitted there is no express support for the "type" limitation and failed to rebut LG's evidence of no written description support. There was no evidence the jury could have relied upon to establish the legally-required possession.

The lack of rebuttal testimony makes this case even weaker than *Centocor*, where the patentee also "presented no expert testimony on written description at trial and instead chose to rest on the [asserted] patent specification[.]" 636 F.3d at 1348-49. The *Centocor* patentee at least provided some written description testimony from the patent's inventor. In contrast, Mondis has ***no*** evidence that a skilled artisan

would find written description support in the '180 patent.  As *Centocor* dictates, the denial of JMOL of invalidity must be reversed.  *Id.* at 1353.

### 3. The Record Does Not Support the District Court's Post-Trial Denial of JMOL

Unable to point to any specification support for the "type" limitation, Mondis's post-trial briefing advanced two main arguments to avoid invalidity: (1) Stevenson was impeached during his ***noninfringement*** testimony; and (2) "serial numbers," a term the patent never uses, provide written description support.  The District Court accepted Mondis's first argument without commenting on the second.  Appx223.  Like Mondis, the District Court did not identify specification support for the "type" limitation.  Appx221-224.  These arguments cannot avoid invalidity.

#### a. Stevenson's Alleged Noninfringement Impeachment Cannot Create Written Description Support

The District Court adopted Mondis's flawed argument that Stevenson was impeached during his noninfringement testimony.  Appx223.  This purported impeachment did not occur and, importantly, does not impact his unrebutted written description testimony.

During Mondis's cross-examination regarding his noninfringement testimony that LG's televisions do not meet the "type" limitation, *id.*; Appx20533 (533:12-14), Stevenson acknowledged the accused televisions include red-green-blue ("RGB")

data bits that an industry standard characterizes as a "display type." Appx20665 (665:10-17).

This was *not* an impeaching statement. Stevenson never denied these RGB bits exist, and his testimony regarding these bits never changed. Instead, he consistently opined that, despite the standard's "display type" nomenclature, the RGB bits are "characteristic information," rather than the claimed "identification number," which the patent distinguishes from characteristic information. Appx20579-20581 (579:1-581:1); Appx20585 (585:11-18); Appx20599 (599:2-5); Appx20601-20605 (601:10-605:11); Appx20606 (606:8-18); Appx573, Claim 14 (claiming each separately). And immediately after providing this testimony, Stevenson emphasized that these RGB bits were "[d]efinitely not" enough to establish infringement. Appx20665 (665:18-20). The alleged impeaching statements on which the District Court relied did not involve any actual contradiction or inconsistency. The District Court's sole basis for denying JMOL is thus flawed.

Moreover, these alleged impeachments do not affect Stevenson's *invalidity* testimony, because they all relate to *noninfringement*. In determining whether a jury had a reasonable basis for its verdict, the law asks whether the testimony *specific to an issue* was controverted and impeached, which did not happen here. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334 (Fed. Cir. 2007), illustrates this principle. When patentee Integra questioned the credibility of three experts, this

Court focused on the experts' testimony about the issue at hand and disregarded the "cross-examination of these witnesses [that] was directed to general issues[.]" *Id.* at 1344. This Court also rejected Integra's attack on the credibility of a fourth expert for "chang[ing] his position," because "this criticism was not directed to the validity of the information obtained." *Id.* at 1346. And this Court rebuffed Integra's challenge to a fifth expert for misunderstanding the certification process, as the Court "cannot discern an impeachment of credibility" and the "scientific bases of the experiments performed and the information they produced was not challenged by any contrary witness." *Id.*

Under *Integra*, because the alleged impeachment testimony does not relate to the written description requirement or the patent's actual disclosure, Mondis cannot misuse the noninfringement testimony to salvage its claims' validity. *Id.*; *see also Nuvo Pharm. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368, 1381 n.4 (Fed. Cir. 2019) (finding no written description where cited "testimony is irrelevant to the written description inquiry, because it does not point to any disclosure in the specification to which the testimony could relate"). Under *Integra*, a reasonable jury could not ignore Stevenson's uncontradicted and unimpeached testimony on written description, even if his testimony on noninfringement was allegedly impeached.

### b. Mondis's Alternative Noninfringement-Related Argument Cannot Create Written Description Support

Although not addressed by the District Court, Mondis also argued that Stevenson's testimony on "serial numbers"—a term never used in the '180 patent—somehow provided written description support for the limitation. Specifically, Mondis cited Stevenson's testimony that "serial numbers" (1) could be used to "identify a particular display unit," Appx20570-20571 (570:18-571:13), and (2) could hypothetically be a "type ID," Appx20667 (667:6-12). Neither of these infringement-related statements about an industry standard addresses whether a skilled artisan would find support *in the specification* for the "type" limitation, especially since Mondis misrepresented Stevenson's testimony.

In the first cited passage, Stevenson discussed—for noninfringement—whether the accused "EDID" data format standard described anything like the *unique* identification number disclosed in the specification and original claims. Appx20571 (571:4-13) (discussing "*unique serial number* … *uniquely used to identify a particular* display unit"); Appx20570-20571 (570:18-571:13). On its face, this testimony does not relate to the claimed identification number for a "*type* of said display unit," which is the relevant inquiry. Appx20572 (572:12-14) (emphasizing that serial number does not "correspond[] to what is actually claimed by Claim 14").

Mondis also twisted the second cited passage of Stevenson's testimony on noninfringement. Appx20664-20667 (664:8-667:12). Addressing a testing report for LG televisions, Stevenson explained that a serial number could ***hypothetically*** be an identification number for identifying a type of display unit. Appx20667 (667:6-12). But as Stevenson emphasized, "no one has made that allegation" for infringement, *i.e.*, "that an ID serial number would be an identification number for identifying a type of display unit." Appx20681-20682 (681:24-682:11). No one made such allegations because, as Stevenson elaborated, it would require hypothetically mapping the serial number onto the model number to see if the serial number could be used to "figure out the model number." *Id.* No such mapping of model number onto serial number is disclosed or suggested in the '180 patent. *See generally* Appx550-582. Nor is there anything in the patent describing a serial number that identifies any ***type*** of display unit. *Id.*

Thus, Stevenson's noninfringement-related testimony about a serial number is irrelevant to written description. It is thus unsurprising that the District Court did not even mention Mondis's argument. Appx221-224.

### c. Mondis's Arguments in the First Appeal Do Not Demonstrate Written Description Support

In its First Appeal, Mondis raised three new theories to support the "type" limitation, despite not presenting these theories to the jury or the District Court. Not only are these new theories forfeited, *In re Google Tech. Holdings LLC*, 980 F.3d

858, 862-64 (Fed. Cir. 2020), but these theories cannot provide written description support.

First, Mondis pointed to Lamm's testimony that "display type are [*sic*] CRT, LCD, color or monochrome." First Appeal, Dkt.35 p.33; Appx20498-20499 (498:23-499:12). But that is immaterial because there is ***no disclosure*** in the patent (express or otherwise) of an identification number for identifying a display unit as a CRT or LCD display, or as a color or monochrome display. *See generally* Appx550-582. In fact, "monochrome" does not appear in the patent. *Id.* Nor do the words "CRT," "LCD," or "color" occur in the context of an identification number. *Id.* And the patent does not disclose an LCD *display unit*; it only discloses an LCD error screen attached to a CRT display unit. Appx571-572 (8:65-9:3); Appx20386 (386:14-25).

Second, the specification's single use of the phrase "type of display device" in its Background section offers no help. First Appeal, Dkt.35 p.33 (citing Appx15018 (1:41-44)). This passage refers to a ***prior art*** multiscan monitor rather than the claimed invention, Appx15018 (1:41-44), and is thus legally irrelevant to a written description inquiry. *Tronzo v. Biomet, Inc*., 156 F.3d 1154, 1159 (Fed. Cir. 1998) (reversing JMOL denial where cited patent passage was "reviewing the prior art and did not describe the invention"). And this passage is ***never*** connected to an

identification number or to the invention. Appx15018 (1:24-2:34); Appx20617-20618 (617:11-618:12).

Third, when asked during the First Appeal's oral argument to identify support for the "type" limitation in the specification, Mondis cited the patent's discussion of an identification number sent from the display device to the computer, because the passage mentions a "communication function." 1st Appeal Tr., 21:19-23:40[3] (citing Appx570 (5:60-67)). But that passage says nothing about a display type. Appx570 (5:62-67) ("[A]n ID number is sent to the computer 1 from the display device 6 so that the computer 1 identifies that the display device 6 having a communication function is connected and the computer 1 compares the ID number with the ID number registered in the computer 1."). Instead, the passage indicates the display device transmits an identification number identifying a *specific* display unit—not a *type* of display unit—from the display device to the computer, so that the computer may control the display device if the display unit's "ID number is registered" with the computer. Appx570 (5:60-6:4).

Mondis cannot fill this non-disclosure by arguing that Lamm supposedly equated the passage's "communication function" with the "type" limitation. As Mondis conceded, Lamm's passing reference to "communication function" never

---

[3] https://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1812_05062021.mp3.

directly linked it to a display "type." 1st Appeal Tr., 29:50-30:08 ("Q. And where does he talk about the type? A. He doesn't use the word type…."). Mondis never presented the jury with any evidence connecting this "communication function" to the "type" limitation, simply because the two are not associated.

Hence, even if Mondis's new theories are not forfeited, they fail on the merits.

### d. No Substantial Evidence Exists to Support the Jury's Verdict of No Invalidity

To satisfy the written description requirement, there must be support in the specification for the challenged limitation. *See Ariad*, 598 F.3d at 1351 (requiring "objective inquiry into the four corners of the specification"). No reasonable jury performing this objective inquiry into the four corners of the '180 patent could have found written description support for the "type" limitation. And the District Court could not either as its opinion did not identify any evidence on which the jury could make this finding. Appx223-224.

