# United States Court of Appeals
# for the Federal Circuit

**MONDIS TECHNOLOGY LTD., HITACHI MAXELL, LTD., nka Maxell Holdings, Ltd., MAXELL, LTD.,**
*Plaintiffs-Appellants,*

*v.*

**LG ELECTRONICS INC., LG ELECTRONICS U.S.A., INC.,**
*Defendants-Cross-Appellants.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, CASE NO. 2:15-CV-04431-SRC-CLW, JUDGE STANLEY R. CHESLER

## LG ELECTRONICS INC. AND LG ELECTRONICS U.S.A., INC.'S NONCONFIDENTIAL REPLY BRIEF

Michael J. McKeon
Christian A. Chu
R. Andrew Schwentker
Michael J. Ballanco
FISH & RICHARDSON P.C.
1000 Maine Ave. SW, Suite 1000
Washington, DC 20024
(202) 783-5070
mckeon@fr.com
chu@fr.com
schwentker@fr.com
ballanco@fr.com

*Counsel for LG Electronics Inc. and LG Electronics U.S.A., Inc.*

## CERTIFICATE OF INTEREST

Counsel for Defendants-Cross-Appellants LG Electronics Inc. and LG Electronics U.S.A., Inc. certifies the following:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case.

   **LG Electronics Inc. and LG Electronics U.S.A., Inc.**

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **None/Not Applicable**

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **LG Electronics Inc.: LG Corporation**
   **LG Electronics U.S.A., Inc.: LG Electronics Inc.**

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **FISH & RICHARDSON P.C.:** Ralph A. Philips; Scott A. Elengold*; Jared M. Hartzman; Ryan M. Teel*
   **WALSH PIZZI O'REILLY FALANGA LLP:** Liza M. Walsh; Selina M. Ellis; William T. Walsh, Jr.*
   **MAYER BROWN LLP:** Jamie B. Beaber; Michael W. Maas*; Hyunho Park*; Lisa Ferri; William J. Barrow; Anita Y. Lam*
   **POTTER MINTON:** Michael E. Jones; Allen F. Gardner*
   **CONNELL FOLEY LLP:** Jennifer Critchley*; Reade W. Seligmann*

   * No longer with the firm

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   **Yes.** *See* **LG's Notice of Related Cases filed at Dkt. 19; Sec.I.**

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   **None/Not Applicable**

Dated: March 6, 2024                    /s/ Michael J. McKeon
                                        Michael J. McKeon

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF CONTENTS......................................................................... iii

TABLE OF AUTHORITIES .................................................................... v

I.     INTRODUCTION .........................................................................1

II.    ARGUMENT...................................................................................2

       A.    The Asserted Claims Lack Written Description Support......................2

             1.    There Is No Patent Disclosure Supporting the "Type" Limitation
                   ...........................................................................................2

                   a.    Mondis's CRT/LCD-Related Cites Do Not Satisfy the
                         "Type" Limitation.................................................................3

                   b.    Mondis's Prior Art Cite Cannot Provide Written
                         Description........................................................................4

                   c.    Cites to the Prior Art's Signal-Compatibility Problem Do
                         Not Lend Written Description Support ...........................5

                   d.    The Patent Does Not Disclose Serial Numbers...............6

             2.    LG Met Its Burden of Showing that the "Type" Limitation
                   Lacked Written Description Support .........................................8

             3.    Unable to Demonstrate Written Description Support in the
                   Patent, Mondis Wages Unmeritorious Attacks on Stevenson ..14

       B.    There Was No Substantial Evidence for the Claimed "Communication
             Controller"...........................................................................16

             1.    The E-DDC Standard and Related Testimony Cannot Satisfy the
                   "Communication Controller" Limitation...................................16

             2.    The Microchip Datasheet Does Not Corroborate Anything about
                   LG's Televisions ....................................................................18

             3.    Stevenson's Testimony Does Not Help Mondis......................20

      4.     Credibility Issues Are Immaterial without Substantial Evidence .................................................................................20

C.     The Retrial Jury Erred in Using an Improper Damages Multiplier to Calculate Its Award ..........................................................................21

      1.     Mondis's Alternatives Cannot Avoid Its Tripling Damages Multiplier ................................................................................21

      2.     There Is No Legally Relevant Evidence to Justify a Tripling of Damages ...................................................................................25

           a.     Precedent Does Not Support a Tripling Multiplier ........25

           b.     Hansen's *Varian* Testimony Cannot Support Mondis's Tripling Multiplier ..........................................................27

           c.     A Licensing Policy Is Not Legally Sufficient Evidence for a Tripling Multiplier ..................................................29

           d.     The Innolux "Evidence" Cannot Support an Uplift .......30

III.    CONCLUSION...............................................................................32

CERTIFICATE OF SERVICE ................................................................34

CERTIFICATE OF COMPLIANCE .......................................................35

Material Redacted from this Nonconfidential Reply Brief

This brief contains two (2) words redacted because those words were marked as confidential pursuant to the protective order in Mondis's appellate brief. While LG takes no position on the nature of the information, out of an abundance of caution, it has marked the words confidential in its Confidential Reply Brief and has redacted those same words in this Nonconfidential Reply Brief. The words marked confidential appear on pages 21 and 22 of this brief.

# TABLE OF AUTHORITIES

**Page(s)**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*,
    501 F.3d 1307 (Fed. Cir. 2007) ................................................................. 16, 17

*AK Steel Corp. v. Sollac & Ugine*,
    344 F.3d 1234 (Fed. Cir. 2003) ................................................................. 10

*Applied Med. Resources Corp. v. U.S. Surgical Corp.*,
    147 F.3d 1374 (Fed. Cir. 1998) ................................................................. 15

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) (en banc) ............................................... 6, 9

*Brigham & Women's Hospital, Inc. v. Perrigo Co.*,
    761 F. App'x 995 (Fed. Cir. 2019) ........................................................... 18

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*,
    636 F.3d 1341 (Fed. Cir. 2011) ................................................. 3, 8, 12, 13

*Dominion Energy, Inc. v. Alstom Grid LLC*,
    725 F. App'x 980 (Fed. Cir. 2018) ............................................... 18, 19, 20

*E.I. Du Pont De Nemours & Co. v. Unifax I LLC*,
    921 F.3d 1060 (Fed. Cir. 2019) ................................................................. 8

*Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*,
    637 F.2d 105 (3d Cir. 1980) ........................................................ 18, 23, 24

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ........................................................... 24, 30

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010) ........................................................... 16, 18

*Imperium IP Holds. (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*,
    757 F. App'x 974 (Fed. Cir. 2019) ........................................................... 17

