# United States Court of Appeals for the Federal Circuit

MONDIS TECHNOLOGY LTD., HITACHI MAXELL, LTD.,
nka Maxell Holdings, Ltd., MAXELL, LTD.,

*Plaintiffs-Appellants,*

— v. —

LG ELECTRONICS INC., LG ELECTRONICS USA, INC.,

*Defendants-Cross-Appellants.*

*On Appeal from the United States District Court for the
District of New Jersey in No. 2:15-cv-04431-SRC-CLW
Honorable Stanley R. Chesler, Judge*

### PETITION FOR PANEL REHEARING AND REHEARING *EN BANC* OF PLAINTIFFS-APPELLANTS

JEFFREY B. PLIES
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3012
jeff.plies@dechert.com

MARTIN J. BLACK
BRIAN M. GOLDBERG
JEFFREY S. EDWARDS
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
martin.black@dechert.com
brian.goldberg@dechert.com
jeffrey.edwards@dechert.com

*Counsel for Plaintiffs-Appellants*

ORIGINALLY FILED: SEPTEMBER 8, 2025
CORRECTED: SEPTEMBER 9, 2025



# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 23-2117 (lead); 23-2116 |
| **Short Case Caption** | Mondis Technology Ltd. v. LG Electronics Inc. |
| **Filing Party/Entity** | Appellant/Mondis Technology Ltd., Hitachi Maxell, Ltd., n/k/a Maxell Holdings, Ltd.; Maxell, Ltd. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 9/8/2025

Signature: /s/ Martin J. Black

Name: Martin J. Black

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Mondis Technology Ltd. | Mondis Technology Ltd. | Inpro Ltd. |
| Hitachi Maxell, Ltd., n/k/a Maxell Holdings, Ltd. | Hitachi Maxell, Ltd., n/k/a Maxell Holdings, Ltd. | Master Trust Bank of Japan, Ltd. |
| Maxell, Ltd. | Maxell, Ltd. | Master Trust Bank of Japan Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐     None/Not Applicable      ☐     Additional pages attached

| Dechert LLP | Robert D. Rhoad | Nisha N. Patel |
|---|---|---|
| Joseph J. Gribbin (no longer with firm) | Robert L. Masterson (no longer with firm) | Teri-Lynn A. Evans (no longer with firm) |
| Vincent A. Gallo (no longer with firm) Heidi Guetschow (no longer with firm) | Ireland, Carroll & Kelley, PC Otis Carroll James Patrick Kelley | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑     Yes (file separate notice; see below)     ☐     No     ☐     N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑     None/Not Applicable      ☐     Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF COUNSEL ............................................................................ 1

PRELIMINARY STATEMENT ......................................................................... 2

ARGUMENT ....................................................................................................... 3

I.      The Panel's Burden-Shifting Approach to Written Description is in Conflict With The Presumption of Validity and Precedent ........................................................................ 3

      A.     The Presumption of Validity Applies to All Patent Challenges .................................................................... 3

      B.     The Burden Does Not Shift to the Patentee When *In Haec Verba* Support is Missing .................................. 5

      C.     The Panel's Burden-Shifting Approach is Inconsistent With Precedent ............................................................. 9

      D.     The Panel's Analysis is in Conflict With the Presumption of Validity ............................................... 11

      E.     Rehearing is Necessary to Conform the Law on an Important and Recurring Issue ................................... 14

II.     CONCLUSION ................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Action Techs., Inc. v. Novell Sys., Inc.*,
 155 F.3d 567 (Fed. Cir. 1998)..............................................................12

*Allergan, Inc. v. Sandoz Inc.*,
 796 F.3d 1293 (Fed. Cir. 2015) ..........................................................3

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
 725 F.2d 1350 (Fed. Cir. 1984) ..........................................................4

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
 314 F.3d 1313 (Fed. Cir. 2003) ........................................................13

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
 598 F.3d 1336 (Fed. Cir. 2010) ............................................... 1, 2, 9

*Beck v. Prupis*,
 529 U.S. 494 (2000)..............................................................................4

*Blue Calypso, LLC v. Groupon, Inc.*,
 815 F.3d 1331 (Fed. Cir. 2016) ..........................................................5

*Canon Comp. Sys., Inc. v. Nu-Kote Int'l, Inc.*,
 134 F.3d 1085 (Fed. Cir. 1998) ..........................................................5

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*,
 636 F.3d 1341 (Fed. Cir. 2011) ..........................................................6

*In re Smith*,
 481 F.2d 910 (Cust. & Pat. App. 1973) ..............................................5

*Inphi Corp. v. Netlist, Inc.*,
 805 F.3d 1350 (Fed. Cir. 2015) ..........................................................6

*Microsoft Corp. v. i4i Ltd. P'ship*,
 564 U.S. 91 (2011)....................................................................... *passim*

*PIN/NIP, Inc. v. Platte Chem. Co.*,
 304 F.3d 1235 (Fed. Cir. 2002) ......................................................6, 7

*Radio Corp. of Am. v. Radio Eng'g Labs., Inc.*,
 293 U.S. 1 (1934)..................................................................................4

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997) ...............................................................8

*Source Search Tech., LLC v. LendingTree, LLC*,
   588 F.3d 1063 (Fed. Cir. 2009) ................................................. 12-13

*Univ. of Rochester v. G.D. Searle & Co., Inc.*,
   358 F.3d 916 (Fed. Cir. 2004).................................................. 6, 7, 8

## Statutes & Other Authorities:

35 U.S.C. § 282 ......................................................................... *passim*
"type", WEBSTER'S NEW WORLD DICTIONARY 1446,
   (3rd College ed. 1994) ........................................................................12

## <u>STATEMENT OF COUNSEL</u>

Based on my professional judgment, I believe the Panel decision is contrary to the following decisions of the Supreme Court of the United States and this Court: *Microsoft Corp. v. i4i Ltd. P'ship,* 564 U.S. 91 (2011); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc).

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance: Does the presumption of validity set out in 35 U.S.C. § 282 apply to all written description cases or does the burden shift to the patentee when there is no *in haec verba* support for the claims?