This Court has reversed denial of written description JMOL in cases where it found just a "thin thread of support" for a challenged limitation in the specification. *Id.* at 1358. Here, there is simply no support.

Ultimately, all trial evidence on this issue—including the patent itself, Lamm's admission that the patent fails to disclose the limitation, and Stevenson's uncontradicted and unimpeached testimony of inadequate written description—points to the inescapable conclusion that the '180 patent fails to satisfy the written

description requirement for the "type" limitation. The Court should reverse the denial of JMOL on written description.

## C. No Reasonable Jury Could Have Found that LG's Televisions Included the Claimed "Communication Controller"

The asserted claims require "a ***communication controller*** capable of bi-directionally communicating with said video source." Appx573, 11:51-52. Although relying solely on literal infringement, Mondis did not present any *direct* evidence that LG's televisions contain a communication controller, as claimed. Mondis instead asserted that a communication controller had to be there based on (i) an industry standard that does not require communication controllers and (ii) a datasheet for a memory chip that is not in any LG televisions. Mondis's expert merely speculated LG's televisions had a communication controller, although he could not locate one. This is not substantial evidence. The infringement verdict must be reversed.

### 1. Noninfringement Background

#### a. The Accused Televisions and Standards

Mondis accused 630 LG televisions of infringement. Appx20308 (308:3-4). These televisions have HDMI ports, which comply with the HDMI standard and allow televisions to connect with video sources like DVD/Blu-Ray players. Appx20314 (314:21-23); Appx20293-20294 (293:23-294:2); Appx17844. Some

LG televisions also have VGA ports, which comply with the Video Electronics Standards Association's ("VESA") "Plug & Play" ("PnP") standard and can connect televisions to computers. Appx20309 (309:2-10); Appx20325 (325:2-6); Appx16163; Appx17849.

The HDMI and PnP standards both require compliance with another VESA standard called Enhanced Display Data Channel ("E-DDC"). Appx20296 (296:13-19); Appx20306 (306:5-7). The E-DDC standard describes a bi-directional communications protocol[4] called "DDC2B," which can be used to transmit a television's "EDID" data to a video source and relies on the "I2C" communications protocol developed in the 1980s. Appx20343-20344 (343:6-344:11); Appx20344-20345 (344:12-345:8).

### b. Mondis Failed to Present Evidence of a Communication Controller at Trial

LG produced over 180,000 pages of technical documents and witnesses for deposition. Appx20814 (814:15-25). Despite this wealth of information, Mondis did not present any *direct* evidence that LG's televisions contain the claimed communication controller. Instead, Mondis relied on the E-DDC standard and a third-party datasheet with no connection to LG's televisions.

---

[4] A protocol is a technique to perform certain operations. Appx20363 (363:16-19).

Because Lamm lacked evidence that LG's televisions have a communication controller, he conclusorily asserted "that a bidirectional communication controller is **necessarily present** in all the accused products" because televisions must comply with the E-DDC standard's "protocol functions, and that requires a communications controller and it's clearly bidirectional." Appx20354 (354:6-22).

Lamm even drew his own "comm. controller" box into the televisions' memory or "EEPROMs," where he speculated a communication controller should be, as his demonstrative shows:



Appx6396.

While predominantly relying on the E-DDC standard, Lamm also cited an EEPROM datasheet from a company called Microchip Technology, Inc.

("Microchip"). Appx20356-20359 (356:11-359:3); Appx20472-20473 (472:24-473:22); Appx16393-16408. According to Lamm, the "I/O Control Logic" block in the Microchip datasheet (which LG did not produce) was supposedly a "communication controller."



Appx16393; Appx20476 (476:5-20).

But Lamm conceded on cross-examination that he did not know whether LG's televisions used a Microchip device or whether the Microchip datasheet corresponded to anything in LG's televisions:

Q.   Okay. But you don't know whether LG Electronics' televisions, in fact, use anything from this company called Microchip Technology, Inc. Isn't that right?

A.   That's correct.

…

Q.   And you don't know, sitting here on the stand in front of this

> jury, whether LG Electronics has this chip, this memory, inside of its television. Is that right? You don't know?
>
> A.  I do not know.

Appx20474-20475 (474:8-475:2).

Mondis's lack of evidence is no accident. LG's televisions do not have a communication controller because they implement the standards through a bare interface responsive to an external video source's instructions. Appx20609-20612 (609:1-612:5). That is, the memory chips in LG's televisions cannot have a communication controller because these chips "in no way can control the flow of information out of the television," and instead provide "a bare interface … to the memory" that "in no way can control any communications." Appx20609-20610 (609:14-610:5). This bare interface merely responds to communications sent by an external device. Appx20611-20612 (611:18-612:10).

LG moved for noninfringement JMOL. While agreeing "that Mondis offered no direct evidence that the accused televisions contain [a communication controller]," the District Court held that, based on "circumstantial evidence," the jury could have drawn an "inference that the accused televisions contain a communications controller." Appx224-226. According to the District Court, "Lamm stated that, for an LG television to communicate the EDID data to the video source as required by the [E-DDC's] DDC2B protocol, it must have a communications controller to perform six functions that enable the communication."

Appx225. The District Court concluded the jury could have believed Lamm's assertions that a communication controller is "necessarily present." Appx225.

## 2. A Jury Verdict Cannot Be Based on Speculation and Conjecture

"When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). As this Court remarked, "[a]lthough a jury is entitled to draw reasonable inferences from circumstantial evidence, reasonable inferences themselves must be more than speculation and conjecture." *Brigham & Women's Hosp., Inc. v. Perrigo Co.*, 761 F. App'x 995, 1004 (Fed. Cir. 2019). "[A] party cannot rest on 'conclusory allegations, improbable inferences, [or] unsupported speculation[.]'" *Id.*

"Conclusory expert testimony does not qualify as substantial evidence." *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019). Where an expert offers conclusory testimony on infringement, JMOL is appropriate. *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006). An expert "just saying that something is so does not make it true, especially when there is no record support and, in fact, the [evidence] indicates otherwise." *Dominion Energy, Inc. v. Alstom Grid LLC*, 725 F. App'x 980, 986 (Fed. Cir. 2018).

This Court has often reversed a denial of noninfringement JMOL where there was insufficient evidence to sustain a jury verdict of infringement. *E.g.*, *WARF*, 905 F.3d at 1347-50; *Dominion*, 725 F. App'x at 987. It should do so here as well.

### 3. Lamm Improperly Relied on An Industry Standard

Lamm asserted the E-DDC standard necessarily requires a communication controller. Appx20354 (354:6-22). This conclusory assertion cannot, alone, support the verdict. *See Kim*, 465 F.3d at 1320. To be legally sufficient, Lamm had to present corroborating evidence. *See id.*; *Brigham*, 761 F. App'x at 1005 (rejecting "uncorroborated, conclusory, and interested" testimony of expert/inventor as insufficient to "sustain the jury verdict").

There was no corroboration here. The phrase "communication controller" does not appear anywhere in the E-DDC standard's 34-page specification. Appx16327-16360. Certainly, Lamm could not point to any requirement for a communication controller in the standard. Appx20342-20354 (342:16-354:22). The standard's silence on this issue is unsurprising because it focuses on communication *protocols* for data transmission and therefore does not address, much less dictate, the *hardware* to implement these protocols. Appx20343-20345 (343:6-345:8); Appx16327-16360. Simply put, the E-DDC standard does not require a communication controller. *Id.*

With the hardware implementation left to the manufacturer's discretion, devices can comply with the standard ***without*** a communication controller. LG's televisions, for example, implement the standard with a bare interface—which cannot, according to Lamm, be a "communication controller"—responsive to an external video source's instructions. Appx20470 (470:20-23); Appx20609-20612 (609:1-612:5) This uncontradicted and unimpeached testimony about the bare interface—something that the jury was not free to ignore—devastates Lamm's assertion that a communication controller is necessarily present in any E-DDC-compliant device. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) ("[A] court should give credence to the evidence … supporting the moving party that is uncontradicted and unimpeached[.]"); *Imperium IP Holds. (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*, 757 F. App'x 974, 978-80 (Fed. Cir. 2019) (reversing JMOL denial where defendant's expert offered uncontradicted and unimpeached testimony).

And given the E-DDC standard's silence about this hardware, precedent precludes any reliance on this standard to satisfy the "communication controller" limitation. As this Court cautioned, "in many instances, an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010). When the standard is not suitably specific, "it is ***not*** sufficient

for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes." *Id.* at 1328. Such caution is particularly apt here, where the E-DDC standard lacks the requisite specificity by never mentioning a communication controller. *Fujitsu* therefore precludes Mondis from taking the standards-based shortcut that it presented to the jury.

### 4. Lamm's Reliance on Microchip's Datasheet Is Insufficient

The Microchip datasheet is likewise legally insufficient because it is irrelevant to LG's televisions, as evidenced by the District Court's silence about it when addressing LG's JMOL motion. Appx224-226.

As Lamm conceded, the Microchip datasheet is "a specification that ***LG had nothing to do with*** putting together" and is "[n]ot an LG document." Appx20474 (474:18-22). Although Lamm used this datasheet to suggest "what was inside LG's televisions," he admitted that he did not perform a "search of the [LG] products to see whose [EEPROM] manufacturer they used," and that he did not know "whether LG Electronics has this chip, this memory, inside of its television." Appx20473-20475 (473:19-475:2). His testimony about the lack of connection between the datasheet and LG's televisions speaks for itself. Appx20474-20475 (474:8-475:2). He could only say that this Microchip chip is "a compatible memory," even though compatibility is irrelevant to whether a Microchip chip is in LG's televisions.

Appx20473-20474 (473:23-474:3). Hence, his opinion—which amounts to a guess—based on the Microchip datasheet was speculative and unreliable.