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
    496 F.3d 1334 (Fed. Cir. 2007) ................................................................. 15

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    607 F. Supp. 3d 464 (D. Del. 2022) ................................................... 32

*Kim v. ConAgra Foods, Inc.*,
    465 F.3d 1312 (Fed. Cir. 2006) ......................................................... 18

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ............................................................. 32

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ........................................................... 8

*Moba, B.V. v. Diamond Automation, Inc.*,
    325 F.3d 1306 (Fed. Cir. 2003) ........................................................... 8

*Nuvo Pharm. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs.*
*Inc.*,
    923 F.3d 1368 (Fed. Cir. 2019) ........................................................... 6

*Omega Pats., LLC v. CalAmp Corp.*,
    13 F.4th 1361 (Fed. Cir. 2021) .................................................... 27, 29

*Prism Techs LLC v. Sprint Spectrum L.P.*,
    849 F.3d 1360 (Fed. Cir. 2017) ................................... 25, 26, 27, 31

*Promega Corp. v. Life Techs. Corp.*,
    875 F.3d 651 (Fed. Cir. 2017) ........................................................... 23

*Rexnord Indus., LLC v. Kappos*,
    705 F.3d 1347 (Fed. Cir. 2013) ......................................................... 13

*Riseman v. Advanta Corp.*,
    39 F. App'x 761 (3d Cir. 2002) ......................................................... 24

*Seal4Safti, Inc. v. Cal. Expanded Metal Prod. Co.*,
    2022 WL 16710721 (C.D. Cal. Oct. 3, 2022) ................................... 24

*Sec'y of Defense v. Raytheon Co.*,
    56 F.4th 1337 (Fed. Cir. 2023) ......................................................... 22

*Spectralytics, Inc. v. Cordis Corp*,
    649 F.3d 1336 (Fed. Cir. 2011) ................................................... 25, 26

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019) ........................................................24

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
   734 F.3d 1332 (Fed. Cir. 2013) ........................................................13

*Tech. Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008) ..........................................................3

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998) ..........................................................4

*Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*,
   69 F.3d 512 (Fed. Cir. 1995) ............................................................24

# I.    INTRODUCTION

Mondis's response to LG's principal brief confirms that the liability judgment against LG must be set aside.

First, Mondis cannot identify any specification support for the "type" limitation, and cannot overcome its own expert's admission that the patent's specification does not disclose this limitation.  Besides unjustifiably attacking LG's expert, Mondis only offers inapplicable or irrelevant evidence regarding the problem to be solved, the prior art, and other data undisclosed by the patent.  The only specification disclosure that Mondis half-heartedly advances for the "type" limitation has no relationship, explicitly or implicitly, to the limitation.  There is no written description support for the "type" limitation, thus rendering the '180 patent invalid.

Second, there is no substantial evidence that LG's televisions satisfy the "communication controller" limitation.  Mondis only piles inferences upon inferences extrapolated from a standard that does not require a communication controller and from a third-party datasheet about a chip that is not in LG's televisions.  Infringement was Mondis's burden to prove, and Mondis's purported evidence for the "communication controller" limitation falls far short of satisfying that burden.

Should the Court decline to set the liability judgment aside, it should vacate the damages award. Try as it might, Mondis is unable to piece together a path by which the retrial jury arrived at its damages award, other than by using a tripling multiplier. This comes as no surprise, because Mondis asked the retrial jury for this result. Yet, neither the law nor the evidence supports this grossly inflated damages award, and it must be set aside even if liability stands.

## II. ARGUMENT

### A. The Asserted Claims Lack Written Description Support

#### 1. There Is No Patent Disclosure Supporting the "Type" Limitation

Mondis's brief does *not* cite *anything* in the patent actually disclosing an "identification number for identifying at least a *type* of display unit" (the "type" limitation). Mondis's Yellow Brief ("YB") 30-38. Although this failure to articulate any written description support is remarkable, it is unsurprising because the patent only describes the fundamentally different concept of a *specific* display unit identifier. LG Red Brief ("RB") 8-16. As Lamm (Mondis's expert) conceded, "the specification of the '180 patent does *not* expressly recite an identification number for identifying *a type* of display unit."[1] Appx20417-20418 (417:24-418:2). Stevenson's (LG's expert) uncontradicted and unimpeached testimony that nothing in the specification describes the idea of the "type" limitation only bolsters LG's

---

[1] All emphases in this brief have been added, unless otherwise indicated.

invalidity showing.  RB16-19.  Under settled precedent, this non-disclosure is fatal because "[a] patent also can be held invalid for failure to meet the written description requirement based solely on the face of the patent specification."[2]  *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1347 (Fed. Cir. 2011).

While the burden of persuasion never shifts to the patentee, YB32-33, the burden of production does: "[O]nce a challenger … has introduced sufficient evidence to put at issue" patent validity, "***the patentee*** has the burden of going forward with evidence and argument to the contrary."  *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008).  Yet, Mondis failed to meet this burden of production, with its citations either bearing no relation to the "type" limitation or failing to even appear in the patent.  YB30-38 (citing Appx20568-20569 (1:35-40, 1:41-44, 1:56-58), Appx20569 (4:26-28, 4:35-36), Appx20571 (8:50-55)).

### a.    Mondis's CRT/LCD-Related Cites Do Not Satisfy the "Type" Limitation

Mondis advances CRT/LCD-related patent cites and testimony as supposedly disclosing a display "type."  YB34 (citing Appx569 (4:35-36), Appx571 (8:50-55)).  But the "type" limitation recites more than the word "type"—it requires an "***identification number***" that is associated with "a ***type*** of display unit."  Mondis's

---

[2] Despite Mondis's suggestion, YB31-32, the Court has never cabined this principle to "complex chemical/biological genus/species case[s]."

CRT/LCD-related cites fail this requirement, because there is **no** disclosure in the patent (express or otherwise) of an identification number for identifying a display unit either as CRT or LCD. *See generally* Appx550-582 ('180 patent). Indeed, neither "CRT" nor "LCD" appears in the specification in the context of an identification number. *Id.* Nor does the patent disclose an LCD *display unit*; it only discloses an LCD error panel attached to a CRT display unit. Appx571-572 (8:50-55, 8:65-9:3); Appx20386 (386:14-25).[3] Mondis is still unable to refute these points, even after LG's principal brief raised them. RB26.