/s/ Martin J. Black
*Counsel for Plaintiffs-Appellants*

## PRELIMINARY STATEMENT

This case presents an important question regarding the burden of proof in written description challenges:  Where there is no *in haec verba* support in a patent specification, does the burden shift to the patentee to produce supporting evidence? The Panel effectively said yes, that the patentee may not rely on the presumption of validity set out in 35 U.S.C. § 282 and must come forward with a positive case for written description.  The Panel's burden-shifting approach is inconsistent with the statutory presumption of validity and well-established law.

The Panel justified its approach by asserting that "sometimes the patent itself is clear enough that it establishes inadequacy of support in the written description for the full scope of the claimed invention unless there is contrary evidence."  Op. at 9.  This "face of the patent" analysis is in conflict with the presumption of validity, the distribution of burdens of proof in patent cases, and the rule that a specification need not "recite the claimed invention *in haec verba*."  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (en banc). The authorities the Panel cited do not support shifting the burden to the patentee, and such a broad reading of the cases cannot survive the Supreme Court's later decision in *Microsoft Corp. v. i4i Ltd. P'ship,* 564 U.S. 91 (2011), holding that the presumption of validity adheres in every case.

The Panel's approach vitiates the fundamental division of labor between jury, district judge and appellate court. Written description is a question of fact. The bare assertion that the words of the claim do not appear expressly in the specification is insufficient to meet the statutory burden of proving invalidity by clear and convincing evidence. The Panel's decision to invalidate based on its own evaluation of the specification invaded the province of the jury and denied the patentee the protection of the presumption. Rehearing is necessary to conform the Panel decision to existing law and resolve the important question of the burden of proof and production in written description challenges.

## ARGUMENT

### I. The Panel's Burden-Shifting Approach to Written Description is in Conflict With The Presumption of Validity and Precedent.

#### A. The Presumption of Validity Applies to All Patent Challenges.

Under § 282 of the Patent Act of 1952, "[a] patent shall be presumed valid" and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. An invalidity defense must be proved by clear and convincing evidence. *i4i,* 564 U.S. at 102. That is true for all invalidity defenses, including challenges asserting lack of written description. *Allergan, Inc. v. Sandoz Inc*., 796 F.3d 1293, 1309 (Fed. Cir. 2015).

3

The statutory burden is binding at all stages of an infringement action. "[Section] 282 creates a presumption that a patent is valid and imposes the burden of proving invalidity on the attacker. That burden is constant and never changes and is to convince the court of invalidity by clear evidence." *i4i*, 564 U.S. at 97 (citing *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984)).

In *i4i*, the Supreme Court ruled that the presumption is a core feature of the 1952 Patent Act and not a procedural device for creating shifting burdens of production:

> But given how judges, including Justice Cardozo, repeatedly understood and explained the presumption of patent validity, we cannot accept Microsoft's argument that Congress used the words "presumed valid" to adopt only a procedural device for "shifting the burden of production," or for "shifting both the burden of production and the burden of persuasion." Brief for Petitioner 21–22 (emphasis deleted). Whatever the significance of a presumption in the abstract, basic principles of statutory construction require us to assume that Congress meant to incorporate "the cluster of ideas" attached to the common-law term it adopted. *Beck* [*v. Prupis*], 529 U. S. [494] at 501 [2000] (internal quotation marks omitted). And *RCA* [*Radio Corp. of Am. v. Radio Eng'g Labs., Inc.*] leaves no doubt that attached to the common-law presumption of patent validity was an expression as to its "force," 293 U. S. [1], at 7 [1934]—that is, the standard of proof required to overcome it.

*i4i*, 564 U.S. at 103-04.

As the Supreme Court held in *i4i*, courts do not employ a shifting burden of production in analyzing invalidity. The patent is presumed valid at birth and remains so. "Thus, where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue." *Canon Comp. Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).

> **B. The Burden Does Not Shift to the Patentee When *In Haec Verba* Support is Missing.**

It has long been the law that express *in haec verba* support is not required to establish compliance with the written description requirement. *In re Smith*, 481 F.2d 910, 914 (Cust. & Pat. App 1973) ("This court has held that claimed subject matter need not be described *in haec verba* in the specification in order for that specification to satisfy the description requirement"); *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1345 (Fed. Cir. 2016) (reversing Board decision and stating, "[w]e are therefore troubled by the fact that the Board did not cite any evidence other than the fact that the terms were not present in the specification to support its finding."). Indeed, a "specification satisfies the written description requirement when the 'essence of the original disclosure' conveys the necessary information—'regardless of how it' conveys such information, and regardless of

whether the disclosure's 'words [a]re open to different interpretation[s].'" *Inphi Corp. v Netlist, Inc.*, 805 F.3d 1350, 1354 (Fed. Cir. 2015) (citations omitted).

The Panel cited three cases for the proposition that "sometimes the patent is clear enough that it establishes inadequacy of support in the written description for the full scope of the claimed invention unless there is contrary evidence." Op. at 9 (citing *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1347 (Fed. Cir. 2011); *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1247-48 (Fed. Cir. 2002); *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 927 (Fed. Cir. 2004)). These decisions do not support that proposition and were all decided before *i4i* reinforced the presumption of validity under § 282.

In *Centocor*, the challenger presented an expert who testified at length regarding the lack of written description, and the court relied on this "*undisputed trial testimony*". *Centocor*, 636 F.3d at 1348-50 (emphasis added). The case did not involve a challenger's claim that the "the face of the patent" alone was sufficient to meet the challenger's burden. Unlike in this case, the challenger had produced unimpeached, undisputed testimony that written description was lacking.