Where the expert's "statements were entirely conclusory" and where he "pointed to no structure [in the accused products] that were admitted into evidence" to meet the limitation, no reasonable jury could have found that the limitation was met. *Paradox Sec. Sys., Ltd. v ADT Sec. Servs, Inc.*, 388 F. App'x 976, 981-82 (Fed. Cir. 2010); *see also Kim*, 465 F.3d at 1320.

### 5. Mondis Cannot Rely on Improper or Unreasonable Inferences

Mondis cannot argue the jury drew proper inferences that LG's televisions have the claimed "communication controller." A jury can only draw ***reasonable*** inferences and cannot speculate. *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 116 (3d Cir. 1980); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1308 (Fed. Cir. 2019) (applying Third Circuit procedural law).

As Third Circuit precedent explains, "[i]nferred factual conclusions based on circumstantial evidence are ***permitted only when***, and to the extent that, ***human experience indicates a probability that certain consequences can and do follow*** from the basic circumstantial facts." *Sweeney*, 637 F.2d at 116. If the Court "decides that no reasonable person could reach the suggested conclusion on the basis of the hard evidence without resorting to guesswork or conjecture[,]" permitting "a jury to draw an inference of the ultimate fact under these circumstances is to substitute the

38

experience of logical probability for what the courts describe as 'mere speculation.'" *Id*. Under *Sweeney*, a reasonable jury cannot draw the necessary inferences from the trial record.

First, the jury cannot make the giant leap required to infer a communication controller is necessarily present in LG's televisions based on the E-DDC standard, when this standard does not require specific hardware implementation, such as communication controllers. *See* Sec.VI.C.3. Given the E-DDC standard's silence about a communication controller, there can be no "logical probability" as required by *Sweeney*. Nor does such "logical probability" arise from any "shared experience in human endeavors" or "factual conclusions from circumstantial evidence in daily life," *Sweeney*, 637 F.2d at 116, since lay jurors do not deal with this standard in their daily life. This leap can only be made through improper speculation and conjecture. *See id.*; *Brigham*, 761 F. App'x at 1003-05 (affirming noninfringement JMOL where "only speculation" supported verdict).

Second, there is a wide logical chasm between the Microchip datasheet and LG's televisions. As Lamm conceded, this Microchip datasheet is not an LG document and does not correspond to any chip in LG's televisions. *See* Sec.VI.C.4. Because there is a myriad of memory manufacturers, Appx20355-20356 (355:22-356:6), no reasonable jury could find that it was probable for the televisions to have Microchip memories. Nor do lay jurors encounter this technical information in their

daily life. Only through guesses could they find a communication controller in LG's products.

Third, a reasonable jury could not infer a communication controller from Stevenson's cross-examination, as Mondis argued. *See* First Appeal, Dkt.35 pp.43-44. At trial, Mondis's cross-examination used out-of-context statements from Stevenson's invalidity report to suggest the prior art I2C specification had communication controllers. Appx20674-20678 (674:3-678:24). As Stevenson repeatedly indicated in response, the statements about the pre-1993 prior art do not apply to LG's televisions: "***LG TVs don't implement this this way***." Appx20678 (678:4-11); *see also* Appx20675-20676 (675:14-676:18); Appx20681 (681:7-11). Stevenson's distinctions between the pre-1993 prior art and LG's televisions were clear, uncontradicted, and unimpeached. A reasonable jury was not free to disregard this testimony and to draw unsupported inferences. *See DeVona v. Zeitels*, 766 F. App'x 946, 954 (Fed. Cir. 2019).

In sum, while the Court must draw all reasonable inferences in Mondis's favor, there is nothing here but wild speculations and conjectures untethered to any evidence that LG's televisions have the claimed communication controller. Under controlling law, that is not enough for Mondis to meet its burden of proof, and noninfringement JMOL is imperative. *See WARF*, 905 F.3d at 1349-50.

**D.    No Reasonable Jury Could Have Found the Damages Awarded at Retrial**

If the Court upholds liability, it should vacate the $14,300,000 retrial damages award premised on a legally improper damages multiplier.

**1.    Damages-Related Background**

In 2007, Mondis sued many defendants, including LG, in Texas for patent infringement based on their computer monitors.  Appx509-510.  When the '180 patent-in-suit issued in January 2009, Mondis added this patent to the suit.  Appx511.  After negotiations with Mondis's executive Michael Spiro ("Spiro"), LG executed a license agreement for monitors (the "Monitor Agreement") in September 2009 and was dismissed from the Texas suit.  *Id.*  Other defendants, including Hon Hai and TPV, subsequently settled.  Appx15168-15200.  Mondis's Texas case resulted in a 2011 verdict against Innolux on its monitors and televisions (the "Innolux Verdict").  Appx511.  While its appeal was pending, Innolux settled with Mondis in 2013 (the "Innolux Settlement").  *Id.*

Mondis filed suit against LG's televisions in June 2014 on multiple patents, including the '180 patent.  Appx512.  Only claims 14-16 of the '180 patent survived the LG-requested reexaminations of Mondis's asserted claims  *Id.*

The parties proceeded to trial in 2019.  On damages, Mondis presented the testimony of Walter Bratic ("Bratic"), Appx228, and LG presented the testimony of John Hansen ("Hansen").  Appx242.  The evidence at this trial showed that Mondis

owned two patent families, with the '180 patent-in-suit being one of eight patents in the '090 patent family. Appx228. To calculate damages just for the '180 patent, Bratic used a non-apportioned 0.25% family-wide royalty rate, which he tripled to 0.75% based on a so-called "uncertainty discount" multiplier. Appx229. In cross-examining Hansen, Mondis raised his prior testimony in the *University of Pittsburgh v. Varian* ("*Varian*") case to buttress its damages multiplier. Appx244-245. The jury awarded $45,000,000 in damages. Appx230.

The District Court vacated this excessive award and granted a damages retrial. Appx249; Appx263. Based on Mondis's refusal to comply with court orders and failure to present properly-apportioned damages theories, the District Court excluded Bratic from the retrial. Appx296-324.

At retrial, Mondis again advocated for a tripling multiplier, Appx541-543, based on (i) Spiro's licensing "policy" of threatening licensees with a 0.75% post-litigation rate for refusing a 0.25% pre-litigation license rate, (ii) the Innolux Verdict, (iii) the Innolux settlement, and (iv) Hansen's *Varian* testimony. Appx30294-30296 (294:19-296:6). The retrial jury returned a $14,300,000 award. Appx506.

### 2. The Retrial Jury Applied a Damages Multiplier

At retrial, Mondis calculated a royalty using the formula of royalty base times royalty rate. Appx30155-30156 (155:23-156:1). The base was 19,049,978 televisions. Appx30156 (156:2-3). For its per-television rate, Mondis applied a per-

patent rate to a television's average sales price ("ASP"), Appx30290 (290:12-20), with the per-patent rate calculated by dividing the 0.25% family rate by at least five patents.  *E.g.*, Appx30160-30166 (160:20-166:16).  While the parties disagreed on the ASP, the District Court reasoned the retrial jury likely used a $500 ASP.  Appx534.  Applying this data to the royalty formula, the royalty should be:

*$500 ASP × 19,049,978 TVs × (0.25% family rate / 5 patents) = $4,762,494.50.*

This $4,762,494.50 is almost exactly one third of the retrial jury's $14,300,000 award.  To calculate damages, the retrial jury necessarily applied Mondis's multiplier.

### 3. There Is No Legal or Evidentiary Support for Mondis's Damages Multiplier

To support its multiplier, Mondis invoked the principle that "a patent that is determined to be valid and infringed is more valuable."  Appx30176 (176:8-11); Appx541.  Weaponizing this principle, Mondis created an "uncertainty discount," which supposedly reflected the uncertainty of litigating infringement and invalidity, to justify why a defendant in litigation must pay triple the pre-litigation rate.  Appx30108-30109 (108:23-109:5); Appx30110-30111 (110:13-111:6).

This "uncertainty discount" has no legal support.  The District Court did not cite any legal authority to support a damages multiplier in its most recent opinion.[5]

_____

[5] The District Court only cited Hansen's testimony acknowledging that a valid

Appx541-542.  While its 2019 opinion cited two cases, both cases merely recognized that litigation-related uncertainty could lower a patent's value.  Appx243-244 (citing *Spectralytics, Inc. v. Cordis Corp*, 649 F.3d 1336, 1347 (Fed. Cir. 2011); *Prism Techs LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369 (Fed. Cir. 2017)).  Critically, neither case considered, much less adopted, a damages multiplier.

Allowing a damages multiplier, as the District Court did here, would permit any patentee to inflate damages at will by invoking litigation uncertainty.  Such multipliers defeat the apportionment mandate and create a patentee windfall while punishing defendants.

Beyond lacking legal support, the District Court's and Mondis's four cited pieces of evidence cannot support a damages multiplier.  Appx542-543; Appx30294-30296 (294:19-296:6).

First, Mondis's multiplier relied on its executive's licensing program policy.  Appx30108-30109 (108:2-109:5).  This licensing "policy," which no licensee ever accepted, cannot support such an uplift.  *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376-82 (Fed. Cir. 2021); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311-12 (Fed. Cir. 2018).  As here, the *Omega* patentee supported its royalty rate with its president's testimony about his "licensing program" and "policy" of

_____

and infringed patent is more valuable.  Appx541.  But Hansen rejected Mondis's damages multiplier and "uncertainty discount."  Appx30164-30165 (164:6-165:1); Appx30174 (174:4-24).

charging the same rate per unit "*regardless* of what patents were included or what technology was covered." *Omega*, 13 F.4th at 1379 (italics in original). This Court rejected that testimony because "Omega's theory would permit it to obtain a particular royalty rate merely by relying on its internal 'policy' without regard to comparability[.]" *Id. Omega*'s ruling was a logical extension of *Finjan*'s reasoning. In its case, Finjan urged its jury to adopt its licensing executive's $8-per-user rate "because 'that's what Finjan would have asked for at the time.'" *Finjan*, 879 F.3d at 1311-12. This Court, however, ruled that merely because a "royalty rate would be the *current starting point* in licensing negotiations says little about what the parties would have proposed or agreed to in a hypothetical arm's length negotiation[.]" *Id.* (italics in original).