### b. Mondis's Prior Art Cite Cannot Provide Written Description

Mondis also cites the specification's single use of the phrase "type of display device" in its Background section. YB34 (citing Appx568 (1:41-44)). But this cite refers to a **prior art** multiscan monitor rather than the claimed invention. Appx568 (1:41-44). Mondis has no response to LG's cited precedent that statements about the prior art cannot provide written description support. RB26 (citing *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (reversing JMOL denial where cited patent passage was "reviewing the prior art and did not describe the invention")). Nor does Mondis address LG's point that this passage is **never**

---

[3] Mondis suggests that color and monochrome are different monitor "types," YB39, YB45. But "monochrome" does not appear in the patent, and "color" is not used in the context of "type." *See generally* Appx550-582.

connected to an identification number or to the invention as a whole.  *Compare* YB34, *with* RB26-27 (citing Appx568 (1:24-2:34); Appx20617-20618 (617:11-618:12)).

### c.　　Cites to the Prior Art's Signal-Compatibility Problem Do Not Lend Written Description Support

Mondis's cites about the prior art's signal-compatibility problem do not provide written description support, because neither Lamm's cited testimony nor any patent citation contained therein mentions an identification number for identifying a type of display unit.  YB34-35 (citing Appx20286-20292 (286:17-292:5); Appx568-569 (1:35-44, 1:56-58, 4:26-28).[4]  Certainly, an identification number that may identify a *specific* display unit, is not the same as an identification number identifying the claimed "*type* of display unit."  Appx20289-20291 (289:13-291:4).

Given this major disconnect between the "type" limitation and the signal-compatibility problem, Mondis cites an out-of-context statement from Lamm that "historically ... some displays have used type IDs to generate compatible signals." YB35 (citing Appx20369 (369:2-10)).  But Lamm made this conclusory statement in his infringement testimony, which was not about the specification's disclosure. Appx20369 (369:2-10).  The statement is thus legally irrelevant to a §112 analysis.

---

[4] Figure 2 cannot support the "type" limitation, YB35, because it discloses registered identification numbers for *specific* computers.  Appx557 (Fig.2); Appx570 (5:15-28).

*Nuvo Pharm. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368, 1381 n.4 (Fed. Cir. 2019) (rejecting testimony as "irrelevant to the written description inquiry, because it does not point to any disclosure in the specification to which the testimony could relate").

Mondis cannot bridge this disconnect by mischaracterizing Stevenson's testimony about the Sawdon prior-art reference. YB35. As Stevenson explained, Sawdon merely mentioned the "***desire*** of being able to identify the type of display device," without actually disclosing the solution to this problem. Appx20537-20538 (537:6-538:15); Appx17376 (Sawdon) (1:17-36).

Nor can Mondis bridge this disconnect by arguing that the specification would render obvious the use of an identification number for display unit "type" to address the signal-compatibility problem. That is legally prohibited. *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (en banc) ("[A] description that merely renders the invention obvious does not satisfy the [written description] requirement.").

### d. The Patent Does Not Disclose Serial Numbers

Mondis cannot manufacture written description support by stringing together disconnected portions of Stevenson's noninfringement testimony about a hypothetical serial number. YB35-38.

At the threshold, there is **no** discussion of serial numbers anywhere within the '180 patent.  RB22-23.  The patent never uses the term "serial number" or even describes a serial number that identifies a display unit **type**.  *See generally* Appx550-582.  And Mondis does not even identify any serial number in the specification.  YB35-38.

Lacking this disclosure, Mondis distorts Stevenson's noninfringement testimony, which simply noted that a **hypothetical** serial number could—theoretically—be a "type" identifier in the right context.  Appx20667 (667:6-12).  However, he explained that the specification's identification numbers "identify a **particular** display unit" and are "different" from the "type" limitation.  Appx20614 (614:18-21).  This noninfringement testimony is consistent with Stevenson's written description testimony because it demonstrates that the patent does not describe, through a serial number or otherwise, the "type" limitation.[5]

Mondis's cited cases purporting to support its use of Stevenson's noninfringement testimony for written description support are inapposite.  YB38.  None of these cases concerns the written description requirement; they instead

---

[5] Mondis rewrites history by asserting that "LG did not argue otherwise" when Mondis's closing relied on Stevenson's serial number noninfringement testimony for written description support.  YB37-38 (citing Appx20879-20880 (879:23-880:12)).  As Plaintiff, Mondis's closing came immediately before the jury was charged, leaving LG with no opportunity to rebut Mondis.  Appx20880-20881 (880:13-881:11).

address an expert's failure to demonstrate anticipation or obviousness of a patent-in-suit. *E.I. Du Pont De Nemours & Co. v. Unifax I LLC*, 921 F.3d 1060, 1074-75 (Fed. Cir. 2019); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1314-15 (Fed. Cir. 2009); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1322 (Fed. Cir. 2003). In contrast to anticipation and obviousness, a lack of written description support can be shown "based solely on the face of the patent specification," as LG demonstrated here. *Centocor*, 636 F.3d at 1347.

### 2. LG Met Its Burden of Showing that the "Type" Limitation Lacked Written Description Support

There is no dispute between the parties that the patent does not expressly describe the "type" limitation, with Lamm even admitting so. RB19. Stevenson further explained that even the "idea" of the "type" limitation is absent from the specification. Appx20614-20618 (614:5-12, 616:12-617:10, 618:15-25). This testimony stood unchallenged and unrebutted. LG thus demonstrated by clear and convincing evidence that there was no written description support (express or otherwise) for the "type" limitation, and Mondis's argument to the contrary lacks merit. YB43-48.

Stevenson specifically provided the jury with a thorough description of the patent toward the beginning of his testimony. Appx20553-20563 (553:22-563:19). As he explained, the patent describes "identification numbers … used to ***uniquely identify*** a ***particular*** monitor," Appx20559-20560 (559:18-560:14), but not "an

8

identification number for ***identifying at least a type*** of said display unit."
Appx20562 (562:14-21).

Stevenson then provided detailed testimony on the written description issue. Appx20613-20620 (613:2-619:15, 620:1-8). As he testified, the patent's discussion of identification numbers only relates to uniquely identifying a specific monitor, with the patent's sole mention of the prior art's display device type being unconnected to any identification number. Appx20616-20617 (616:24-618:12). Because there is no "mention anywhere in the patent of an identification number for identifying a type of display unit," the patent is invalid. Appx20614-20620 (614:5-12, 618:15-18, 620:1-8).