The Panel described *PIN/NIP* as "holding that a patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification". Op. at 9. That is not what the decision says,

6

nor does it reflect the evidentiary record in that case. In *PIN/NIP* the patentee *admitted* that the claim was "arguably broader than the examples disclosed in the [] patent." *PIN/NIP*, 304 F.3d at 1247. Additionally, "both parties' witnesses (including legal and scientific witnesses) testified" and evidence was "corroborated by both parties' witnesses, who testified" as to facts relating to written description. Apr. 8, 2002 Reply Brief of Plaintiff-Appellant, 2002 WL 32620061, *21-22; *see also* Jan. 8, 2002 Brief of Plaintiff-Appellant, 2002 WL 32620059, *51-53 ("both parties' witnesses repeatedly testified" concerning written description and "PIN/NIP's expert repeatedly pointed out" rebuttals of the patent owner's witnesses on the issue). Again, unlike in this case, the challenger in *PIN/NIP* produced unimpeached witness testimony that written description was lacking. And to the extent that *PIN/NIP* is interpreted more broadly to approve invalidation based solely on examination of the face of a patent, that is in conflict with *i4i* and the presumption of validity, further supporting *en banc* review.

Finally, the Panel relied on *University of Rochester*, a 2004 decision in which the Court stated that the "argument that a patent may not be held invalid on its face is contrary to our case law." 358 F.3d at 927. This appears to be the first instance in which the Court referred to a claim as "invalid on its face" for want of written description support. However, the decision cites to *PIN/NIP* for that

proposition, which did not state that the patent was invalid "on its face" and involved an evidentiary record replete with expert evidence from the challenger. Moreover, the reference was dicta because *University of Rochester* involved an "undisputed" and critical fact: that the "patent does not disclose any compounds that can be used in its claimed methods." *Univ. of Rochester*, 358 F.3d at 927. More particularly, the claims recited a "compound that selectively inhibits activity of the PGHS-2 gene product," and it was undisputed that no such compounds were disclosed. *Id.* at 918, 927. In view of this admitted failure of disclosure, the Court determined the claim lacked written description support as a matter of law in view of the legal principle stated in *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997) that disclosure in such circumstances requires a "precise definition" and "not a mere wish or plan." 358 F.3d at 927. The dicta in *University of Rochester* cannot support disregard of *i4i* or the statutory presumption.

These cases do not support the exercise of a broad judicial power to invalidate based on a court's view of what the specification teaches, much less authorize courts on JMOL to reject the patent itself as substantial evidence on which a jury can rely. And to the extent there was any doubt as to scope of these cases, *i4i* settled the matter by foreclosing attempts to water down the presumption

of validity enacted by Congress in § 282.  There is no, or at least should be no, "face of the patent" written description doctrine.

### C.   The Panel's Burden-Shifting Approach is Inconsistent With Precedent.

The Panel applied its "face of the patent" approach to reverse the district court's denial of JMOL.  More particularly, the panel found that the specification failed to disclose support for the limitation "an identification number for identifying at least a type of said display unit" in claim 14 (the "type ID").  The decision was based on an erroneous view of the ambit of § 282, and if left to stand, will undermine the application of the presumption of validity in future cases.

The Panel started by correctly acknowledging that a specification "need not expressly 'recite the claimed invention *in haec verba*'" for the written description requirement to be satisfied.  Op. at 7 (citing *Ariad*, 598 F.3d at 1352); s*ee also* Op. at 11 ("It would not automatically be fatal that the type limitation was not expressly disclosed as long as substantial evidence showed that the patent disclosed identifying a type of display unit is some less express way.").

The Panel observed that the patent-in-suit, U.S. Patent No. 7,475,180, lacked express *in haec verba* support for the asserted claims.  Op. at 10.  The Panel placed no reliance on LG's proffered written description case, which was based on an

expert who made numerous admissions and the district court found lacked credibility. Op. at 11. The Panel did not overturn the district court's credibility determination, nor would it have been reasonable to do so as a reviewing court. Instead, the Panel said it was holding the claims invalid "[b]ased only on the patent and [the patentee's expert] Mr. Lamm's testimony." *Id*. (emphasis added).

Mr. Lamm, however, never testified that written description support was lacking, only that the specification "does not *expressly* recite an identification number for identifying a type of display unit." Op. at 11 (citing Appx20417-20418 (Lamm Tr. 417:24-418:2); emphasis added). He did not agree that the disclosure as a whole failed to provide written description support to a POSA, which is the relevant standard for evaluating written description. His limited statement about what the patent "expressly recites" is plainly insufficient under the *in haec verba* law to meet LG's heavy burden to show that the specification as a whole fails to provide support.

The only other source of evidence the Panel relied upon was the patent specification itself. The Panel provided its own views as to how a POSA would have understood certain passages of the specification, ultimately concluding that the patent was invalid based on argument and portions of the specification on which there was no expert testimony at trial. Op. at 12-13. Adopting the "face of

10

the patent" approach to written description, the Panel made technical findings about the meaning of the specification to a POSA and criticized Mondis for not coming forward with evidence of its own. Op. at 13. In doing so, the Panel improperly shifted the burden on written description to Mondis.

**D.     The Panel's Analysis is in Conflict With the Presumption of Validity.**

Mondis was entitled to a presumption of validity, and while not required under *i4i*, written description was amply supported by other portions of Mr. Lamm's testimony, numerous admissions made by LG's expert, as well as the following disclosure presented in column 5 of the patent specification:

> Namely, an ID number is sent to the computer 1 from the display device 6 so that the computer 1 identifies that the display device 6 having a communication function is connected and the computer 1 compares the ID number with the ID number registered in computer 1.

Op. at 12 (citing '180 patent at 5:62-67) (emphasis added). This passage was specifically presented to the jury by Mr. Lamm during his testimony describing the invention. *Id.*, Appx20290-20291 (Lamm Tr. 290:5-291:4).

While this passage does not expressly recite a "type ID" it nevertheless unambiguously uses the "ID number" as a type ID, since the ID number is being used to distinguish between two classes (i.e. types) of displays, those that support the communication function and those that do not. This is in full accord with the

plain and ordinary meaning of the term "type," wherein the district court instructed the jury that "type ID" possessed its plain and ordinary meaning (Appx20901 (Tr. 901:2-23)), and this Court has explained that the plain and ordinary meaning of "type" is "a kind, class or group having distinguishing characteristics in common." *Action Techs., Inc. v. Novell Sys., Inc.*, 155 F.3d 567, at *5 (Fed. Cir. 1998) (unpub.) (citing WEBSTER'S NEW WORLD DICTIONARY 1446, 3rd College ed. 1994). In the absence of evidence from LG to support its burden, a reasonable jury could have relied upon the foregoing passage and ordinary meaning of "type" in rejecting the written description defense.