Like *Omega* and *Finjan*, Mondis relied on its licensing "policy" of threatening a tripling multiplier as a starting point for negotiations. For example, Mondis argued that Hansen ignored "Mondis and Hitachi's established licensing policy" and that the hypothetical negotiation would have discussed "the consummation of that policy in the Mondis/LG agreement." Appx30289-30290 (289:21-290:2). But as in *Finjan*, Mondis's policy is merely a starting negotiation demand, Appx30138-30139 (138:25-139:11), not the outcome of the negotiation. As Mondis's agreements show, no licensee ever agreed to a rate reflecting a multiplier. For example, despite years of litigation on computer monitors, Appx30139 (139:12-24), the LG-Mondis

Monitor Agreement did not apply any multiplier—its royalty instead reflected a Percentage discounted ███ rate for sixteen patents. Appx30140-30141 (140:18-141:19). Similarly, the Licensee ███ and Licensee ███ Agreements applied a non-multiplied rate, despite Mondis litigating against these parties for years. Appx30123-30124 (123:1-124:15); Appx30031 (31:5-18).

There is thus a disconnect between Mondis's licensing "policy" and consummated agreements because no licensee ever accepted this "post-litigation" multiplier, even after years of litigation. As this Court warned, a rate "based on a *proposed*, but unaccepted, license … can not [*sic*] support the jury's verdict because it is based on fiction," and because "patentees could artificially inflate the royalty rate by making outrageous offers." *WhitServe, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 29-30 (Fed. Cir. 2012) (italics in original).

Second, the District Court's justification of the multiplier based on the Innolux Verdict contradicts its prior finding that the Innolux Verdict was neither probative nor comparable to the hypothetical negotiation. Appx304-322; Appx542. As it explained, the 2011 "Innolux jury verdict post-dates the date of the hypothetical negotiation" which is 2009, Appx305, and the Innolux Verdict is not comparable to the hypothetical negotiation since "a jury verdict is not a license[.]" Appx316; Appx310-322. "At best, the Innolux jury verdict reflects the lay opinion about the appropriate reasonable royalty in a different case with different defendants and a

different mix of products." Appx320. Indeed, the Innolux Verdict adopted a 0.75% rate for three (not one) patents against a different defendant (Innolux), different products (Innolux's monitors and televisions), and a different product mix (90% monitors and 10% television, not 100% television here). Appx30125 (125:5-21); Appx30142-30144 (142:15-144:13).

Despite this finding, the District Court permitted Mondis to present the Innolux Verdict at retrial, and even cited it to sustain the retrial award.[6] Appx542. Because there was no evidence that the Innolux Verdict is comparable to the hypothetical negotiation, it is not legally probative and any jury award based on it cannot stand. *See Unisplay S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 517-19 (Fed. Cir. 1995) (vacating award because "the royalty determination was not supported by *relevant* evidence" (italics in original)).

Third, the District Court also relied on the Innolux's post-verdict settlement. Appx542. But no reasonable jury could have relied on the Innolux Settlement because it was ***not*** in evidence. Appx450 (ruling that "as the Innolux agreement was not admitted in the previous trial, it will not be admitted at retrial"). The only

---

[6] This use of the Innolux Verdict was *per se* unduly prejudicial. *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975) ("It is sufficient that knowledge of the prior verdict could have influenced the jury's decision on either count so that the defendant was unduly prejudiced."); *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 633 (D.C. Cir. 2010); *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1009-10 (9th Cir. 2007); *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1272 (8th Cir. 1997).

evidence about the settlement was testimony from Hansen and Spiro mentioning Innolux's payment of the Texas jury's award. Appx542. Their testimony, however, was insufficient, as it never established that the settlement's scope was co-extensive with the Innolux Verdict. Appx30125-30126 (125:22-126:18); Appx30143 (143:12-14); Appx30148-30149 (148:24-149:1); Appx30160 (160:12-19); Appx30174 (174:15-20). To the contrary, the Innolux Verdict's and Innolux Settlement's scope differs. Appx315 n.6. And there was also no expert opinion to apportion the Innolux Settlement to just the '180 patent-in-suit. Appx30160 (160:12-19); Appx30174 (174:15-20). So, there was no testimony to account for the technological and economic differences between that settlement and the hypothetical negotiation. Appx30125 (125:5-21); Appx30142-30144 (142:15-144:13). As a result, the jury received "little more than a recitation of royalty numbers" about this settlement, and that is legally improper. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1328-29 (Fed. Cir. 2009).

Finally, the District Court also relied on Hansen's *Varian* testimony. Appx542-543. This testimony is, however, untethered to the patent-in-suit, unconnected to the hypothetical negotiation's date, and is not substantive evidence.

The *Varian* testimony has no connection to the '180 patent. As Hansen stated without contradiction, his *Varian* testimony involved a license between Varian and Stanford University containing "a particular clause that was three times as indicative

of the upward influence for a patent that has been determined to be valid and infringed." Appx30176 (176:18-177:8). The *Varian* patent was also not similar technologically, being directed to "improv[ing] radiation therapy by reducing damage to healthy tissue during treatment." *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 561 F. App'x 934, 936 (Fed. Cir. 2014). Using the *Varian* testimony thus violates the rule that "[a]ny evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

Further, Hansen's *Varian* testimony is temporally unconnected to the January 6, 2009 hypothetical negotiation date. Appx30156 (156:15-18). Hansen gave his *Varian* testimony over three years later in February 2012. Appx6130-6137. Despite the years separating these two events, Mondis offers no reason to connect them. So, the non-contemporaneous *Varian* testimony cannot reflect the hypothetical negotiation's circumstances. *See Unisplay*, 69 F.3d at 518 (vacating award where expert used circumstances "at the time of the trial" instead of "at the time the infringement began").

And the *Varian* testimony was not substantive evidence on which a reasonable jury could base its award. The District Court admitted the *Varian* testimony solely for the "purpose of impeachment." Appx447. Yet, Mondis did not use the *Varian* testimony to impeach. When asked whether he applied a multiplier in *Varian*,

49

Hansen responded: "That's a mischaracterization of my analysis and how I used that fact in that matter," Appx30176 (176:8-17), because his *Varian* analysis "applied a particular clause that was three times as indicative of the upward influence for a patent that has been determined to be valid and infringed." Appx30177 (177:1-8). Mondis did not challenge this testimony and never confronted him with his *Varian* testimony. Appx30176-30177 (176:8-177:14). Instead, Mondis used Hansen's *Varian* testimony as substantive evidence in its closing to support its tripling multiplier. Appx30295-30296 (295:24-296:3). That is legally improper because a reasonable jury cannot decide a disputed fact based on non-substantive evidence. *See Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993). As one court put it, "the maximum legitimate effect of the impeaching testimony can never be more than the cancellation of the adverse answer by which the party is surprised." *United States v. Crouch*, 731 F.2d 621, 623 (9th Cir. 1984). Mondis's improper tactic of using impeachment material as substantive evidence confirms the *Varian* testimony cannot, and should not, support a multiplier.

There is no legal or evidentiary support for Mondis's damages multiplier, and this Court should correct this error by vacating the damages award.

# VII. ARGUMENTS REGARDING MONDIS'S APPEAL

Mondis challenges a multitude of the District Court's discretionary decisions. Because the District Court did not abuse its discretion, this Court should affirm these challenged rulings.

## A. Standards of Review

Under Third Circuit law, a district court may grant a new trial where the verdict is "against the great weight of the evidence and would effect a miscarriage of justice," *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996) (en banc), or where it is "reasonably probable" the verdict was influenced by prejudicial statements, *Draper v. Airco, Inc.*, 580 F.2d 91, 96-97 (3d Cir. 1978). Such decisions are reviewed for abuse of discretion. *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1370 (Fed. Cir. 2010).

Evidentiary decisions, like "restricting [parties] to the evidence, witnesses, and testimony from the first trial" in retrial, are reviewed for "an abuse of discretion." *Habecker v. Clark Equip. Co.*, 36 F.3d 278, 288 n.18 (3d Cir. 1994); *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1341 (Fed. Cir. 2009) (applying Third Circuit law).

"[D]enial[] of enhanced damages and attorney fees, and [a court's] choice of the prejudgment interest rate … are reviewed for abuse of discretion." *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997).

## B.     The District Court Properly Granted a New Damages Trial

After presiding over the first trial and thoroughly reviewing the record, the District Court granted a new damages trial because the $45,000,000 award was legally unsupportable and against the great weight of the evidence.  In reaching this decision, the District Court found Mondis (1) violated the apportionment requirement because its "threshold" damages theory failed to isolate the '180 patent's incremental value and confused the patent's value with the accused industry standard's value; and (2) likely skewed the jury's damages horizon with the televisions' entire market value.    Appx227-241, Appx248-249, Appx258-263. While Mondis challenges finding (1), MondisBr. pp.35-48, it cannot show an abuse of discretion.  And its failure to challenge finding (2) provides an independent basis for affirmance.

### 1.     The New Trial Grant Is Reviewed for Abuse of Discretion

Mondis seeks "plenary review" of the supposedly "erroneous legal interpretation of this Court's damages rulings." MondisBr. p.35.  But, as discussed below, the District Court correctly understood and applied this Court's precedent. Sec.VII.B.3.b.  The abuse of discretion standard therefore applies. *Vectura Ltd. v.*

*Glaxosmithkline LLC*, 981 F.3d 1030, 1035 (Fed. Cir. 2020) (explaining this Court is "bound by the Third Circuit's application of an 'abuse of discretion' standard" when reviewing a new trial decision).

### 2. Mondis's Arguments Using JMOL Standards Are Legally Irrelevant

Mondis incorrectly relies on legal standards for JMOL motions, not new trial motions. MondisBr. pp.36-40.