Mondis's cross-examination on the written description issue only focused on the prosecution history and the burden of proof. Appx20631-20642 (631:17-642:11); *see also* YB40, YB47-48. These points were, however, legally irrelevant. The patent examiner's allowance of the "type" limitation amendment cannot support written description, because "the ***specification itself*** … must demonstrate possession." *Ariad*, 598 F.3d at 1352. Moreover, although Mondis argues that the amendment did not prohibit the use of a serial number to satisfy the "type" limitation, there is no reference to a serial number in the specification, thus leaving the premise of Mondis's argument unsupported. *See* Sec.II.A.1d, *supra*. Nor was Mondis entitled to an "especially weighty presumption of correctness," YB47, which does

not attach in §112 inquiries. *See AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1245 (Fed. Cir. 2003) ("[W]e dispel the notion that the failure of the PTO to issue an enablement rejection automatically creates an 'especially weighty presumption' of compliance with 35 U.S.C. § 112."). The cross-examination did not disturb the substance of Stevenson's testimony on this issue.

Lamm never took the stand for rebuttal. Appx20744 (744:2-6). And at no point at trial did Lamm testify that the "type" limitation was disclosed explicitly or implicitly. His only testimony discussing whether the patent supported the "type" limitation admitted that the limitation does not appear within the specification's four corners. Appx20417-20418 (417:24-418:2). Thus, Stevenson's testimony of no written description for the "type" limitation stood uncontradicted.

As with the First Appeal, and as LG's principal brief anticipated, Mondis attempts to gin up written description support *ex post* based on a specification passage and on Lamm's testimony presented in a context entirely disconnected from the written description dispute. *Compare* YB44-46, *with* RB27-28. This specification passage, of course, says nothing about a display unit "type," much less about the "type" limitation. YB44 (quoting Appx570 (5:62-6:2)). Rather, this passage indicates that the display device transmits to the computer an identification number identifying a ***specific*** display unit (not the claimed "***type of … display unit***"), so that the computer may control the display device if the specific display unit's "ID

number is registered" with the computer. Appx570 (5:60-6:4). Indeed, the next two sentences in the specification (that Mondis's block quote omitted) confirm that the identification number identifies "a specific display device." Appx570 (6:2-9).

Lamm's testimony about "communication function" cannot rewrite this passage to provide written description for the "type" limitation. YB44-45. As Mondis conceded in the First Appeal, Lamm did not use the word "type" to describe the "communication function." 1st Appeal Oral Argument, 29:50-30:08[6] ("Q. And where does he talk about the type? A. He doesn't use the word type[.]"). Thus, Mondis never presented to the jury any evidence connecting this "communication function" to the "type" limitation.

So, Mondis now tries to create this connection, YB44-45, by stretching Lamm's testimony equating "communication function" to "video format," Appx20291 (291:1-3). Mondis does so by arguing that (1) the "communication function" distinguishes between "two groups of displays" based on whether they can or cannot support a communication function; and (2) the "video format" (a term the specification never uses) corresponds to color/monochrome or VGA displays. These arguments have no support in the specification or Lamm's testimony, and require a mishmash of too many unsupported and disconnected logical leaps to create the

---

[6] Timestamps in https://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1812_05062021.mp3.

missing connection.  Mondis is trying to push the proverbial square peg into a round hole.

As a backstop, Mondis argues that it did not need Lamm's testimony to prevail on written description.  YB41.  While in some cases that may be true, it certainly cannot be here.  Lamm admitted "the specification of the '180 patent does ***not*** expressly recite an identification number for identifying ***a type*** of display unit." Appx20417-20418 (417:24-418:2).  Despite this admission, Mondis never elicited testimony to explain how the specification could disclose the "type" limitation.  So, Mondis must now pluck a passage from the specification concerning a "communication function" and tenuously strap it to testimony that has nothing to do with written description or the "type" limitation.  Even assuming that the communication function portion of the specification is somehow connected to the "type" limitation—which it is not—cogent testimony relating this disclosure to the "type" limitation simply does not exist.

For written description support to exist, "the applicant ***must convey with reasonable clarity*** to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate that ***by disclosure in the specification of the patent***."  *Centocor*, 636 F.3d at 1348 (quotations omitted). Mondis's oblique reference to a "communication function" does not provide a

skilled artisan with any indication of the "type" limitation, let alone with "reasonable clarity."

Indeed, the facts of this case are remarkably analogous to *Centocor* where, in response to clear and convincing evidence of invalidity, the patentee likewise "presented no expert testimony on written description at trial and instead chose to rest on the [asserted] patent specification[.]" 636 F.3d at 1348-49. Unable to grapple with *Centocor*, Mondis tries to distinguish it (and LG's other cited cases) as a life sciences case in a fleeting sentence. YB31. Mondis, however, ignores that the written description requirement does not vary based on technological field. *See Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1345 (Fed. Cir. 2013) (explaining there is "no higher burden" for proving lack of written description just because invention is in "fairly predictable field"). So, under *Centocor*, the denial of JMOL of invalidity must be reversed. 636 F.3d at 1353.[7]

---

[7] Mondis is wrong that it may raise wholly new arguments on appeal. YB46. As Mondis's cited case states, an appellee can defend a judgment "on any ground ***that is supported by the record***." *Rexnord Indus., LLC v. Kappos*, 705 F.3d 1347, 1356 (Fed. Cir. 2013). Nothing in the record suggests that the "communication function" could be written description support for the "type" limitation.

### 3. Unable to Demonstrate Written Description Support in the Patent, Mondis Wages Unmeritorious Attacks on Stevenson

Without written description in the patent, Mondis resorts to maligning Stevenson on unrelated issues instead of rebutting LG's written description evidence. YB38-43.

There was nothing "incredible" about Stevenson's ***noninfringement*** testimony that color display components are not a "type of display unit." YB39. As he explained, color is "characteristic information," Appx20580 (580:13-24), which is claimed separately from the "type" identification number. Appx573 (Cl.14). Nor is there any connection between, on one hand, Stevenson's ***noninfringement*** testimony regarding TVs, projectors, and monitors, and on the other hand, whether the patent's written description provides support for the "type" limitation. YB39 (citing Appx20662 (662:2-6)).

Mondis also wrongly declares that Stevenson was impeached during his noninfringement testimony. YB35-37, 39-40. As LG's principal brief explained, RB21-23, Stevenson's noninfringement testimony about the "type" limitation consistently and repeatedly explained that the RGB bits in LG's televisions constituted "characteristic information" rather than the claimed "identification number." Appx20579-20581 (579:1-581:1); Appx20585 (585:11-18); Appx20599 (599:2-5); Appx20601-20605 (601:10-605:11); Appx20606 (606:8-18). Likewise, as he explained without contradiction, the "serial numbers" field, which was auto-

14

generated in his test report, actually contains data that is "not the serial number of the TV." *Compare* Appx20682-20684 (682:17-684:22), *with* YB40.