The Panel never squarely disputes the fact that this passage on the "face of the patent" at least facially discloses using the ID number as a display type ID. Instead, the Panel attempts to denigrate the evidence in three respects, but these criticisms merely demonstrate that the Panel was acting as the finder of fact, not respecting the presumption of validity or the jury's assessment of the facts.

First, the Panel stated that Mr. Lamm's presentation of this passage was only in the context of his "testimony about infringement rather than validity." Op. at 12. The Panel fails to explain how or why a specification passage describing the preferred embodiment should be understood differently when it bears on validity rather than infringement. *Cf. Source Search Tech., LLC v. LendingTree, LLC*, 588

12

F.3d 1063, 1075 (Fed. Cir. 2009) ("[I]t is axiomatic that claims are construed the same way for both invalidity and infringement.") (quoting *Amgen Inc. v. Hoechst Marion Roussel, Inc.* 314 F.3d 1313, 1330 (Fed. Cir. 2003)).

Second, the Panel stated that in presenting this passage Lamm was "silent" concerning the type limitation. Op. at 12-13. But silence in the face of a presumption is irrelevant; it is the privilege of the party for whom the burden works to remain silent. In any event, the plain language of the patent is "substantial evidence," whether Mr. Lamm expounded on it or not, especially since the type limitation was given its ordinary meaning under the district court's claim construction.

Third, the Panel relied on the paragraph following the one shown to the jury by Mr. Lamm that recites: "[b]y doing this, the computer 1 communicates with a specific display device 6 and can exercise control such as changing the color temperature of an image displayed on the display device 6 or changing the display size depending of the application software." Op. at 13 (citing '180 patent at 6:5-9). According to the Panel, this sentence demonstrates that the ID number in the passage discussed by Mr. Lamm "only indicates" a specific display device rather than a display type. Op. at 13. But the Panel cites no record testimony for that interpretation, and neither expert proposed it at trial. The Panel simply assumes

13

that a POSA would not understand an ID number to function as both a type ID and specific device ID.

In summary, the Panel took it upon itself to identify allegedly contrary evidence that was not presented to the jury, interpret that evidence as a POSA, and weigh that evidence against the evidence that was presented to the jury. That approach cannot be squared with the presumption of validity or deference to the factfinder, especially when Mondis had no opportunity to rebut the Panel's arguments at trial.

### E.   Rehearing is Necessary to Conform the Law on an Important and Recurring Issue.

The burden of proof and production for written description challenges are matters of great importance to patentholders and alleged infringers alike.  Known boundaries are the bedrock of fair and just patent practice.  The judicial review of jury verdicts is limited, both by law and by constitutional right under the Seventh Amendment.  The Panel's new burden-shifting regime, if upheld, would greatly expand the scope for judicial incursion into the jury's domain.  The Panel's burden shifting has never been the law, is inconsistent with § 282, and vitiates fundamental rules around the division of labor between jury, judge and appellate court.  Rehearing is necessary to set matters straight.

## II.  CONCLUSION

For the foregoing reasons, Plaintiffs-Appellants respectfully request

rehearing or rehearing *en banc*.


Dated: September 9, 2025

Respectfully submitted,

/s/ Martin J. Black

Martin J. Black
Brian M. Goldberg
Jeffrey S. Edwards
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

Jeffrey B. Plies
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3012

*Attorneys for Plaintiffs-Appellants Mondis Technology Ltd., Hitachi Maxell, Ltd., n/k/a Maxell Holdings, Ltd., and Maxell, Ltd.*

# ADDENDUM

# United States Court of Appeals for the Federal Circuit

———————————

**MONDIS TECHNOLOGY LTD., HITACHI MAXELL, LTD., NKA MAXELL HOLDINGS, LTD., MAXELL, LTD.,**
*Plaintiffs-Appellants*

**v.**

**LG ELECTRONICS INC., LG ELECTRONICS USA, INC.,**
*Defendants-Cross-Appellants*

———————————

2023-2117, 2023-2116

———————————

Appeals from the United States District Court for the District of New Jersey in No. 2:15-cv-04431-SRC-CLW, Judge Stanley R. Chesler.

———————————

Decided: August 8, 2025

———————————

MARTIN JAY BLACK, Dechert LLP, Philadelphia, PA, argued for plaintiffs-appellants. Also represented by JEFFREY EDWARDS, BRIAN GOLDBERG; JEFFREY B. PLIES, Austin, TX.

MICHAEL JOHN BALLANCO, Fish & Richardson P.C., Washington, DC, argued for defendants-cross-appellants. Also represented by CHRISTIAN A. CHU, MICHAEL J. MCKEON, ROBERT ANDREW SCHWENTKER.

––––––––––––––––––

Before TARANTO, CLEVENGER, and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

This is an appeal from a judgment issued by the United States District Court for the District of New Jersey pursuant to a jury verdict and a subsequent denial of motion for judgment as a matter of law. The jury determined that U.S. Patent No. 7,475,180 was not proven invalid and that LG Electronics Inc. and LG Electronics U.S.A., Inc.'s accused products infringed the patent. Because we hold the '180 patent is invalid for lack of an adequate written description, we reverse.

I

The present appeal arises from a dispute between Appellants Mondis Technology Ltd., Hitachi Maxell, Ltd., n/k/a/ Maxell Holdings, Ltd., and Maxell, Ltd. (collectively, Mondis), owners of U.S. Patent No. 7,475,180, and Cross-Appellants LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, LG), over allegations that LG manufactured and sold televisions that infringed claims 14 and 15 of the '180 patent.