The "substantial evidence" standard is inapplicable here because, "[o]n a motion for a new trial—unlike a motion for a judgment as a matter of law—the judge may set aside the verdict ***even though there is substantial evidence to support it***." 11 Wright, Miller & Kane, Fed. Prac. & Proc. §2806 (3d ed.); *see also ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 549 (Fed. Cir. 1998) (citing same); *Fineman v Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992) ("[A] finding of sufficient evidence to support the jury's verdict does not preclude affirmance of a new trial order[.]"). "Unlike a sufficiency of the evidence claim, when a court evaluates a challenge to the weight of the evidence it does ***not*** view the evidence in the light most favorable to the verdict winner, but instead exercises its own judgment in assessing the evidence." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 309 n.18 (3d Cir. 2007). Mondis is thus not "entitled to all inferences in its favor as the verdict winner." MondisBr. p.48.

To disturb the new trial decision, Mondis must show the District Court abused

its discretion in finding the $45,000,000 verdict was against "the great weight of the

evidence" and would result in "a miscarriage of justice." Appx249. Mondis fails to

make this showing. *See generally* MondisBr. This alone requires affirmance. *See*

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1186-

88 (Fed. Cir. 2002) (affirming new trial grant because district court "did not abuse

its discretion" in concluding verdict "was against the weight of the evidence").

### 3. Mondis's Challenges to the New Trial Decision Lack Merit

Even under its incorrect legal standards, Mondis's arguments lack merit.

MondisBr. pp.36-48.

#### a. Mondis's Damages Theory Violated the Apportionment Requirement

Mondis's "substantial evidence" arguments are wrong because its "threshold"

licensing theory violated the apportionment requirement. MondisBr. pp.37-40.[7]

Under §284, damages based on "the ultimate combination of royalty base and

royalty rate must reflect the value attributable to the infringing features of the

---

[7] Mondis forfeited its argument the jury may have "discounted the family rate," first raised on appeal. MondisBr. pp.37, 40. Mondis had argued the jury's $45,000,000 award reflected $25 million based on the 0.25% family rate, and "the $20 million difference" was "manifestly" an "upward adjustment to remove the validity and infringement uncertaintities." Appx6153; *see also* Appx6159-6160; Appx244. Mondis cannot assign error on grounds not presented to the District Court. *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135-36 (3d Cir. 2023).

product, ***and no more***." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). "The patentee must in every case give evidence tending to separate or apportion … the patentee's damages between the patented feature and the unpatented features[.]" *Omega*, 13 F.4th at 1376. And where a party seeks to prove a rate for one patent based on licenses covering multiple patents, as Mondis tried here, it must "account for the technological and economic differences between the licenses and a hypothetical negotiation over a single, specific patent." *Id.* at 1381 (cleaned up).

Despite this precedent, Bratic admitted he "***didn't do any apportionment***." Appx21160-21161 (1160:24-1161:21). Instead, he applied the 0.25% rate for an eight-patent family, despite the hypothetical negotiation only implicating the '180 patent-in-suit. Appx21099-21100 (1099:14-1100:11), Appx21108 (1108:5-16). Bratic's approach relied on Mondis's "threshold" licenses, where "the licensee pays one price for access to the patented technology, rather than on a patent-by-patent basis," and "[t]he number of patents doesn't matter." Appx233 (quoting Mondis). As the District Court found, this approach failed to "isolate the incremental value of the '180 patent to the final product." Appx235.

To justify its non-apportionment, Mondis advances two arguments. First, it argues its "real-world licenses" are comparable. MondisBr. p.38. But its licenses are not technologically or economically comparable to the hypothetical negotiation.

None of Mondis's licenses conveyed rights solely to the '180 patent. Appx21119 (1119:13-16), Appx21124 (1124:5-19). Instead, they granted rights to two patent families. MondisBr. pp.11-13; Appx228-229, Appx233. The 2009 LG-Mondis Monitor Agreement, for example, defined "Licensed Patents" as all patents infringed by DDC standards, specifically identifying dozens of patents. Appx233; Appx15041 §1.12; Appx15054-15056. And even after Bratic's elimination of one family and focus on the '090 patent family (which includes the '180 patent-in-suit), the license scope still covered eight U.S. and many related foreign patents. *Id.*; Appx20981-20982 (981:21-982:9), Appx20999 (999:10-12).

These licenses are also technologically different. Lamm admitted the claims of the '180 patent and others in the family cover different technologies. Appx21036-21038 (1036:16-1038:7). According to Lamm, at least four patents in the family (the '088, '970, '342, and '180 patents) "are required to practice the standard" because they "block a manufacturer's ability to manufacture a TV compliant with the standards." Appx21050-21051 (1050:11-1051:4); *see also* Appx236. He even testified the '088 and '970 patents, like the '180 patent, "form ***the*** foundation of the technology we know as Plug-n-Play."[8]    Appx20414-20415 (414:5-415:21),

---

[8] Lamm claimed the '180 patent was the "heart" of the '090 patent family because "it forms the foundation of the technology we know as Plug-N-Play," but his admission that other patents also "form the foundation" shows they also qualify as "hearts" of the family. Appx20414-20415, Appx21047, Appx21050-21051.

Appx21047 (1047:5-15). Thus, while Mondis's licenses included several additional standard-essential patents, LG would not get rights to those additional patents in the hypothetical negotiation.

Economically, the 0.25% rate in Mondis's licenses is the ***rate for all eight patents*** in the family, ***not*** just for the '180 patent. Appx21099 (1099:14-21). As Spiro admitted, Mondis "***never*** granted a license to just the '180 patent for a rate of .25 percent" and "***never*** granted a license to any of the patents in the '090 family for just one patent for a rate of .25 percent." Appx21000 (1000:5-11).

Mondis's prior licenses thus differed substantially from the hypothetical negotiation. But Bratic never accounted for these differences, as precedent requires. *Omega*, 13 F.4th at 1380; *ResQNet.com*, 594 F.3d at 873. This failure was especially problematic because unasserted patents in the family had value, Appx21111 (1111:4-9), 21120-21121 (1120:1-1121:1), as confirmed by the many family-wide licenses granted at the 0.25% family rate ***before*** the '180 patent issued, Appx21111 (1111:4-9), Appx21116 (1116:7-17), and by Lamm's testimony (discussed above) that others in the family are standard-blocking patents. The '180 patent's negligible contribution to the portfolio's value is also apparent because the 0.25% family rate did not increase after its issuance. Appx21116 (1116:7-17). By including patents with value independent of the '180 patent, Mondis's licenses were not sufficiently analogous to the hypothetical negotiation and could not support the jury award.

*LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79-81 (Fed. Cir. 2012) (vacating award based on non-comparable licenses).

Second, as a separate basis for non-apportionment, Mondis invokes its "threshold" licensing policy in which a "licensee paid one price for access to each patent family for the relevant product." MondisBr. pp.38-40. But this "threshold" licensing policy is remarkably similar to the "one price for all" policy rejected by *Omega*. 13 F.4th at 1376-82. There, Omega's president testified about its "licensing program" and "policy" of charging the same $5.00 "*regardless* of what patents were included or what technology was covered." *Id.* at 1379 (italics in original). Omega also introduced allegedly comparable licenses and expert testimony that "whether it's one patent or all the patents, the way that Omega licenses them is, it's five bucks." *Id.* As this Court explained, "absent evidence of a comparable license or comparable negotiation to support an identical $5.00 rate for a one-patent license to the '278 patent, we fail to see how this patent/claim-independent approach accounts for apportionment." *Id.* Since none of those licenses were comparable licenses with built-in apportionment, Omega's licenses and policy could not legally support the $5-per-unit award. *Id.* at 1379-80.

Like Omega's president, Spiro explained his "threshold policy" provides a fixed rate regardless of the number of patents: "[Y]ou negotiate a price for the technology ... ***irrespective of amount of patents***." Appx20967 (967:8-9). Like

*Omega*, "each of the … preferred licenses involves numerous patents, in contrast to a hypothetical negotiation for a single-patent license." *Omega*, 13 F.4th at 1380. As in *Omega*, Mondis was "required to 'account for … distinguishing facts'" such as that the "allegedly comparable licenses may cover more patents than are at issue in the action, include cross-licensing terms, or cover foreign intellectual property rights." *Id.* (cleaned up). And like *Omega*, Mondis charged the same price regardless of the number of patents. MondisBr. p.38; Appx234-235, Appx239, Appx241.[9] Thus, like *Omega*'s rejected "one price for all" theory, the District Court properly rejected Mondis's "threshold" theory. *Compare Omega*, 13 F.4th at 1376-82, *with* Appx228-236.

### b.    The District Court Faithfully Applied Precedent

Mondis wrongly argues the District Court misinterpreted this Court's precedent. MondisBr. pp.35, 41-45.

As Mondis's lack of citations confirms, the District Court did not hold that "the royalty for a single patent cannot, ***as a matter of law***, be the same for one patent as for a small patent family issuing off the same specification" or "requir[e] unity" between a license and the hypothetical negotiation. MondisBr. pp.41-43 (emphasis

---

[9] Although Mondis argues its threshold licenses "did not … ***permit*** further apportionment to the '180 patent alone," MondisBr. p.44, both sides' efforts to apportion these licenses to the '180 patent at retrial contradicts this argument. Appx30293-30294 (293:9-294:14).

in original).  The District Court recognized that "threshold licenses" can "be input for the reasonable royalty analysis," and that precedent "does not require that comparable licenses show 'identity of circumstances.'"  Appx234 n.3.  But the District Court also noted the legal requirement that "the analysis must account for the differences."  *Id.* (citing *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*, LLC, 927 F.3d 1292, 1300 (Fed. Cir. 2019)); *see also* Appx298-299 (faulting "threshold" theory, not "because of any *per se* rule," but for lack of "built-in apportionment").