Regardless, any alleged impeachment on noninfringement cannot affect Stevenson's invalidity testimony. *Integra Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334, 1346 (Fed. Cir. 2007) ("We cannot discern an impeachment of credibility" where expert testimony at issue "was not challenged by any contrary witness."). Mondis's cited *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, YB41, does not permit rejection of an expert's unchallenged testimony on the basis of unrelated testimony. 147 F.3d 1374 (Fed. Cir. 1998). *Applied* simply stated that a jury may reject an expert's conclusory testimony on a ***relevant*** issue. *Id.* at 1379.

Finally, the jury instruction that Mondis cites, YB42, cuts against it. The instruction requires a witness to have "***knowingly*** testified falsely" in order to reject his entire testimony, a showing Mondis cannot satisfy. Appx20898-20899 (898:14-899:2).

In sum, none of Mondis's attacks on Stevenson has merit. His testimony that the "type" limitation lacks written description support stands unrebutted.

**B.    There Was No Substantial Evidence for the Claimed "Communication Controller"**

      **1.    The E-DDC Standard and Related Testimony Cannot Satisfy the "Communication Controller" Limitation**

Despite its reliance on the E-DDC standard, Mondis cannot dispute that the standard never discloses a communication controller. YB48-51. Even the standard's Figure 3.2, reproduced in Mondis's brief, only depicts the communication *protocol*—the communication technique—without revealing any implementing *hardware*. YB48-49. Because the standard does not disclose a communication controller, Mondis cannot rely on the standard for this limitation. *Fujitsu Ltd. v. Netgear Inc*., 620 F.3d 1321, 1327-28 (Fed. Cir. 2010).

Mondis instead argues that the E-DDC standard "*necessarily* require[s] a communications controller in the display." YB49. Mondis is wrong. If an accused product can be implemented "*at any given time in a noninfringing manner*," the product "*does not necessarily infringe* the [asserted] patent." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). Here, the standard does not dictate the hardware for its protocols. *See generally* Appx16327-16360. So, LG's televisions implement the standard through a bare interface, which can receive commands from an external communication controller located in an external video source and not in LG's televisions. Appx20609-20612 (609:1-612:5).

Lamm never disputed this fact. *See generally* Appx20270-20523 (270-523). He even corroborated it by testifying that an external video source (outside LG's televisions) controls communications by issuing the "start," "offset," and "stop" commands to the television memory. Appx20346-20352 (346:4-7, 350:16-21, 352:8-15). His testimony confirms Stevenson's explanation that, while the protocol uses "at least one" controller, the controller is in the external video source, rather than in LG's televisions. Appx20611 (611:22-24); Appx20681 (681:7-11).

A reasonable jury cannot ignore this uncontradicted and unimpeached evidence of LG's implementation. *Imperium IP Holds. (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*, 757 F. App'x 974, 979-80 (Fed. Cir. 2019) (reversing JMOL denial where defendant's expert offered uncontradicted testimony). Accordingly, no reasonable jury could conclude that LG's televisions necessarily satisfy this limitation. *ACCO*, 501 F.3d at 1313.

Nor could a reasonable jury infer a communication controller based on mere compliance with the standard's protocols. YB48-51. Although a jury can "draw … reasonable inferences … in light of [its] own experience and common sense[,]" Appx20894 (894:11-16), lay jurors do not ordinarily work with industry standards or communication protocols. Because Lamm failed to show why the inference is logically probable, neither lay experience nor common sense can justify the guesses

required to conjure a communication controller from the standard's silence. *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 116 (3d Cir. 1980).

### 2. The Microchip Datasheet Does Not Corroborate Anything about LG's Televisions

Given the E-DDC standard's silence, precedent requires proof that LG's televisions actually contain communication controllers. *Fujitsu*, 620 F.3d at 1328. Yet, Lamm only asserted, conclusorily, that some location inside a memory "known as EEPROMs" should contain this controller. YB52-53; Appx20354-20355 (354:23-355:5); Appx20471-20475 (471:22-472:21, 475:3-11). Although precedent requires corroborating evidence for this assertion, *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006); *Dominion Energy, Inc. v. Alstom Grid LLC*, 725 F. App'x 980, 986-87 (Fed. Cir. 2018),[8] Lamm never presented any evidence about any EEPROMs in LG's televisions. RB30-33, 37-38. He therefore failed to present corroborating evidence.

Instead, Mondis attempts to show corroboration with a generic datasheet of a Microchip 24C02C EEPROM. YB52-54. But there is *no* evidence of any "24C02"

---

[8] Mondis attempts to cabin *Brigham & Women's Hospital, Inc. v. Perrigo Co.*, 761 F. App'x 995, 1004 (Fed. Cir. 2019), to its facts. YB50-51. But this Court's holdings—rejecting inferences based on "speculation and conjecture," and "conclusory allegations, improbable inferences, [or] unsupported speculation"—are not so limited. Regardless, Mondis fails to address *Kim* and *Dominion*, each of which holds that conclusory testimony cannot support an infringement finding. 465 F.3d at 1320; 725 F. App'x at 986-87.

memory in LG's televisions, and Mondis only cites Lamm's uncorroborated assertion that LG's televisions *should* use "24C02" memories. YB53. If LG's televisions actually incorporated any 24C02 EEPROM, Lamm would have shown it at trial, and Mondis would have cited it on appeal. But they did not. *See* YB53-55. Such conclusory and uncorroborated expert testimony cannot constitute substantial evidence. *Dominion*, 725 F. App'x at 986-87.

Even if a "24C02" memory were in LG's televisions, there is no evidence Microchip supplied it. YB53-55. Lamm even conceded he "*do[es]n't know whether LG Electronics' televisions, in fact, use anything from this company* called Microchip Technology, Inc." Appx20474 (474:8-11); *id.* (474:18-22).

Without more, Mondis now asserts the Microchip datasheet is "'representative' of the 24C02 EEPROM chips in the accused products." YB54-55. But Lamm never claimed the Microchip datasheet is representative of *all* "24C02" memories. Appx20483-20484 (483:17-484:10). He only claimed that he reviewed unspecified datasheets "from a number of different manufacturers" and that the Microchip datasheet was "representative of *those* manufacturers." *Id.* He never established that LG's televisions contained a "24C02" memory chip, much less one from "those manufacturers." *Id.* That is legally deficient. *Dominion*, 724 F. App'x at 986-87.