A

The '180 patent, which issued on January 6, 2009, is titled "Display Unit with Communication Controller and Memory for Storing Identification Number for Identifying Display Unit." The patent describes a system for controlling a specific display unit, such as a computer monitor, that is configured to receive video signals from an external source, such as a computer. The display unit's memory stores one or more identification numbers. *Id.*, Fig. 2. A computer may request control of a newly connected display unit by transmitting the computer's individualized identification number, which the display unit then compares to a

stored list of known identification numbers. *Id.*, 5:38–42. If the computer's identification number matches a registered identification number in the display unit's memory, the computer can control aspects of the display unit, such as its brightness and contrast. *Id.*, 5:43–47. If there is no matching identification number, the computer cannot control the display unit. *Id.*, Fig. 3. Alternatively, the computer can store registered identification numbers for specific display units and gain control of a display unit by matching the display unit's identification number against its stored list. *Id.*, 5:61–6:4.

In either configuration, each identifier is associated with a specific computer or a specific display unit. The patent consistently describes a one-to-one relationship in which one identification number corresponds to one device. For example, the patent provides that "the microcomputer 7 in the display device 6 waits for sending of the identification number assigned to the computer 1, that is, the so-called ID number from the computer 1." *Id.*, 5:35–38. After this registration process, "the computer 1 is allowed to control the display device 6." *Id.*, 5:43–44. Similarly, for the alternative configuration where the computer verifies the display unit, "an ID number is sent to the computer 1 from the display device 6 so that the computer 1 identifies that the display device 6 . . . is connected," and "[b]y doing this, the computer 1 communicates with a specific display device 6." *Id.*, 5:62–6:6. And "[w]hen an identification number is set to each device, a value which is set by the above control will not be lost by a careless operation of a user." *Id.*, 10:28–30.

As initially filed, application claim 40 (which issued as claim 14) recited:

40. A display unit for displaying an image based on video signals inputted from an externally connected video source, comprising:

a video circuit adapted to display an image based on the video signals sent by the externally connected video source;

a memory in which at least display unit information is stored, said display unit information including ***an identification number for identifying said display unit*** and characteristic information of said display unit; and

a communication controller capable of bidirectionally communicating with said video source;

wherein said communication controller is capable of communicating said display unit information other than said characteristic information to said video source.

J.A. 18192–93 (emphasis added) (cleaned up).

On June 4, 2002, Mondis amended the claim by inserting the phrase "at least a type of" to overcome a prior art rejection. As amended, claim 14 recites:

14. A display unit for displaying an image based on video signals inputted from an externally connected video source, comprising:

. . .

information including ***an identification number for identifying <u>at least a type of</u> said display unit*** and characteristic information of said display unit; and

. . . .

'180 patent, claim 14 (emphasis added). Claim 15, which depends on claim 14, recites:

> 15. The display unit according to claim 14, wherein said display unit information is sent to said video source in response to power on of at least one of said display unit and said video source.

*Id.*, claim 15.

## B

In 2014, Mondis filed a complaint against LG in the Eastern District of Texas alleging infringement of the '180 patent and four other patents in the same family. Compl. at ¶ 1, 10–14, *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 2:14-CV-702-JRG (E.D. Tex. June 21, 2014), ECF No. 1. The case was then transferred to New Jersey, where it was stayed pending reexamination by the Patent Office. *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 2:14-CV-702-JRG, 2015 WL 12818871 (E.D. Tex. June 3, 2015), ECF No. 56 (order granting motion to transfer); *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 2:15-CV-04431-SRC-CLW, (D.N.J. Nov. 12, 2015), ECF No. 121 (order granting motion to stay). After some claims of the '180 patent survived reexamination, Mondis voluntarily cancelled all claims of the other four patents subject to reexamination. J.A. 1060. The district court litigation proceeded, relevant here, on claims 14 and 15 of the '180 patent.

A jury trial took place in April 2019. LG challenged claims 14 and 15 as invalid for lacking written description for the limitation "said display unit information including an identification number for identifying at least a type of said display unit and characteristic information of said display unit" (the type limitation). LG argued that while the originally filed patent supported the original claim of an identification number for identifying said display unit, it did not support the amended claim's requirement of identifying *a type* of said display unit. Mondis did not present a rebuttal case regarding written description during trial. J.A. 20744, 744:3–6.

On April 9, 2019, the jury found the two asserted claims of the '180 patent not invalid and infringed. J.A. 193–94. On April 12, 2019, the jury returned a verdict finding willful infringement and awarding $45,000,000 in damages to Mondis. J.A. 216–17.

LG filed a motion for Judgment as a Matter of Law challenging, among other things, the jury's finding of written description support. On September 24, 2019, the district court denied LG's motion without identifying support for the type limitation in the patent's specification. J.A. 221–24. Instead, the district court relied on the presumption of validity and its determination that the jury was free to disregard LG's expert's testimony because he was impeached when testifying about noninfringement to determine that "[t]he jury reached the conclusion that the claims were valid based on the failure of the patent challenger's evidence to clearly and convincingly establish the contrary." J.A. 223. The district court accordingly upheld the jury's findings on invalidity, infringement, and willfulness, but vacated the damages award and ordered a retrial on damages.

After a damages retrial that began on February 6, 2023, the retrial jury awarded damages of $14,300,000 to Mondis. J.A. 506. On June 1, 2023, the district court denied LG's post-trial motions related to damages, denied Mondis' motion for enhanced damages and attorneys' fees, and granted-in-part Mondis' motion for pre-judgment and post-judgment interest. *Mondis Tech. Ltd v. LG Elecs., Inc.*, No. 2:15-CV-4431-SRC-CLW, 2023 WL 3749992 (D.N.J. June 1, 2023).

Both LG and Mondis timely filed notices of appeal. On appeal, Mondis argues: (1) the district court erred in vacating the original $45 million damages verdict, (2) the district court erred in creating a supposed "no new evidence" rule during retrial, (3) the district court erred in denying enhanced damages, (4) the district court erred in denying

attorneys' fees, and (5) the district court erred in determining prejudgment interest. On cross-appeal, LG argues: (1) the district court erroneously denied its motion for JMOL of invalidity for lack of written description, (2) the district court erroneously denied its motion for JMOL of noninfringement, and (3) no reasonable jury could have found the damages award at retrial. We have jurisdiction over the appeal and cross-appeal pursuant to 28 U.S.C. § 1295(a)(1).