The District Court's faithful application of precedent found support in the later-issued *Omega*.  As in *Omega*, Mondis's license agreements "could, ***in theory***, provide a basis for a reasonable royalty if the license rate were properly apportioned."  *Omega*, 13 F.4th at 1380.  But as the District Court found, "Mondis did not account for the differences between the threshold licenses and the conditions of the hypothetical negotiation."  Appx234-235 n.3.  This is the same "fundamental problem" as in *Omega*: Mondis "failed to show that [its] agreements attributed a [0.25%]-per-unit royalty to the value of the ['180] patent." [10]  *Omega*, 13 F.4th at 1379.

---

[10] While Mondis tries to distinguish *Omega* as not implicating the patent-in-suit, it concedes some of *Omega*'s "licenses included the patent-in-suit."  MondisBr. p.43 n.9.

To buttress its position, Mondis cites *Vectura*, *Bio-Rad*, and *Elbit*.  MondisBr. pp.41-44.  But the District Court correctly distinguished these cases.  Appx232 n.2, Appx234-235 n.3 & Appx254 (*Elbit*); Appx298-302 (distinguishing *Vectura* and *Bio-Rad* in later *Daubert* ruling).

In *Vectura*, this Court found a license had "built-in apportionment," such that "principles of apportionment were effectively baked into" the license, because the technologies covered by the patent-in-suit and by the prior license had "the very same" scope, and the defendant "offered nothing to undermine that conclusion." *Vectura*, 981 F.3d at 1040-41.[11]  In contrast, ***no*** prior Mondis license is for the '180 patent alone.  Sec.VII.B.3.a.  In fact, Mondis signed many licenses to the patent family at the 0.25% family rate ***before*** the '180 patent even issued.  Appx21111 (1111:4-9), Appx21116 (1116:7-17).  Thus, unlike *Vectura*, Mondis's licenses do not have built-in apportionment.  Appx234.

In *Bio-Rad*, this Court did not disturb the award despite vacating liability for two patents, because the defendant ***did not dispute*** that liability for the remaining patent would alone support the full award.  *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372 (Fed. Cir. 2020).  *Bio-Rad* further found the apportionment

_____

[11] As the District Court observed, "the *Vectura* panel noted and relied on the fact that the district court found that the opponent had waived its objections to the expert's 'built-in apportionment' theory by failing to make a pre-trial *Daubert* motion – *not* the case here."  Appx299 n.2 (emphasis in original).

mandate met where the expert offered evidence the "licenses were technologically comparable" and "the proportion of licensed/unlicensed features was comparable to the present case." *Id.* at 1377. No such comparability evidence exists here.

Finally, in *Elbit*, the plaintiff's expert "appropriately accounted for differences between the circumstances of [a prior] settlement and the present circumstances." *Elbit*, 927 F.3d at 1299-300. Since the defendant, "which introduced no expert damages testimony of its own, ha[d] not demonstrated either faulty assumptions or a lack of reliable economic testimony that would warrant disturbing the jury's award," this Court affirmed. *Id.* at 1300 (cleaned up). Here, Bratic's "threshold" theory did not account for the differences between the licenses and the hypothetical negotiation. Appx234-235 & n.3, Appx239, Appx241.

In each of these cases, this Court upheld damages awards because proper apportionment supported them. None of Mondis's cited cases approved a damages theory like Mondis's "threshold" theory. To the contrary, *Omega* rejected an essentially identical "one price for all" theory. 13 F.4th at 1376-82.[12]

---

[12] Mondis argues the '180 patent's other family members "issued off the same specification" and were "in the same narrow field." MondisBr. p.44. But Mondis cites no basis for this exception to apportionment. Nor would such exception make sense where, as Lamm testified, these other patents claim different technologies. Appx21036-21038 (1036:16-1038:7), Appx21050-21051 (1050:11-1051:4).

### c. Policy Considerations Do Not Help Mondis

Invoking "[p]olicy [c]onsiderations," Mondis posits an imagined scenario where "the value of a patent-in-suit would vary negatively as additional patents issue." MondisBr. pp.45-46. But Mondis has not shown that its far-fetched scenario applies to the present facts.

Regardless, policy considerations support the District Court's ruling. The apportionment requirement rests on fundamental fairness because "[w]hat is taken from the owner of a utility patent" for damages purposes "is **only** the patented technology[.]" *Ericsson*, 773 F.3d at 1226. Thus, a reasonable royalty "must be based on the incremental value that the patented invention adds to the end product." *Id.* Adopting Mondis's "threshold" approach would circumvent this requirement and unfairly allow patentees to capture the value of unaccused features and unasserted patents.

### d. Mondis's Arguments About Unasserted Patents Defy Logic and Precedent

Mondis's arguments about unasserted patents also lack merit. MondisBr. pp.46-48.

First, while Mondis correctly notes the hypothetical negotiation is limited to the asserted patent, it makes an unwarranted logical leap by assuming other patents are "irrelevant." MondisBr. pp.46-47. They are not, and apportionment aims to isolate their values from the patent-in-suit's value. As this Court emphasized, where

63

"allegedly comparable licenses may cover more patents than are at issue in the action," testimony "***must*** account for such distinguishing facts when invoking [the licenses] to value the patented invention." *Ericsson*, 773 F.3d at 1227.

Second, Mondis cannot assume the hypothetical negotiation would grant a license to "the additional patents for no further royalty." MondisBr. p.47. This is irreconcilable with its argument that the hypothetical negotiation must focus on the patent-in-suit, *id.* p.46, and with Bratic's admission that the '180 patent is "the only one for which they get a patent out of the hypothetical negotiation," Appx21108 (1108:5-22). Regardless of whether Mondis would have brought later litigation or whether LG must pay for more patents, LG only gets a license to the '180 patent in the hypothetical negotiation.

Third, Mondis is doubly wrong in asserting that the District Court usurped the jury's role. MondisBr. p.48. Bratic's violation of the apportionment mandate is not a factual matter for the jury. And in any event, the District Court was permitted to assess the evidence in ruling on LG's new trial motion. Sec.VII.B.2.

### 4. Mondis's Failure to Challenge Another Ruling Independently Requires Affirmance

This Court can affirm the new trial grant for an independent reason: Mondis did not challenge the new trial grant based on the entire market value ("EMV") rule.

"[W]here a multi-component product is at issue and the patented feature is not the item which imbues the combination of the other features with value, care must

be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product." *Ericsson*, 773 F.3d at 1226. Here, LG's televisions have numerous non-accused technologies, components, and features (*e.g.*, brand name, screen size, price, picture quality), many of which drive consumer demand. Appx20707-20710 (707:7-710:8), Appx20715-20716 (715:22-716:4). Yet, only a few television components (*e.g.*, SoC, HDMI and VGA ports, memory) are accused, and none of them drives consumer demand. Appx20316-20319 (316:5-319:18), Appx20564-20566 (564:8-566:16).

In this situation, disclosure of the televisions' total revenues "cannot help but skew the damages horizon for the jury." *LaserDynamics*, 694 F.3d at 68. That is exactly what Mondis did throughout trial, by repeatedly emphasizing LG's $10 billion in revenues and comparing its requested damages against this number. Appx20951-20952 (951:24-952:11), Appx21086-21087 (1086:17-1087:14), Appx21095-21096 (1095:25-1096:2), Appx21276-21277 (1276:23-1277:2); Appx21286 (1286:14-16). That is why the District Court "agree[d] with LG that Mondis repeatedly emphasized the entire market value of LG's accused televisions, $10 billion, and that this may have skewed the damages horizon for the jury." Appx240; *see also* Appx241 ("Mondis may have placed undue emphasis on the value of the entire product[.]"). The District Court found it "even probable[] that Mondis' overall approach did skew the damages horizon for the jury, even if it did

not mislead the jury."  Appx241.

Because Mondis's "violation of the entire market value rule" by itself supports the new trial grant, Mondis's failure to challenge this ruling requires affirmance. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318-21 (Fed. Cir. 2011) (affirming new trial grant for violation of EMV rule); *LaserDynamics*, 694 F.3d at 66-71 (same).

## C.    Law and Fact Support the District Court's No-New-Evidence Ruling

Mondis has a habit of "mischaracterizing the relevant history[,]" as the District Court found.  Appx274; *see also* Appx270-274, Appx290-291.  Its challenge to the District Court's so-called "no-new-evidence" rule is yet another example of this pattern.  MondisBr. pp.49-52.

Although Mondis asserts this rule issued *sua sponte*, *id.* p.7, the District Court had a clear basis for this evidentiary ruling.  After Mondis's refusal to apportion caused the vacatur of the first trial's award, the District Court invited briefing on whether, under *Promega Corp. v. Life Technologies Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017), Mondis waived its right to any damages by exclusively focusing on its non-apportioned "threshold theory."  Appx249.  To avoid waiver, Mondis distinguished *Promega* as "the rare case where there was absolutely no evidence in the record from which to calculate damages[.]"  Appx6202.  Contrasting *Promega*,

Mondis repeatedly argued "there was extensive documentary and testimonial evidence at [the first] trial that could support a reasonable royalty," citing evidence from the first trial and presenting new theories using just this evidence. Appx6315-6317; Appx6339-6341; *see also* Appx6343. Given this argument, the District Court agreed that Mondis "presented a great deal of relevant evidence" on damages in the first trial and ruled that "*[t]he evidentiary record at trial* does not support an award of zero damages." Appx260-261.