### 3. Stevenson's Testimony Does Not Help Mondis

A reasonable jury would not infer a "communication controller" from Stevenson's testimony about the I$^2$C EEPROM prior art. YB55-56. In Mondis's quote, Stevenson explained that the ***prior art*** "I$^2$C EEPROM individually or collectively disclose ***the use*** of a communication controller" without saying ***where*** the controller is. *Id.* (quoting Appx20678 (678:12-24)). For LG's televisions, he explained the controller is not in LG's televisions; it is always in an external video source. Appx20675-20681 (675:11-15, 676:13-18, 681:7-11). As his testimony was consistent with his report, he was not "impeached." *Contra* YB55-56.

Nor was there a classic dispute among experts, as Mondis asserts. YB51-52. There was no contradiction, impeachment, or cross-examination of Stevenson's testimony addressing LG's implementation. Lamm even corroborated it. Appx20346-20352 (346:4-7, 350:16-21, 352:8-15). In contrast, Lamm only offered conclusory and uncorroborated testimony. Under the law, a reasonable jury would not infer the presence of a communication controller in LG's televisions, as required for infringement. *Dominion*, 725 F. App'x at 986-87.

### 4. Credibility Issues Are Immaterial without Substantial Evidence

Mondis's speculation that the jury found Lamm more credible than Stevenson does not preclude reversal. YB51-52. Contrary to Mondis's mischaracterization about the expert's experience, Stevenson has extensive relevant experience, the trial

court qualified him as an expert, and he was not impeached. Appx20526-20532 (526:23-532:8); *see* Sec.II.A.3, Sec.II.B.3, *supra*. Further, Lamm's background is immaterial. The issue is not whether Lamm is unqualified. Rather, the issue is that Lamm speculated and failed to show what was actually in LG's televisions. Appx20473-20475 (473:19-474:3, 474:23-475:2).

## C. The Retrial Jury Erred in Using an Improper Damages Multiplier to Calculate Its Award

### 1. Mondis's Alternatives Cannot Avoid Its Tripling Damages Multiplier

Despite advocating for its "uncertainty discount" tripling multiplier at both trials, Mondis now distances itself from that multiplier by arguing it is not possible to know the retrial jury's methodology and by hypothesizing alternative paths to the retrial award. YB29, YB57-60. None of these theorized paths has factual or legal support.

Mondis first hypothesizes that the retrial jury could have reached its award by (i) starting with the per-unit rates from the Excess Sales Price analysis ($0.55), Licensee Rate Agreement (█████), or Hon Hai Agreement ($0.70), and (ii) then uplifting these rates to the jury's $0.75 per-unit rate. YB59; *see also id.* (agreeing that "$14.3 million divided by the 19 million infringing televisions yields $0.75 per television"). Had the retrial jury taken any of these hypothesized paths, it would have failed to comply with its obligation to apportion down to just the '180 patent-in-suit. Indeed, each of

these three per-unit rates is a rate for, at least, ***the entire eight-patent family***, rather than just the patent-in-suit. Appx30194-30195 (194:23-195:2) (█████ (Licensee); Appx30195 (195:15-21) (Hon Hai); Appx30217 (217:4-7) (Excess Sales Price). In contrast, the apportioned per-unit rates that Hansen calculated for just the '180 patent-in-suit under various analyses—$0.05, $0.10, $0.14, and $0.09—were not even close to these family rates, much less to the jury's $0.75 per-unit rate. Appx30218-30220 (218:18-220:5). Taking any of Mondis's family-wide rates and increasing them upward to $0.75 per unit does not apportion to the '180 patent—it is just an improper revival of Mondis's rejected "threshold" theory, Appx227-241, Appx248-249, with additional uplift.

Second, Mondis's two qualitative factors are also inapplicable. YB59. The retrial jury never heard the testimony that Mondis cites to support these factors, because its citations come from the ***first*** damages trial, not the retrial which produced the damages award on appeal. *Id.* (citing Appx21036-21041 and Appx21035-21036). Because the cited testimony was not in evidence for the retrial jury to consider, the testimony cannot constitute substantial evidence. *See Sec'y of Defense v. Raytheon Co.*, 56 F.4th 1337, 1343 (Fed. Cir. 2023) (ruling that material "not in evidence" was not substantial evidence).

Regardless, neither factor explains how the retrial jury could have reached its $0.75 per-unit rate. Even with all reasonable inferences drawn in its favor, Mondis

offers no path—other than rank speculation—to reach the award based on these factors. YB59. Because "[t]he burden of proving damages falls on the patentee," *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017) (citations omitted; brackets in original), Mondis "must show [its] damages by evidence," and its damages "must not be left to conjecture by the jury" because "[t]hey must be proved, and not guessed at," *id.* (citations omitted). Mondis has not met this burden.

Third, Mondis also argues that the retrial jury could have reached its award by applying a 0.15% royalty rate "with no certainty adjustment at all." YB60. But Mondis cites no evidentiary support for assigning 60% (0.15% / 0.25%) of the family's rate to the '180 patent alone. *Id.* Mondis merely states that 0.15% is the "mid-point" between a 0.05% per-patent rate and the 0.25% family rate. *Id.* Without any evidence that the '180 patent deserves 60% of the family rate, there is no substantial evidence for a rate of 0.15%. As such, picking the midpoint between 0.05% and 0.25%, as Mondis suggests, simply plucks a number of out of thin air.

Without actual evidence, a reasonable jury could not infer that the '180 patent deserves 60% of the family rate because, under Third Circuit precedent, "[i]nferred factual conclusions based on circumstantial evidence are permitted ***only*** when, and to the extent that, human experience indicates a probability that certain consequences can and do follow from the basic circumstantial facts." *Sweeney*, 637 F.2d at 116. If "no reasonable person could reach the suggested conclusion on the basis of the

hard evidence **without resorting to guesswork or conjecture**[,]" permitting "a jury to draw an inference of the ultimate fact under these circumstances is to substitute the experience of logical probability for what the courts describe as 'mere speculation.'" *Id*. Plucking a per-unit rate out of a range of potential rates without actual evidence, such as the guidance of expert testimony, is nothing more than rank speculation that must be set aside. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) (rejecting award where "the $8-per-user fee appears to have been plucked from thin air"); *see also Seal4Safti, Inc. v. Cal. Expanded Metal Prod. Co.*, 2022 WL 16710721, at *3 (C.D. Cal. Oct. 3, 2022) (rejecting jury's 12% royalty rate selected by averaging range of rates as "speculation" and "guesswork," since the evidence "does not enable the jury to determine any specific royalty rate").