## II

We review a district court's denial of JMOL under the regional circuit law. *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). In the Third Circuit, denial of JMOL is reviewed for "whether there is evidence upon which a reasonable jury could properly have found its verdict." *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1301 (Fed. Cir. 2016) (quoting *Gomez v. Allegheny Health Servs.*, 71 F.3d 1079, 1083 (3d Cir. 1995)). "JMOL 'should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find' for the nonmovant." *Id.* (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)). Patents are presumed to be valid and overcoming this presumption requires clear and convincing evidence. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1354 (Fed. Cir. 2010) (en banc).

## III

A patent's specification "shall contain a written description of the invention." 35 U.S.C. § 112 ¶ 1 (pre-AIA). "[T]he hallmark of written description is disclosure." *Ariad*, 598 F.3d at 1351. To satisfy the written description requirement an applicant need not expressly "recite the claimed invention *in haec verba*," but a patent's specification must "reasonably convey[] to those skilled in the art

that the inventor had possession of the claimed subject matter as of the filing date." *Id.* at 1351–52. And "[w]hile it is legitimate to amend claims or add claims to a patent application purposefully to encompass devices or processes of others, there must be support for such amendments or additions in the originally filed application." *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1247 (Fed. Cir. 2002).

Compliance with the written description requirement of 35 U.S.C. § 112, ¶ 1 is a question of fact, and "we review a jury's determinations of facts relating to compliance with the written description requirement for substantial evidence." *Ariad*, 598 F.3d at 1355 (quoting *PIN/NIP*, 304 F.3d at 1243). LG had the burden of persuasion on this fact, needing clear and convincing evidence. *Id.* at 1354.

LG contends that the written description does not support the claim limitation "identification number for identifying at least a type of said display unit," which we refer to as the type limitation. LG's Opening Br. 10. We agree with LG that no reasonable jury could find the patent's written description conveys to a relevant artisan that the inventors possessed the type limitation. We hold that the jury's finding that LG failed to show inadequate written description for the asserted claims lacked substantial evidence support on the record.

A

As a threshold matter, Mondis argues that because of the presumption of validity, it was not required to provide any evidence to prove there was adequate written description support. Under 35 U.S.C. § 282(a), a "patent shall be presumed valid." Throughout litigation "the presumption of validity remains intact and the ultimate burden of proving invalidity remains with the challenger." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1360 (Fed. Cir. 2007) (quoting *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1216 (Fed. Cir. 1998)).

There are situations where, because "[a] patent [is] presumed valid at birth, . . . a patentee need submit *no* evidence in support of a conclusion of validity by a court or a jury." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1570 (Fed. Cir. 1986) (emphasis in original). However, sometimes the patent itself is clear enough that it establishes inadequacy of support in the written description for the full scope of the claimed invention unless there is contrary evidence. *See Centocor Ortho Biotech, Inc. v. Abbott Lab'ys*, 636 F.3d 1341, 1347 (Fed. Cir. 2011) ("A patent also can be held invalid for failure to meet the written description requirement based solely on the face of the patent specification."); *PIN/NIP*, 304 F.3d at 1247–48 (holding that a patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004) ("[The] argument that a patent may not be held invalid on its face is contrary to our case law."). That is so here, as confirmed by the testimony of Mondis' own expert on the key point.

When the patent was initially filed, claim 14 (then-numbered as claim 40) recited "an identification number for identifying ***said*** display unit." J.A. 18193 (emphasis added). Mondis amended the claim to overcome a prior art rejection. J.A. 18203–04; J.A. 18209–10. As issued, claim 14[1] of the patent recites "an identification number for identifying ***at least a type of*** said display unit." '180 patent, claim 14 (emphasis added). This amendment changed the nature of the claim's identification number from one identifying a specific display unit to one identifying a type of display unit. LG contends that the amended type limitation

---

[1]    Claim 15 depends on claim 14 and includes the same limitation.

lacks written description support from the originally filed patent.

It is undisputed that the patent does not expressly disclose the type limitation.[2] The patent's specification recites the phrase "type of display device" only once in its background section, *id.*, 1:41–44, but this use does not provide written description support because it refers to a prior-art multi-scan monitor rather than the claimed invention. *See Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (reversing JMOL denial where cited patent passage was "reviewing the prior art and did not describe the invention"). Instead, the patent consistently discloses an identifier that is associated with a specific computer. *See, e.g.*, '180 patent, 5:35–38 ("[T]he microcomputer 7 in the display device 6 waits for sending of the identification number assigned to the computer 1, that is, the so-called ID number from the computer 1."), 5:43–44 ("[T]he computer 1 is allowed to control the display device 6[.]"), 5:62–6:6 ("[A]n ID number is sent to the computer 1 from the display device 6 so that the computer 1 identifies that the display device 6 . . . is connected," and "[b]y doing this, the computer 1 communicates with a specific display device 6."), 7:18–20 ("Each of the display devices 6B, 6C, and 6D has . . . a registered ID number.").

Additionally, LG's expert, Dr. Stevenson, testified that the patent does not disclose an identification number to identify a type of display unit. J.A. 20616–17, 616:24–617:10; J.A. 20570–71, 570:24–571:1. Mondis argues that the jury was free to dismiss Dr. Stevenson's

---

2    At oral argument, counsel for Mondis agreed that the specification does not disclose the actual words "type identifier." *See* Oral Arg. at 15:20–17:15, No. 23-2117, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-2117_04072025.mp3.

credibility on written description because he was impeached.[3] Mondis' Reply Br. 41–42. But even assuming Dr. Stevenson's credibility was impaired through impeachment, Mondis' expert, Mr. Lamm, also testified that the specification "does not expressly recite an identification number for identifying a type of display unit." J.A. 20417–18, 417:24–418:2.

To satisfy the written description requirement, the patent specification's disclosures must demonstrate to a skilled artisan that the inventors possessed the invention, including, in this case, the type limitation. *See Ariad*, 598 F.3d at 1351 (requiring an "objective inquiry into the four corners of the specification"). Based only on the patent and Mr. Lamm's testimony, any reasonable jury performing this objective inquiry into the four corners of the patent would have to find that the inventors only possessed and disclosed identifying a specific display unit.