While allowing Mondis to escape waiver, the District Court held Mondis to its word by concurrently granting LG's alternative relief. In its *Promega*-related briefing, LG argued that, if there is no waiver, the District Court "should not admit new damages evidence" in any retrial, because "new evidence would be patently unfair to LG and would unjustly burden the Court" and because "courts routinely refus[e] to admit new evidence in patent damages retrials." Appx6237; Appx6245-6246 *see also* Appx6292-6296. To support this request, LG cited many legal authorities, including from the Third Circuit whose procedural law controlled the proceeding. *E.g.*, Appx6292-6293 (citing *Habecker*, 36 F.3d at 288 n.18 (approving restricting retrial "to the evidence, witnesses, and testimony from the first trial")); Appx6245 (citing *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2016 WL 777924, at *1 (N.D. Cal. Feb. 29, 2016)). Striking a balance between Mondis's insistence the first trial's record negated waiver and LG's concern about prejudice, the District Court

limited ***both sides*** to the first trial's record, except that Mondis was permitted to submit a new damages expert report. Appx263.[13]

As this procedural history shows, Mondis is wrong that the "no-new-evidence" rule was "unsolicited" and that "there is no precedent for the ruling." MondisBr. p.49. Having avoided waiver by relying on the first trial's record, Mondis cannot bemoan the requirement that it adhere to that record. Nor can it insist that Federal Rule of Evidence 402 prohibits the "no-new-evidence" ruling. MondisBr. pp.49-50. Mondis had an unhindered opportunity to create its evidentiary record in the first trial and then cloaked itself in that record to avoid waiver. It cannot blame the District Court for making a discretionary evidentiary ruling that it invited. And Mondis has no basis to assert a violation of the Seventh Amendment, *id.* p.50, since the retrial proceeded before a jury using the very record it used to avoid waiver.

The no-new-evidence ruling, therefore, should not be reversed.[14]

---

[13] Mondis squandered this opportunity by disregarding the no-new-evidence ruling and continuing to advance its legally-prohibited "threshold theory," thus resulting in its new expert report being stricken-in-part and excluded-in-part. Appx270-289; Appx290-295; Appx296-324.

[14] There is no basis to order, as Mondis requests, the District Court to reconsider its fees, enhancement, and interest determinations, MondisBr. p.52, because none of these determinations turned on Mondis's violation of the no-new-evidence ruling, Appx526; Appx529-530; Appx513-523.

**D.  The District Court Properly Refused to Deem This an Exceptional Case**

The District Court correctly concluded this was not an exceptional case, despite Mondis's criticisms.  MondisBr. pp.52-55.

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "[A]s a matter of the sound administration of justice, the district court is better positioned to decide whether a case is exceptional, because it lives with the case over a prolonged period of time." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014).  Having presided over this case for eight years and two trials, the District Court was in the best position to assess exceptionality.

After finding that LG "presented substantial defenses" against the '180 patent based on "colorable positions" that were "hotly contested" and "close," Appx517, the District Court further found that "[t]his has been a close case and neither party has shown a striking imbalance, or advantage, in the relative strength or weakness of its substantive litigating positions."  Appx524.  Having considered the totality of circumstances, Appx523-527, the District Court declined to find this case exceptional.  Appx526.  After living with this case for eight years, the District Court did not abuse its discretion in finding LG's litigation position was neither substantively weak nor unreasonable.  Appx526-527.

Mondis disagrees with this exercise of equitable authority. MondisBr. p.53. But Mondis forgets its hands are not clean. As the District Court found, "what comes closest to standing out to the [District] Court as 'exceptional' in this case was the chapter in which *Mondis* struggled to comply with the Opinion and Order of April 22, 2020 – not misconduct by LG." Appx526.

This chapter started when Mondis disregarded this April 2020 Order and submitted two new expert reports. Appx525. The District Court struck the technical report as unauthorized, and gave Mondis two separate opportunities to submit a compliant damages report. Appx271-272. Mondis squandered both opportunities, even "try[ing] to revise the history of this case" to conceal its non-compliance. Appx271-274. Rejecting Mondis's "revisionist fantasy about history" and "alternate reality," Appx276, the District Court painstakingly parsed Mondis's report for compliant expert opinions, finding and striking about half of the report as non-compliant. Appx274-284, Appx286-287.

When Mondis refused to accept that ruling and challenged it, the District Court remarked that, because Mondis was "[t]otally ignoring the Court's directions," the "Court has now before it the fourth round of briefing which has resulted from Plaintiffs' flagrant disregard of the Opinion & Order of April 22, 2020." Appx290-291. As it put succinctly, "[t]he Court is tired of this nonsense[.]" Appx292.

The subsequent *Daubert* briefing on what remained of the damages report exposed Mondis's continued disobedience. As the District Court explained, Mondis "offered and defended reasonable royalty theories that, the Court concluded, were new versions of the threshold theory that the Court had held to be in violation of the Federal Circuit law of apportionment." Appx525-526; *see also* Appx296-324. Consequently, the District Court excluded the remainder of Mondis's damages report. Appx324.

As a later order remarked, "[t]he long story short is that Mondis was responsible for the waste of a considerable amount of time." Appx525. Although the District Court assessed exceptionality without resort to this "long story," Appx526, Mondis's pattern of disobedience provides the backdrop for why Mondis's three arguments on appeal falter.

First, Mondis wrongly asserts the jury's willfulness finding, alone, makes this case exceptional. MondisBr. pp.53-54. That is not the law. *SiOnyx LLC v. Hamamatsu Photonics K.K.*, 981 F.3d 1339, 1354-55 (Fed. Cir. 2020) (affirming denial of fees despite willfulness finding); *WhitServe, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 37 (Fed. Cir. 2012) (ruling that "an attorney fee award is not mandatory when willful infringement has been found"). Yet, as the District Court found, Mondis failed to explain why willfulness here means exceptionality. Appx524. Even on appeal, this explanation is still lacking. MondisBr. pp.53-54.

Second, Mondis incorrectly asserts—without any authority—that only trial should matter in assessing exceptionality. MondisBr. p.54. As the District Court remarked, Appx524 (citing Appx516 n.8), this Court's precedent addresses the closeness of the "case"—not of the "trial"—by considering, for instance, pre-trial defenses. *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1376-77 (Fed. Cir. 2010). This approach is consistent with *Octane*'s mandate to "consider[] the totality of the circumstances," not just some circumstances. 572 U.S. at 554.

Yet, Mondis does not rebut the District Court's legal authority, and provides none for its argument that only claims proceeding through trial are relevant to § 285. Even if the analysis were so limited as Mondis argues, the District Court found LG's validity and infringement defenses against the '180 patent to be reasonable. Appx517. After presiding over this case for eight years, the District Court did not abuse its discretion in concluding that "[t]his has been a close case and neither party has shown a striking imbalance, or advantage, in the relative strength or weakness of its substantive litigating positions." Appx524.

Third, Mondis invokes compensation and deterrence policies. MondisBr. pp.54-55. Under *Octane*, courts "**could** consider a nonexclusive list of factors," which may include "the need ***in particular circumstances*** to advance considerations of compensation and deterrence." *Octane*, 572 U.S. at 554 n.6. But nothing in *Octane* requires courts to rest their exceptionality determination on compensation

and deterrence policies. *Id.* The District Court was within its discretion to determine exceptionality based on all circumstances, rather than just on those policies. Appx524.

At base, Mondis has not met its burden of showing exceptionality.

## E. The District Court Correctly Denied Enhanced Damages

The District Court properly exercised its discretion in denying enhancement under §284. Appx512-523. Such enhancements "are not to be meted out in a typical infringement case." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016). It is, instead, "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," which is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 103-04. No such behavior occurred here.

### 1. The District Court Properly Analyzed the *Read* Factors

Mondis's attack on the District Court's analysis of *Read* Factors 2, 4, and 5 lacks merit. MondisBr. pp.56-59.

As the District Court found for Factor 2, LG reasonably believed it did not infringe a valid patent. Appx514-515. On noninfringement, LG had a good faith belief, during the '180 patent's life, based on Mondis's infringement contentions from the Texas case. In that earlier case, Mondis mapped the claimed "identification

number" on the ID Product Code field. Appx20465-20466 (465:19-466:14). But LG's televisions do not populate this field and therefore cannot infringe. Appx20578 (578:1-25); Appx20452 (452:16-25). Only in 2015—after the patent expired in 2014—did Mondis disclose its new mapping of the "identification number" onto the Feature Support Byte field. Appx20461 (461:19-24), Appx21015-21016 (1015:17-1016:8). LG also had a good faith belief on invalidity because: (1) in June 2009, the PTO started reexamination of the '180 patent's claims at Innolux's request, and repeatedly rejected those claims until Innolux settled in December 2013, Appx6125-6129; (2) LG's reexamination petitions caused Mondis to cancel the asserted claims of its five patents except for claims 14-16 of the '180 patent, Appx6025-6075; and (3) LG presented an unrebutted written description defense, *see* Sec.VI.B. The record supports the District Court's finding.

Mondis's criticisms on Factor 2 are misplaced. MondisBr. pp.56-57. The District Court's finding on this Factor was not an "about-face" from its JMOL denial on willfulness. *Id.* While courts have discretion to enhance damages for willfulness, "an award of enhanced damages does not necessarily flow from a willfulness finding," *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382-83 (Fed. Cir. 2017). Under Mondis's argument, any willfulness finding would necessarily require enhancement, thus contradicting *Halo*'s holding that enhancement should not occur in "garden-variety" patent cases. *Halo*, 579 U.S. at

109. And the District Court did not improperly shift the burden, because Mondis always bore the burden of justifying enhancement. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017).

The District Court also correctly denied enhancement under Factor 4. Appx515-516. *See Greatbatch Ltd. v. AVX Corp.*, 2018 WL 1568872, at *7 (D. Del. Mar. 30, 2018) (Stark, J.) (denying enhancement because "AVX is a large and healthy company"), *aff'd*, 813 F. App'x 609, 610 (Fed. Cir. 2020). Although Mondis asserts Factor 4 counts against large companies, MondisBr. p.58, its cases do not support this sweeping proposition. Rather, they merely hold that courts may, not must, consider a company's financials in weighing whether to enhance. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330-31 (Fed. Cir. 2021); *Metabolite Lab'ys, Inc. v. Lab'y Corp. of Am. Holdings*, 370 F.3d 1354, 1371 (Fed. Cir. 2004); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 858 (Fed. Cir. 2010).