Fourth, even the law that Mondis cites recognizes that courts leave black box jury verdicts "undisturbed **if supported by substantial evidence.**" YB58 (quoting *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309-10 (Fed. Cir. 2019)); *see also Riseman v. Advanta Corp.*, 39 F. App'x 761, 764 (3d Cir. 2002) (affirming damages award based on received evidence). But there is no substantial evidence in the retrial record to support Mondis's purely speculative theories. *See Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 519 (Fed. Cir. 1995) (cited in YB58) (vacating damages award not supported by record evidence).

Once Mondis's speculative alternatives are set aside for lack of legal and

factual support, the only logical path for the retrial jury to reach its award is the one

advocated by Mondis at retrial and summarized in LG's principal brief:

> *$500 ASP × 19,049,978 TVs × (0.25% family rate / 5 patents) = $4,762,494.50*

RB42-43 (citing Appx30290 (290:12-20), Appx30155-30156 (155:23-156:3),

Appx30160-30166 (160:20-166:16)). This number is almost exactly one third of the

retrial jury's $14,300,000 award. This is no coincidence.[9] To calculate damages,

the retrial jury necessarily applied Mondis's tripling multiplier.

### 2. There Is No Legally Relevant Evidence to Justify a Tripling of Damages

#### a. Precedent Does Not Support a Tripling Multiplier

Mondis improperly sought, and the retrial jury awarded, a tripling damages

multiplier. This multiplier is, however, bereft of legal support.

As legal support, Mondis relies chiefly on *Spectralytics, Inc. v. Cordis Corp*,

649 F.3d 1336 (Fed. Cir. 2011), and *Prism Techs LLC v. Sprint Spectrum L.P.*, 849

F.3d 1360 (Fed. Cir. 2017). YB61-62. But neither case supports Mondis's tripling

multiplier.

*Spectralytics* involved an entirely different set of facts. There, the plaintiff

sought a 20% royalty rate, the defendant sought a lump sum without calculating a

---

[9] LG could not have requested special jury interrogatories, because the District Court already rejected LG's proposal for a verdict form with interrogatories in the first trial and this rejection was law of the case. Appx25044-25046 (7:14-9:5).

royalty rate, and the jury awarded a 5% royalty rate. *Spectralytics*, 649 F.3d at 1346-47. Although that jury awarded only a fraction of what the plaintiff's expert sought, the defendant argued that the award, which fell between both parties' positions, was "outrageously high" in part because the patents' sales price did not support the jury's 5% rate. *Id.* at 1347. The *Spectralytics* defendant was thus trying to compare a pre-litigation patent sale amount with its jury's awarded royalty rate. This Court, however, ruled that "a reasonable jury could have chosen to give very little weight to" the patent sale price on which the defendants relied. *Id.* In contrast, the present case does not involve comparing the sale price of the '180 patent to its value in a hypothetical negotiation. Nonetheless, to the extent it holds any relevance to this case, *Spectralytics* merely recognized that uncertainty surrounding litigation outcomes could create downward pressure on a patent's sale value. 649 F.3d at 1347. The Court did not hold—and the record in *Spectralytics* does not support—a tripling royalty rate multiplier to account for uncertainty.

*Prism* is even less relevant. Mondis cites *Prism* for the proposition that a settlement after litigation may be probative of patent value. YB62 (citing 849 F.3d at 1369). Mondis, however, omits that *Prism* also stated that, "[a]t the same time, various factors may work in the opposite direction, tending to make a settlement of an earlier suit too high as evidence on the valuation question presented in a later suit," particularly because "[a]n earlier settlement may cover technology either not

the same as or not comparable to the patented technology at issue in the later suit." 849 F.3d at 1369-70.  This statement in *Prism* is particularly relevant here, because there is no evidence that Mondis's cited Innolux Settlement covers comparable technology.  *See* Sec.II.C.2.d, *infra*.  And like *Spectralytics*, *Prism* plainly does not embrace a tripling multiplier.

The difference between an upward pressure on a royalty rate to reflect uncertainty and a grossly inordinate tripling multiplier is not "just semantics," as Mondis claims.  YB61.  Mondis's approach, if allowed, would give patentees a blank check to increase any damages rate exponentially merely by intoning the mantra of "uncertainty."  Such a blank check would vitiate the mandate that the "patentee must in every case give evidence tending to separate or apportion" damages and to "take care to seek only those damages attributable to the infringing features" and nothing more.  *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376 (Fed. Cir. 2021) (citations omitted).  For this reason, an unchecked damages multiplier cannot stand.

> **b.    Hansen's *Varian* Testimony Cannot Support Mondis's Tripling Multiplier**

Mondis curiously cites Hansen's testimony in the *Varian* case as legal, not evidentiary, support for its tripling multiplier.  YB62.  But no court has ever treated an expert's damages testimony as legal authority or binding precedent.

Nor does Mondis have any legitimate response to LG's point that *Varian* is not evidence on which a reasonable jury could legally base a tripling multiplier,

because it is untethered to the patent-in-suit and substantially post-dates the hypothetical negotiation. *Compare* RB48-50, *with* YB62. Mondis does not even try to show technical comparability between *Varian* and this case, *id.*, even admitting that Hansen's "testimony's relevance was not technical comparability[.]" YB62. Thus, *Varian* does not provide evidentiary support for Mondis's multiplier, and Mondis does not argue that it does. So, Mondis's argument that this testimony is supposedly relevant, *id.*, rings hollow.

And *Varian* cannot serve as impeachment evidence, as Mondis argues. YB62. According to Mondis, Hansen's *Varian* testimony demonstrates that he applied a tripling multiplier in another case, but not this case. *Id.* Yet, Mondis fails to grapple with Hansen's actual testimony, as LG presented in its principal brief, in which Hansen explained that his *Varian* testimony involved a specific license between Varian and Stanford University that contained "a particular clause that was three times as indicative of the upward influence for a patent that has been determined to be valid and infringed." RB48-49 (quoting Appx30176 (176:18-177:8)). Those facts are not present in this case, and that is why he did not apply any multiplier here. *Id.* Mondis's failure to confront this fact on appeal demonstrates the fallacy of its *Varian* argument.

### c. A Licensing Policy Is Not Legally Sufficient Evidence for a Tripling Multiplier

The evidentiary record in this case does not support Mondis's damages multiplier.  Except for its quibbling regarding the Innolux Settlement (addressed in Sec.II.C.2.d, *infra*), Mondis does not dispute that no licensee has ever accepted a royalty rate reflecting a damages multiplier, much less a tripling multiplier.  *Compare* RB44-46, *with* YB63-65.  Instead, the admitted licenses consistently apply a royalty rate which did not reflect a damages multiplier.  YB59 (citing Appx30162 (162:7-16); Appx30124-30125 (124:21-125:2); Appx30195 (195:15-21)).