It would not automatically be fatal that the type limitation was not expressly disclosed as long as substantial evidence showed that the patent disclosed identifying a type of display unit in some less express way. And Mondis argues that (1) Mr. Lamm's testimony, (2) Dr. Stevenson's admissions, and (3) the prosecution history each provide substantial evidence to support the jury's finding on validity. We address each in turn.

1

Mondis argues that there was "written description support for a type ID based on Mr. Lamm's description of the

---

[3]　We do not reach whether (1) Dr. Stevenson was impeached while testifying about infringement, and (2) if he was impeached, whether his impeached noninfringement testimony can impair his invalidity testimony because we can resolve the issue on appeal without relying on his testimony.

patent and the plain words of the specification." Mondis'
Reply Br. 44. The specification describes an embodiment
where an ID number is sent from the display to a computer:

> Namely, an ID number is sent to the computer 1
> from the display device 6 so that the computer 1
> identifies that the display device 6 having a com-
> munication function is connected and the computer
> 1 compares the ID number with the ID number reg-
> istered in the computer 1.

'180 patent, 5:62–67. Mondis argues that "Mr. Lamm pre-
sented this passage to the jury and explained that the com-
munication function comprised a 'video format the display
is capable of receiving.'" Mondis' Reply Br. 44 (quoting J.A.
20291, 291:3–4). Mondis claims that "[t]his display ID
number plainly identifies a display type in accord with the
ordinary meaning of the word '*type*,' because the ID distin-
guishes between two groups of displays based on their com-
mon    characteristics,    *i.e.*    those    that    support    a
'communication function' (video format) and those that do
not," and that, "[g]iven the specification's description of a
display ID being used to differentiate classes of displays
with different capabilities, the jury was entitled to draw
the reasonable inference that a display type ID was dis-
closed." *Id.* at 44–45 (emphasis in original).

The full portion of Mr. Lamm's testimony that Mondis
relies on states:

> This is column 5, line 62 through 67, and it basi-
> cally says the ID number identifies that the display
> device having a communication function is con-
> nected. And in this case the communication func-
> tion that they're talking about is an actual video
> format. So, the ID number is defining what video
> format the display is capable of receiving.

J.A. 20290–91, 290:23–291:4. Not only was this testimony
about infringement rather than validity, it was also silent

about the type limitation. Mondis never presented any evidence to the jury connecting this "communication function" to the type limitation that would allow a reasonable jury to find written description support.

And the plain words of this portion of the specification demonstrate that the patent discloses a specific display unit, not the type limitation. The sentence in the patent that immediately follows the excerpt discussed by Mr. Lamm, which Mondis did not present to the jury, states that "[b]y doing this, the ***computer 1 communicates with a specific display device 6*** and can exercise control such as changing the color temperature of an image displayed on the display device 6 or changing the display size depending on the application software." '180 patent, 6:5–9 (emphasis added). This passage only indicates that the display device transmits to the computer an identification number identifying a specific display unit so that the computer may control the display device if the specific display unit's identification number is registered with the computer. It does not provide written description support for the type limitation.

Thus, neither Mr. Lamm's testimony nor the plain words of the specification in the portions that he cited in his testimony provide substantial evidence to support the jury's finding on validity.

### 2

Mondis also argues that Dr. Stevenson made admissions that provide substantial evidence to support the jury's finding on validity. Specifically, Mondis contends that Dr. Stevenson's noninfringement testimony provides substantial evidence that serial numbers (1) could be used to identify a particular display unit, and (2) could hypothetically be a type ID.

The written description "test requires an objective inquiry into the four corners of the specification from the

perspective of a person of ordinary skill in the art." *Ariad*, 598 F.3d at 1351. And "we have repeatedly stated that actual 'possession' or reduction to practice outside of the specification is not enough." *Id*. at 1352. It is the specification itself that must demonstrate possession.

As an initial matter, Mondis does not identify any reference to serial numbers in the specification. The patent's specification does not use the term serial numbers, does not discuss serial numbers, and does not describe a serial number that identifies a display unit type.

Further, Dr. Stevenson's testimony does not provide substantial evidence for adequate written description. Dr. Stevenson's testimony was regarding noninfringement. He never testified that in reading the patent's specification, he or a relevant artisan would understand the type limitation to include serial numbers. Instead, he was presented with a hypothetical serial number and testified that it could potentially be a type identifier in some circumstances. But when asked whether a "serial number would be an identification number for identifying a type of display unit," J.A. 20682, 682:2–4, Dr. Stevenson testified that "no one has made that allegation," J.A. 20682, 682:5. Dr. Stevenson explained that this would require hypothetically mapping the serial number onto the model number to see if the serial number could be used to "figure out the model number." J.A. 20682, 682:5–8.

There was no testimony from which a skilled artisan would have concluded that such mapping of serial number onto model number is disclosed or suggested in the patent itself. And there is nothing in the patent describing a serial number that identifies any type of display unit. Dr. Stevenson's noninfringement testimony about a hypothetical serial number does not address whether a person of ordinary skill in the art would find support in the specification for the type limitation.

Thus, Dr. Stevenson's testimony does not provide substantial evidence to support the jury's finding on validity.

3

Lastly, Mondis argues that the prosecution history provides substantial evidence to support the jury's finding on validity because the type limitation was added to overcome a prior art rejection. Mondis contends that when a claim amendment is allowed without objection, it "is entitled to an especially weighty presumption of correctness." Mondis' Reply Br. 47 (quoting *Commonwealth Sci. & Indus. Rsch. Org. v. Buffalo Tech., Inc. (USA)*, 542 F.3d 1363, 1380 (Fed. Cir. 2008) (internal citation omitted)). Thus, Mondis argues that when the examiners allowed the amendment, they agreed to the type limitation because they understood that it was supported by written description.