As to *Read* Factor 5, Mondis merely rehashes its §285 argument. MondisBr. pp.58-59. As discussed above, the District Court properly found this was a hard-fought and close case, such that this Factor does not support enhancement. *See* Sec.VII.D.

The District Court further found *Read* Factors 1 (Appx514), 3 (Appx515), 8 (Appx518), and 9 (Appx518-519) did not favor enhancement, and Mondis has not

challenged those findings. Accordingly, an analysis under the *Read* Factors does not support enhancement.

### 2. The District Court Properly Applied *Halo*

The District Court further considered the generalized *Halo* framework and correctly found LG's conduct was not "sufficiently egregious to warrant enhanced damages." Appx519-523. For example, as the District Court found, LG incorporated the accused technology into its televisions before the '180 patent issued, and Mondis presented no evidence of copying. Appx521. Additionally, the District Court correctly observed that "weigh[ing] strongly against the view of LG as a pirate is that LG licensed the DDC2B technology for use in its computer monitors, paying Mondis almost $9 million for that license, plus running royalties," which "is not the conduct of a pirate." Appx521. Mondis disagrees with these findings but offers no contrary evidence. MondisBr. pp.60-61. Considering the totality of circumstances, the District Court correctly denied enhancement. Appx519-523.

Seeking to reweigh the facts, Mondis alleges that LG's good faith belief is recently formed. MondisBr. p.60. But as the District Court found, Mondis offered no evidence to justify this allegation. *Id.*; Appx522.

Mondis also criticizes the District Court's discussion of reexaminations. MondisBr. pp.59-60. But Mondis has no response to the finding that, "[a]lthough

LG's requests for reexamination occurred after the expiration of the'180 patent, this is circumstantial evidence that LG had doubts about the validity of the patents, and that these doubts were largely proven to be justified" since nearly all asserted patent claims were invalidated. Appx523.

At base, Mondis cannot overcome the well-supported finding that, "it is not difficult to see LG's infringement conduct as consistent with a reasonable belief of no infringement of any valid patent." Appx522. Mondis's challenge to the no-enhancement finding should be rejected.

## F.    The District Court Did Not Abuse Its Discretion with Its Prejudgment Interest Award

### 1.    The District Court Correctly Limited the Prejudgment Interest Award

The District Court correctly denied pre-complaint prejudgment interest. Although regional circuit law governs prejudgment interest review, *Go Med. Indus. Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1272 (Fed. Cir. 2006), Mondis does not mention the Third Circuit's four-factor test from *Feather v. United Mine Worker*s, 711 F.2d 530, 540 (3d Cir. 1983). MondisBr. pp.61-63. Mondis avoids this test because *Feather*'s first factor considers "whether the claimant has been less than diligent in prosecuting the action." *Feather,* 711 F.2d at 540.

Mondis fails this *Feather* factor.[15]  As it admitted, Mondis knew the bases to accuse LG's televisions as of April 2009.  Appx528; Appx20114-20115 (114:18-115:3); Appx20367-20368 (367:1-368:2).  In fact, "Mondis initiated litigation for infringement by televisions of the '180 patent in the Texas Case against other manufacturers in 2009."  Appx529.  Yet, Mondis tactically delayed filing suit against LG's televisions until 2014.  Appx528.

Mondis incorrectly blames LG for this delay.  MondisBr. pp.62-63.  The parties had no discussion between 2009 and 2011 because "both sides were waiting to see what was going to happen in [Mondis's] litigation" against Innolux.  Appx20945 (945:4-18).  When Mondis reached out after the 2011 Innolux trial, LG noted the ongoing uncertainty caused by Innolux's appeal.  Appx20996 (996:16-21).  Given these uncertainties, Mondis—not LG—stopped the negotiations until it could settle with Innolux.  Appx20996-20997 (996:22-997:6).  Even after settling in December 2013, Mondis did not restart negotiations with LG until April 2014.  Appx20997 (997:4-13).  By this point, five years had elapsed.

This situation resembles *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001).  In *Crystal*, this Court affirmed the denial of prejudgment interest where the patentee tactically delayed in filing suit for years while establishing a relationship with another

---

[15] Mondis also fails the other three *Feather* factors.  Appx6376-6382.

78

company.  *Id.*  Likewise, Mondis tactically delayed suit against LG while litigating and negotiating with Innolux.  Although it could have sued LG on televisions, Mondis chose to focus on another company.  This choice was, as in *Crystal*, "self-serving."

Mondis's tactical delay prejudiced LG.  When it earlier sued LG on monitors, Mondis's infringement contentions used a different data field for the "type" limitation.  Appx20465-20466 (465:19-466:9).  Unlike monitors, LG's televisions do not populate this field.  Appx20578 (578:1-17).  Based on Mondis's earlier contentions, LG assumed for years it had strong defenses for its televisions.  And Mondis never disclosed another infringement read to LG until 2015.  Appx21015-21016 (1015:17-1016:8).  Only in 2015 did Mondis reveal its new infringement theory that contradicted its contentions against monitors.  Appx20461 (461:19-24).  By 2015, it was too late for LG to take remedial measures because the damages period had closed and damages already accrued.  Mondis's tactical delay prevented LG from mitigating its exposure and damages.

This material prejudice distinguishes this case from *Kaufman*, where the patentee's delay was not prejudicial.  *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1374-75 (Fed. Cir. 2022).  And unlike *Kaufman*, the District Court only barred pre-suit interest, while awarding years-worth of prejudgment interest.  *Id.*

The District Court considered these facts and concluded "the circumstances of this case justify reducing the award of prejudgment interest" because it was "persuaded that Mondis chose not to file suit against LG in 2009 as a calculated, strategic decision." Appx529. "[I]t would not be equitable to award Mondis prejudgment interest for the period in which it chose to delay filing," which was a "litigation tactic that prejudiced LG." Appx529-530.

As this Court recognized, "it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *Kaufman*, 34 F.4th at 1374. The District Court properly exercised its discretion in limiting prejudgment interest, as permitted by *Crystal* and *Kaufman*. Appx530.

### 2. The District Court Correctly Selected the Prejudgment Interest Components

The District Court correctly used the Treasury Bill rate, without compounding, for the prejudgment interest awarded. Appx530-531.

First, the selection of the Treasury Bill rate is consistent with this Court's precedent. *E.g.*, *Verinata Health, Inc. v. Ariosa Diagnostics, Inc*, 809 Fed. App'x 965, 977 (Fed. Cir. 2020); *see also SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1083 (9th Cir. 2010). In fact, this Court affirmed an interest award at this rate when there was no evidence of actual costs at a higher rate. *Laitram*, 115 F.3d at 955. As in *Laitram*, Mondis presented no evidence it incurred costs in borrowing

money at a higher rate. Appx530. Mondis hardly could, since it has no employee, no product, and no business operation in this country. Appx30132-30133 (132:5-133:3). So, the District Court properly exercised its discretion and adopted a rate consistent with precedent. Appx530.

Ignoring this precedent, Mondis argues that certain ▉▉ [Agreement] of the ▉▉▉ [Agreement] ▉▉▉ [Agreement] should apply. MondisBr. pp.64-65. But this argument is forfeited because Mondis never presented this argument to the District Court. *Sage Prod., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997).

Second, the District Court correctly adopted simple (*i.e.*, non-compounding) interest. *Gyromat Corp. v. Champion Spark Plug Co*., 735 F.2d 549, 557 (Fed. Cir. 1984) ("[T]he determination whether to award simple or compound interest similarly is a matter largely within the discretion of the district court."); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1555-56 (Fed. Cir. 1995) (en banc) (affirming award of "interest at a simple rather than a compound rate"). Despite demanding compounding, Mondis failed to make "any demonstration that Mondis is entitled to quarterly compounding of interest, rather than simple interest[.]" Appx530. The District Court thus denied compounding based on Mondis's failure of proof, not based on the post-judgment interest statute as Mondis misrepresents. *Compare id.*, *with* MondisBr. p.65.

In short, while the District Court could have denied prejudgment interest entirely, it exercised its discretion to award post-complaint prejudgment interest at the Treasury Bill rate without compounding. There was no error.

## VIII. CONCLUSION

The Court should reverse the liability judgment, vacate the damages judgment, and affirm the rulings challenged in Mondis's appeal.

Dated: November 29, 2023

Respectfully submitted,

*/s/ Michael J. McKeon*
Michael J. McKeon
Christian A. Chu
R. Andrew Schwentker
Michael J. Ballanco
FISH & RICHARDSON P.C.
1000 Maine Ave. SW, Suite 1000
Washington, DC 20024
(202) 783-5070
mckeon@fr.com
chu@fr.com
schwentker@fr.com
ballanco@fr.com

*Counsel for LG Electronics Inc. and LG Electronics U.S.A., Inc.*

## CERTIFICATE OF SERVICE

I certify that on November 29, 2023, I electronically filed the foregoing LG Electronics Inc. and LG Electronics U.S.A., Inc.'s Nonconfidential Principal and Responsive Brief using the Court's CM/ECF filing system. Counsel for Mondis was served by email at the following addresses:

Martin J. Black (martin.black@dechert.com)

Jeffrey S. Edwards (jedwards@dechert.com)

Jeffrey B. Plies (jeff.plies@dechert.com)

Brian M. Goldberg (brian.goldberg@dechert.com)

*/s/ Michael J. McKeon*
Michael J. McKeon

# CERTIFICATE OF COMPLIANCE

LG Electronics Inc. and LG Electronics U.S.A., Inc.'s Nonconfidential Principal and Responsive Brief is submitted in accordance with the type-volume limitation of Fed. Cir. R. 28.1(b)(2). The Brief contains 16,497 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 Point.

Dated: November 29, 2023

*/s/ Michael J. McKeon*
Michael J. McKeon