Without any "real-world" evidence (as Mondis put it) showing the application of a damages multiplier, Mondis must rely on Spiro's testimony about his licensing "policy" as reflected in his rate card licensing tool.  YB63-64.[10]  That is exactly the reversible error in *Omega*.  13 F.4th at 1379.  As here, the supporting evidence in *Omega* for the royalty rate was the executive's testimony about his licensing policy.  *Id.*  As *Omega* explained, "Omega's theory would permit it to obtain a particular royalty rate merely by relying on its internal 'policy' **without regard to comparability**" to existing licenses.  *Id.* at 1379.  Unable to distinguish *Omega*,

---

[10] Some of Mondis's cited testimony again comes from the first trial and is thus irrelevant to the retrial jury's award.  YB63 (citing Appx20970-20975, Appx21003-21004, Appx21004-21005, Appx21008).

Mondis repeats this quote without saying more. YB64. Its inability to distinguish *Omega* speaks volumes.

Mondis also tries, incorrectly, to cast *Finjan* as a case in which the rate was not used or presented to licensees. YB64. But that is not the basis for the ruling in *Finjan*. 879 F.3d at 1311-12. Instead, this Court vacated the award because the executive's testimony about his $8-per-user rate was arbitrarily "plucked from thin air" and untethered to what the parties would have "agreed to in a hypothetical arm's length negotiation[.]" *Id*. Spiro's tripling multiplier was similarly arbitrary, untethered, and unapportioned to the '180 patent, thus having no bearing on what the parties would have agreed to in a hypothetical negotiation. Hence, *Finjan*, like *Omega*, precludes the use of Mr. Spiro's policy and rate card as legally relevant evidence to support a tripling multiplier.

### d. The Innolux "Evidence" Cannot Support an Uplift

Despite the District Court's citation to the Innolux Verdict in sustaining the retrial award, Mondis now concedes that this verdict is not relevant. *Compare* Appx542, *with* YB65 ("[T]he relevance of Innolux is not the verdict[.]").[11]

This concession leaves just the Innolux Settlement. Mondis, however, offers *no* response to LG's arguments that: (i) the testimony from Hansen and Spiro never

---

[11] Mondis also does not address, much less dispute, that the use of the Innolux Verdict was *per se* unduly prejudicial. *Compare* RB47 n.6, *with* YB65.

established that the settlement's scope was co-extensive with the Innolux Verdict, Appx30125-30126 (125:22-126:18); Appx30143 (143:12-14); Appx30148-30149 (148:24-149:1); Appx30160 (160:12-19); Appx30174 (174:15-20), because their scope actually differs as the District Court found, Appx315 n.6; (ii) there was no expert to apportion the Innolux Settlement to just the '180 patent-in-suit, Appx30160 (160:12-19); Appx30174 (174:15-20); and (iii) there was no testimony to account for the technological and economic differences between the Innolux Settlement and the hypothetical negotiation, Appx30125 (125:5-21); Appx30142-30144 (142:15-144:13). *Compare* RB47-48, *with* YB65. Mondis could not even show the Innolux Settlement to the retrial jury, because this document was never received into evidence. YB65.

Instead, Mondis asserts that the limited testimony about the Innolux Settlement—even though the testimony fails to address the critical points above—is enough. YB65. For this assertion, Mondis only cites *Prism*. *Id.* But *Prism* undercuts Mondis by making clear that "[a]n earlier settlement may cover technology either not the same as or not comparable to the patented technology at issue in the later suit," thus "tend[ing] to make a settlement of an earlier suit too high as evidence on the valuation question presented in a later suit." 849 F.3d at 1369-70. As there was no evidence of the required technical or economic comparability, the Innolux Settlement cannot support the retrial jury's award, even under *Prism*.

*Prism* further undercuts Mondis's reliance on the Innolux Settlement because, as one district court recognized, the settlement in *Prism* "occurred **prior to** an award of damages in the form of a jury verdict." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 505-06 (D. Del. 2022) (Bryson, Cir. J., sitting by designation). But "a settlement agreement entered into in the course of litigation **following an award of damages** is not the product of a voluntary agreement by the parties …. Rather, it is an agreement driven by the result of the litigation, and in particular by the amount of the jury's award." *Id.* at 506 (citing *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77-78 (Fed. Cir. 2012)). As in *IOENGINE*, the Innolux Settlement is legally inadequate as an indicator of the patent's negotiated value, because the Settlement reflects Innolux's payment of the verdict's full amount and occurred years after the 2009 hypothetical negotiation. *See id.* at 506-07.

In sum, the District Court legally erred in denying LG's JMOL motion on Mondis's improper tripling damages multiplier. If this Court affirms the liability verdict, it should nonetheless reverse this JMOL denial and vacate the award.

## III. CONCLUSION

For the foregoing reasons, LG requests that this Court reverse the liability judgment and vacate the damages award.

Dated:  March 6, 2024                Respectfully submitted,

*/s/ Michael J. McKeon*
Michael J. McKeon
Christian A. Chu
R. Andrew Schwentker
Michael J. Ballanco
FISH & RICHARDSON P.C.
1000 Maine Ave. SW, Suite 1000
Washington, DC 20024
(202) 783-5070
mckeon@fr.com
chu@fr.com
schwentker@fr.com
ballanco@fr.com

*Counsel for LG Electronics Inc. and
LG Electronics U.S.A., Inc.*

**CERTIFICATE OF SERVICE**

I certify that on March 6, 2024, I electronically filed the foregoing LG Electronics Inc. and LG Electronics U.S.A., Inc.'s Nonconfidential Reply Brief using the Court's CM/ECF filing system. Counsel for Mondis was served by email at the following addresses:

Martin J. Black (martin.black@dechert.com)

Jeffrey S. Edwards (jedwards@dechert.com)

Jeffrey B. Plies (jeff.plies@dechert.com)

Brian M. Goldberg (brian.goldberg@dechert.com)

*/s/ Michael J. McKeon*
Michael J. McKeon

**CERTIFICATE OF COMPLIANCE**

LG Electronics Inc. and LG Electronics U.S.A., Inc.'s Nonconfidential Reply Brief is submitted in accordance with the type-volume limitation of Fed. Cir. R. 28.1(b)(3). The Brief contains 6,923 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 Point.

Dated:  March 6, 2024                    */s/ Michael J. McKeon*
                                          Michael J. McKeon