*Commonwealth Science* holds that there is a "presumption of validity based on the PTO's issuance of the patent despite the amendments." 542 F.3d at 1380. It does not hold that the examiner's allowance of claims by itself provides substantial evidence that the claims comply with the requirements of § 112. *See, e.g., AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1245 (Fed. Cir. 2003) ("[W]e dispel the notion that the failure of the PTO to issue an enablement rejection automatically creates an 'especially weighty presumption' of compliance with 35 U.S.C. § 112."). If it did, there would rarely be a situation where an issued patent could later be invalidated for lack of written description.

Nevertheless, even if the allowance of amendments could be substantial evidence of written description, that would not be the case here. The examiner's interview summary explains that the claim was rejected over prior art. Thus, the claim was amended to "specify identification number as a 'type' of display unit which examiner agree[d] will read over the previous art applied regarding to the claims." J.A. 15102 (emphasis omitted). There is no

evidence the examiner considered whether the specification contained written description support for this amendment. The evidence only shows that the examiner allowed the claim as amended because it included a feature that was not in the identified prior art. This is not substantial evidence that the patent contains written description support for the type limitation.

Thus, the fact that the examiner allowed the amendment is not substantial evidence that supports the jury's finding on validity.

B

Even if we assume the jury was free to disregard Dr. Stevenson's testimony, the only evidence before the jury regarding written description was the patent—which does not disclose the type limitation—and Mr. Lamm's testimony that the patent does not disclose the asserted claims' type limitation. Because Mondis neither redirected Mr. Lamm on his testimony that the patent does not expressly disclose the type limitation, nor called him in rebuttal, there was no evidence in the record that would allow a reasonable jury to determine that a person of ordinary skill in the art would understand that the patent disclosed the type limitation. The patent and Mr. Lamm's testimony established that the inventors only possessed and disclosed identifying a specific display unit.

Substantial evidence does not support the jury's finding that the '180 patent disclosed sufficient information to show the inventors possessed the claim limitation "an identification number for identifying at least a type of said display unit." We hold that claims 14 and 15 of the '180 patent are invalid for lack of an adequate written description.

IV

Because we conclude that claims 14 and 15 of the '180 patent are invalid for lack of an adequate written description, the issue of infringement is moot. *Lough v. Brunswick*

*Corp.*, 86 F.3d 1113, 1123 (Fed. Cir. 1996) ("No further public interest is served by our resolving an infringement question after a determination that the patent is invalid."). Similarly, because we conclude that the asserted claims are invalid, the remaining issues involving the damages re-trial, the district court's failure to declare the case exceptional, the district court's refusal to enhance damages, and the district court's award of interest are also moot. LG is entitled to entry of judgment in its favor.

## V

We have considered Mondis' remaining arguments and find them unpersuasive. We reverse the district court's holding that claims 14 and 15 of the '180 patent are not invalid for lack of an adequate written description. Those claims are invalid. We reverse the denial of judgment as a matter of law.

## REVERSED

### COSTS

Costs to Appellee/Cross-Appellant LG.

United States Code Annotated
Title 35. Patents (Refs & Annos)
Part III. Patents and Protection of Patent Rights
Chapter 29. Remedies for Infringement of Patent, and Other Actions (Refs & Annos)

35 U.S.C.A. § 282

§ 282. Presumption of validity; defenses

Currentness

**(a) In General.**--A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

**(b) Defenses.**--The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:

**(1)** Noninfringement, absence of liability for infringement or unenforceability.

**(2)** Invalidity of the patent or any claim in suit on any ground specified in part II as a condition for patentability.

**(3)** Invalidity of the patent or any claim in suit for failure to comply with--

**(A)** any requirement of section 112, except that the failure to disclose the best mode shall not be a basis on which any claim of a patent may be canceled or held invalid or otherwise unenforceable; or

**(B)** any requirement of section 251.

**(4)** Any other fact or act made a defense by this title.

**(c) Notice of Actions; Actions During Extension of Patent Term.**--In an action involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or, except in actions in the United States Court of Federal Claims, as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires. Invalidity of the extension of a patent term or any portion thereof under section 154(b) or 156 because of the material failure--

(**1**) by the applicant for the extension, or

(**2**) by the Director,

to comply with the requirements of such section shall be a defense in any action involving the infringement of a patent during the period of the extension of its term and shall be pleaded. A due diligence determination under section 156(d)(2) is not subject to review in such an action.

## CREDIT(S)

(July 19, 1952, c. 950, 66 Stat. 812; Pub.L. 89-83, § 10, July 24, 1965, 79 Stat. 261; Pub.L. 94-131, § 10, Nov. 14, 1975, 89 Stat. 692; Pub.L. 97-164, Title I, § 161(7), Apr. 2, 1982, 96 Stat. 49; Pub.L. 98-417, Title II, § 203, Sept. 24, 1984, 98 Stat. 1603; Pub.L. 104-41, § 2, Nov. 1, 1995, 109 Stat. 352; Pub.L. 106-113, Div. B, § 1000(a)(9) [Title IV, §§ 4402(b)(1), 4732(a)(10)(A)], Nov. 29, 1999, 113 Stat. 1536, 1501A-560, 1501A-582; Pub.L. 107-273, Div. C, Title III, § 13206(b)(1)(B), (4), Nov. 2, 2002, 116 Stat. 1906; Pub.L. 112-29, §§ 15(a), 20(g), (j), Sept. 16, 2011, 125 Stat. 328, 334, 335.)

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2025, Plaintiffs-Appellants' Petition for Panel Rehearing and Rehearing *En Banc* was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Dated: September 9, 2025                    Respectfully submitted,

                                            /s/ Martin J. Black
                                            _____
                                            Martin J. Black
                                            DECHERT LLP
                                            Cira Centre
                                            2929 Arch Street
                                            Philadelphia, PA 19104
                                            (215) 994-4000

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Federal Rule of Federal Circuit Rules 32(a) and 40(d)(3). This brief contains 3,059 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word version 15.0.5197.1000 in 14-point Times New Roman.

 Dated: September 9, 2025                    Respectfully submitted,

                                            /s/ Martin J. Black
                                            Martin J. Black
                                            DECHERT LLP
                                            Cira Centre
                                            2929 Arch Street
                                            Philadelphia, PA 19104
                                            (215) 994-4000